IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CELANESE INTERNATIONAL CORPORATION; CELANESE (MALTA) COMPANY 2 LIMITED; & CELANESE SALES U.S. LTD., | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-1775-LPS |
| ANHUI JINHE INDUSTRIAL CO., LTD.; JINHE USA LLC; UMC INGREDIENTS, LLC f/k/a JRS INTERNATIONAL LLC; PRINOVA US LLC; & AGRIDIENT, INC., | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

**DEFENDANT UMC INGREDIENTS, LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382) SHAW
KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, Delaware 19801
 (302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

*Attorneys for Defendant*
*UMC Ingredients, LLC*

OF COUNSEL:
Paul Grandinetti
(admission *pro hac vice* requested)
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
Telephone (202) 429-4560
Facsimile (202) 429-4564
mail@levygrandinetti.com

Dated: January 19, 2021

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS ................................................ 1

II.    SUMMARY OF ARGUMENT ........................................................................ 1

III.    CONCISE STATEMENT OF FACTS ............................................................ 2

        A.    The Asserted Patents .......................................................................... 2

        B.    Timeline ............................................................................................. 3

        C.    Celanese's Information and Belief ...................................................... 4

        D.    Allegations against UMC Ingredients ................................................ 6

IV.    ARGUMENT ................................................................................................. 7

        A.    Legal Standard ................................................................................... 8

        B.    Celanese's Allegations Fail to Shift the Burden to UMC Ingredients to Prove Non-Infringement .................................................................... 9

        C.    Celanese Fails to Support Its Allegation of Direct Infringement with Specific Facts ……….................................................................... 10

        D.    Celanese Does Not Individually Accuse UMC Ingredients of Direct Infringement ................................................................................... 12

        E.    Celanese Failed to Identify Adequately the Processes UMC Ingredients Is Accused of Infringing and the Claims Being Infringed .............15

        F.    Celanese's Allegations of Indirect Infringement Fail to Meet the Requirements Set Forth in *Twombly* and *Iqbal* .................................... 17

        G.    Because Celanese Has Not Plausibly Pled Direct Infringement, Celanese Cannot Plausibly Plead Indirect Infringement ................................... 18

        H.    Celanese Has Failed to Identify Which Entity Is Allegedly Responsible for Indirect Infringement ............................................................... 19

VI.    CONCLUSION ............................................................................................ 20

## TABLE OF AUTHORITIES

<u>**Case**</u>                                                                                   <u>**Page**</u>

*Anderson v. Kimberly-Clark Corp.*,
   570 F. App'x 927 (Fed. Cir. 2014) ......................................................................3

*Asghari-Kamrani v. United Servs. Auto. Ass'n*,
   2016 WL 1253533 (E.D. Va. Mar. 22, 2016) .........................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................7, 8, 11, 12, 16, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................7, 8, 11, 12, 16, 17

*BlackBerry Ltd. v. Nokia*,
   2018 WL 1401330 (D. Del. 2018) ....................................................................... 14

*Disc Disease Solutions, Inc. v. VGH Solutions, Inc.*,
   888 F.3d 1256 (2018) ........................................................................................ 12

*Hoganas AB v. Dresser Indus.*,
   9 F.3d 948 (Fed. Cir. 1993) ................................................................................. 3

*In re Bill of Lading*,
   681 F.3d 1323 (Fed. Cir. 2012)................................................................... 8, 9, 19

*In re Watson*,
   517 F.2d 465, 474 (C.C.P.A. 1975) .......................................................................4

*Jones v. Hardy*,
   727 F.2d 1524 (Fed. Cir. 1984)........................................................................... 17

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   134 S. Ct. 2111 (2014) ...................................................................................... 18

*M2M Solutions LLC v. Telit Commc'ns PLC*,
   2015 WL 4640400 (D. Del. Aug. 5, 2015) .......................................................14, 19

*Modern Telecom Sys., LLC v. TCL Corp.*,
   2017 WL 6524526 (D. Del. Dec. 21, 2017)........................................................12, 18

*Neology, Inc. v. KapschTrafficcom IVHS, Inc.*,
  2014 WL 4675316 (D. Del. Sept. 19, 2014) ............................................................................19

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
  2017 WL 5501489 (D. Del. Nov. 16, 2017) ...........................................................................12

*Peters v. Active Mfg. Co.*,
  129 U.S. 530 (1889) ..............................................................................................................16

*Raindance Techs. v. 10x Genomics, Inc.*,
  2016 WL 927143 (D. Del. Mar. 4, 2016) ...............................................................................16

*Upsher-SmithLabs., Inc. v. Pamlab*, L.L.C.,
  412 F.3d 1319 (Fed. Cir. 2005) ..............................................................................................16

*Varian Med. Sys., Inc. v. Elekta AB et al.*,
  2016 WL 3748772 (D. Del. Jul. 12, 2016) ..............................................................................18

## RULES AND CODES

**Page**

FED. R. CIV. P. 8(a) .................................................................................................8, 19

FED. R. CIV. P. 12(b)(6) ......................................................................................... 1, 7, 8

FED. R. EVID. 201(b)(2) ............................................................................................ 3, 4

21 C.F.R. § 172.800 ....................................................................................................... 4

35 U.S.C. § 271(a) ............................................................................................. 8, 10, 17

35 U.S.C § 271(b) .............................................................................................. 8, 10, 17

35 U.S.C. § 271(c) .............................................................................................. 8, 9, 19

35 U.S.C. § 271(g) ............................................................................................. 9, 10, 17

35 U.S.C. § 282 ........................................................................................................... 17

35 U.S.C. § 295 ............................................................................................................. 9

44 U.S.C. § 1507 ........................................................................................................... 4

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| UMC Ingredients | UMC Ingredients, LLC (Defendant/Sole Movant) |
| Acesulfame or ACE-K | Acesulfame potassium |
| Jinhe China | Anhui Jinhe Industrial Co., Ltd. (Primary Defendant) |
| D.I. 1 | The Complaint |
| The '998 Patent Family | Three Patents |
| The '998 Patent | U.S. Patent No. 10,029,998 (not asserted by Plaintiffs) |
| The '164 Patent | U.S. Patent No. 10,233,164 (asserted in the Complaint) |
| The '096 Patent | U.S. Patent No. 10,590,096 (asserted in the Complaint) |
| The '000 Patent Family | Three Patents: |
| The '000 Patent | U.S. Patent No. 10,030,000 (not asserted by Plaintiffs) |
| The '316 Patent | U.S. Patent No. 10,227,316 (asserted in the Complaint) |
| The '097 Patent | U.S. Patent No. 10,590,097 (asserted in the Complaint) |

Defendant UMC Ingredients, LLC, formerly known as JRS International LLC ("UMC Ingredients"), requests its dismissal from this civil action for the Plaintiffs' failure to state a claim against at least UMC Ingredients upon which relief can be granted.

## I.     NATURE AND STAGE OF PROCEEDINGS

The Plaintiffs filed the Complaint on **December 28, 2020**.   The Plaintiffs identified in the Complaint include Celanese International Corporation, Celanese (Malta) Company 2 Limited, and Celanese Sales U.S. Ltd. (collectively, "Celanese").

Celanese International Corporation is the only entity recorded at the U.S. Patent and Trademark Office as an assignee of the four Asserted Patents.   The Complaint does not identify any factual basis for the other two Plaintiffs to be named as parties having an interest in this action.

The Defendants, in addition to UMC Ingredients, include Anhui Jinhe Industrial Co., Ltd. ("Jinhe China"), Jinhe USA LLC ("Jinhe USA"), Prinova US LLC ("Prinova"), and Agridient, Inc. ("Agridient") (collectively, "the Defendants").   UMC Ingredients is related to United Mineral & Chemical Corporation, which is commonly known as "UMC" and which is not a party to this action.

## II.    SUMMARY OF ARGUMENT

1.     Celanese's Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) as to UMC Ingredients.   The Complaint makes unsupported allegations, merely paraphrases the language of the patent claim elements, and provides no facts to support a plausible explanation as to UMC Ingredients' alleged infringement of the four Asserted Patents.

The Complaint groups five defendants together and fails to provide any separate facts as to any specific defendant's allegedly infringing activity.

2.     U.S. Patent No. 3,689,486 assigned to Hoechst issued on September 5, 1972, for the Acesulfame potassium compound.   This patent expired on September 5, 1989, and Acesulfame potassium is no longer a patent-protected compound.   The Celanese Complaint fails to state a claim upon which relief can be granted because the Complaint – on its face – asserts that the compound imported by UMC Ingredients, LLC, more than one year before the earliest effective filing date of the Celanese patents, was made by a process claimed by one or more of the Asserted Patents.   Such a fact, if true, renders each of the Asserted Patents invalid.

## III.    CONCISE STATEMENT OF FACTS

### A.    The Asserted Patents

The Celanese Complaint asserts four U.S. patents.   These four patents are part of two groups of patents as follows.

The first group is known as the '998 Patent Family and includes:

U.S. Patent Numbers 10,029,998 ("the '998 patent"), 10,233,164 ("the '164 patent"), and 10,590,096 ("the '096 patent).

The '998 Patent Family eliminates or reduces the impurities of acetoacetamide-N-sulfonic acid and acetoacetamide from the production of Acesulfame potassium.   The '998 Patent Family claims priority to two provisional applications, each of which was filed on **September 21, 2016**.

The second group is known as the '000 Patent Family and includes:

U.S. Patent Numbers 10,030,000 ("the '000 patent"), 10,227,316 ("the '316

patent"), and 10,590,097 ("the '097 patent).

The '000 Patent Family eliminates or reduces the impurity 5-chloro-acesulfame potassium.   The

'000 Patent Family claims priority to two additional provisional applications, each of which was

also filed on **September 21, 2016**.

**B.      Timeline**

Acesulfame, including its potassium salt (CAS Reg. No. 55589-62-3), is the subject

matter of unasserted U.S. Patent Number 3,689,486 ("the '486 patent") to Clauss et al. entitled

3,4-dihydro-1,2,3-oxathiazin-4-ones and their preparation, which was issued on September 5,

1972.[1]   This U.S. patent claims priority to its earlier German Patent Number 2,001,017, which

was based on a German priority filing date of **January 10, 1970**.   These patents were owned by

Farbwerke Hoechst Aktiengesellschaft (formerly Meister Lucius & Bruning) ("Hoechst").

Hoechst was a major chemical producer including pharmaceuticals and food chemicals.

Hoechst was absorbed into other entities as such companies consolidated over the past few

decades.

The '486 patent includes 11 claims.   Independent claim 1 and its dependent claims 2

through 6 recite the compound.   Independent claim 7 and its dependent claims 8 through 11

recite a "process for the preparation of a compound" as recited in claims 1 through 6.   In other

---

[1]  The Court may take judicial notice of Hochst under Federal Rule of Evidence 201(b)(2). *See
Hoganas AB v. Dresser Indus.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (taking judicial notice of
patent under Fed. R. E. 201(b)(2)); *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932
n.3 (Fed. Cir. 2014) ("It is . . . well-established that a court may take judicial notice of patents or
patent applications.").

words, the '486 patent protected both the Acesulfame compound and the best mode known at the time by the inventors for the **process** of making the compound.   The '486 Patent and its protection of the Acesulfame compound expired on **September 5, 1989**.

The Food and Drug Administration began publishing guidelines for Acesulfame in the Federal Register at least as early as **July 28, 1988**.[2]   FED. REG. Vol. 53, No. 145 § 172.800. These guidelines acknowledge that the compound is to be made with "current good manufacturing practice" and the current regulation states:

> Purity is not less than 99 percent on a dry basis.   The purity shall be determined by a method titled "Acesulfame Potassium Assay," which is incorporated by reference.   Copies are available from the Center for Food Safety and Applied Nutrition (HFS-200), Food and Drug Administration, 5001 Campus Dr., College Park, NC 20740 . . . .

(*See* 21 C.F.R. § 172.800 Acesulfame potassium.)

Celanese's Complaint states in paragraph 57 that in **early 2016**, Jinhe China enlarged its Ace-K (Acesulfame potassium) production capacity from 9,000 tons per annum (before the Celanese priority date on September 21, 2016) to 12,000 tons per annum (after the priority date on September 21, 2016).   *See* D.I. 1 at ¶ 57.

The invention disclosure common to all three patents of the '998 Patent Family as well as the separate invention disclosure common to all three patents of the '000 Patent Family were both published on the same date of **March 22, 2018**.   This date is the first date upon which the **processes** of these two groups of patents were publicly available in a patent-related publication.

---

[2] The Court may take judicial notice of this publication pursuant to 44 USCS § 1507, which states that "[t]he contents of the Federal Register shall be judicially noticed," and under Federal Rule of Evidence 201(b)(2). *See In re Watson*, 517 F.2d 465, 474 (C.C.P.A. 1975) (taking judicial notice of a Food and Drug Administration order published in the Federal Register).

**C.     Celanese's Information and Belief**

Celanese uses the phrase "upon information and belief" 37 times in its Complaint. Celanese's Complaint is devoid of any positively recited fact known to Celanese that the Jinhe China Acesulfame compound, made after the earliest priority date of September 21, 2016 (or even March 22, 2018, the first publication date) of the Asserted Patents, changed to the purity concentrations discussed in the Complaint for all six of the Celanese patents.   *See* D.I. 1 ¶¶ 51 through 53.   In other words, Celanese admits that Jinhe China made Acesulfame for years before Jinhe China could have possibly known of Celanese's processes, which were disclosed when its patent applications were first published.   The Celanese Complaint fails to state that the purity of the Jinhe China product improved after the Celanese patent applications, which disclose its improved processes, were first filed and published.

Oddly, the only substantive statements pled by Celanese without the phrase "upon information and belief" are the statements taken from Jinhe China's "Ace-K Product Manual" and a cnchemicals.com press release regarding Jinhe China's production capacity.   The Complaint confirms that, in the 2019 Ace-K Product Manual, Jinhe China knew that the compound of the Ace-K Product Manual had the advantages:

> "[h]igh stability," "[a]cesulfame-K can preserve for 10 years under general condition," "[n]o sign of any decomposition," "[n]o absorption of moisture in the air," "[s]table to high temperature of 225˚C," "[s]table with PH2-10, does not react with other food composition or additives when used together," "[s]ugarless, calorie free, good for tooth," "[r]educes the production cost," and "[g]uarantee and extend the product shelf life."

(*See* D.I. 1 ¶ 50.)   Confusingly, Celanese, after relying upon this statement in the Ace-K Product Manual to identify the fact that Jinhe China has 10 years of accumulated knowledge of its product's shelf life, recites the purity characteristics in the same Ace-K Product Manual for Jinhe

China's Acesulfame.   (*See* D.I. 1 ¶¶ 51 through 53.)   Celanese states that these purity characteristics are of the "Accused Product" in paragraph 51.   However, in paragraphs 52 and 53, Celanese reverts to its reliance on "information and belief" as to the impurities being discussed in the Ace-K Product Manual.

Celanese never states that the purity of the compound described in the Ace-K Product Manual was for Acesulfame produced by Celanese's patented process while the compound described in the Ace-K Product Manual for the ten-year stability tests was made by a process predating the Celanese patents by many years.   Celanese never states that it has direct knowledge that the product produced by Jinhe China, after the initial **March 22, 2018**, publication of Celanese's invention disclosures, exhibited for the first time improved purity that is distinguishable from the purity of the Jinhe China product that was produced for years before the earliest effective filing date of the Celanese patents.

### D.  Allegations against UMC Ingredients

Celanese specifically mentions UMC Ingredients only in paragraphs 7, 13, 18, 66, and 67 of the Complaint.   The only exhibit to the Complaint relating to UMC Ingredients is Exhibit N. Exhibit N is identified by Celanese as "United States Custom's records on ImportGenius (www.importgenius.com)" for purchases of "Acesulfame K" by JRS International from Jinhe China.   This particular record is incomplete, as to the Acesulfame purchases from Jinhe China by JRS International, in that it only identifies purchases from July 7, 2017.   JRS International made purchases of Acesulfame from Jinhe China for at least seven years prior to July 7, 2017.

Exhibit N is not accompanied by any assay with each listed order of the Acesulfame purchased by JRS International from Jinhe China.   Celanese's Complaint does not recite any

knowledge, whether direct or upon information and belief, that the Acesulfame purchases on Exhibit N were for Acesulfame made by a process claimed in one of the four Asserted Patents.

The July 7, 2017, purchase disclosed in Exhibit N occurred before the first publication of the patent disclosures for the '998 and '000 Patent Families.   Therefore, is it unlikely that any of the Defendants, including Jinhe China, at the time of the production of this batch of Acesulfame knew of what much later became Celanese's patented process.   The July 7, 2017, December 20, 2017, January 11, 2018, and July 5, 2018, batches of Acesulfame disclosed in Exhibit N were made and sold before any of the four Asserted Patents were issued.   Again, the '164 patent issued on **March 19, 2019**, and the '316 patent issued on **March 12, 2019**.   The '096 and the '097 patents issued on **March 17, 2020**.   None of the four Asserted Patents existed before March 12, 2019, and could not be infringed by the process used to make these four batches of Acesulfame.

## IV.   ARGUMENT

The Supreme Court established in *Twombly* and in *Iqbal* that the allegations in a complaint must be plausible.   *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).   A patentee must plead a plausible claim for relief as to all claims of the Asserted Patents that the patentee believes are infringed.   The patentee must identify and allege the infringing processes or conduct with specificity.   The standard established by *Twombly* and *Iqbal* for patent litigation requires more than vague or open-ended pleadings.

The Defendant, UMC Ingredients, respectfully submits that the Complaint should be dismissed as to UMC Ingredients in its entirety under FED. R. CIV. P. 12(b)(6) for failure to plead adequately a claim of infringement.

7

### A.  Legal Standard

This motion to dismiss is pursuant to FED. R. CIV. P. 12(b)(6).   The Court, when reviewing a motion to dismiss, must accept the complaint's factual allegations as true.   *See Twombly*, 550 U.S. at 555-56.   FED. R. CIV. P. 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   *Id*. at 555.   The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements.   *Id*.   ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).")   Moreover, there must be sufficient factual matter to state a facially plausible claim to relief.   *Iqbal*, 556 U.S. at 678.   The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.   ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" (internal quotation marks omitted).)

To plead direct infringement sufficiently, a plaintiff must allege sufficient facts to show a reasonable inference that the defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor."   35 U.S.C. § 27l (a).   The two types of indirect infringement are "induced infringement" and "contributory infringement."   35 U.S.C. § 27l (b) and (c).   To plead induced infringement sufficiently, a plaintiff must allege facts "plausibly showing that [the alleged infringer] specifically intended [a third party] to infringe [the patent-in- suit] and knew that the [third party's] acts constituted infringement."   *In re Bill of*

*Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).   A pleading of contributory infringement requires a plaintiff to allege facts plausibly showing that a defendant "offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process . . . especially made or especially adapted for use in an infringement of such patent, and not . . . suitable for substantial non-infringing use."   35 U.S.C. § 27l(c).

Under 35 U.S.C. § 295, the burden of proof may shift to the accused to prove non-infringement when infringement is alleged under § 271(g).   If a court "finds (1) that a substantial likelihood exists that the product was made by the patented process, and (2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable so to determine, the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made."   35 U.S.C. § 295.

### B.   Celanese's Allegations Fail to Shift the Burden to UMC Ingredients to Prove Non-Infringement

All the independent claims of each of the four Asserted Patents are process claims. There is no assertion that UMC Ingredients ever made, used, sold, or offered for sale any of these processes, and UMC Ingredients has not done so.   The Acesulfame by itself is not patented. The documents attached to the Complaint only show that Jinhe China had a process over ten years ago for making Acesulfame and sold it to UMC Ingredients.   Celanese offers no evidence to show that the Acesulfame was ever made by one of the patented processes.   Moreover, Celanese fails to shift the burden of proof under 35 U.S.C. § 295 to UMC Ingredients to prove its non-infringement.

9

Celanese's Complaint does not distinguish between any processes that Jinhe China used before the priority date of September 21, 2016, of Celanese's patents and any processes used by Jinhe China after this date.   Celanese's Complaint may very well be evidence that the four Asserted Patents are invalid for reading upon processes in the prior art.

As such, Celanese completely fails to establish that a substantial likelihood exists that the product purchased by UMC Ingredients after the issue dates of **March 12** and **March 19, 2019**, and **March 17, 2020**, was made by a Celanese patented process.   Celanese does not provide any fact that demonstrates that Celanese made a reasonable effort to determine the process actually used by Jinhe China in the production of the product purchased at any time by UMC Ingredients.

### C.   Celanese Fails to Support Its Allegation of Direct Infringement with Specific Facts

Celanese presents four counts in its Complaint.   Each count is for infringement of one of the four Asserted Patents.   None of the four counts mentions any facts relating to UMC Ingredients.   Each of the four counts states that the Defendants (as a group) are in violation of at least 35 U.S.C. § 271(a) and/or (g).   The counts merely state that at least claim 1 of the particular patent of a count is infringed but do not identify which defendant infringed under § 271(a) and/or (g).   D.I. 1 ¶¶ 77, 91, 105, and 119.

Each of the four counts of the Complaint states that Jinhe China induced infringement of at least claim 1 of each Asserted Patent under 35 U.S.C. § 271(b).   None of the counts identifies any party as the party induced by Jinhe China to infringe one or more of the Asserted Patents. D.I. 1 ¶¶ 78, 92, 106, and 120.

Each count states the only basis for infringement, whether direct or indirect, as being based upon "information and belief" that the Accused Product is produced using the processes

10

recited in at least claim 1 of each Asserted Patent.   Each count merely recites the elements of claim 1 of its particular Asserted Patent.   No claim chart or assay is provided associating the elements of at least claim 1 of each Asserted Patent as being present in a sample of the Accused Product.

Each of the counts of the Complaint asserts that the Accused Product contains a particular impurity at or below the maximum limit recited in claim 1 of the particular Asserted Patent. However, nowhere in the Complaint is there any assertion that these reduced levels of impurities are found only in batches of the Accused Product made by Jinhe China after the earliest priority date, the earliest publication date, or the earliest issue date of the Asserted Patents.   Stated differently, the Complaint fails to state that the level of impurity is not from a sample of Acesulfame made by Jinhe China during the many years before the effective filing date of the Asserted Patent and is, thus, prior art to the Asserted Patents.

Each of the counts then relies upon "information and belief" that the "Accused Product," having the specified concentration of impurity, was made by the process of at least claim 1 of the particular Asserted Patent.   None of the counts identifies any of the defendants other than Jinhe China – not UMC Ingredients – as an entity that conducts the patented process of the Asserted Patents.   None of the counts identifies any specific defendant as being an importer of the non-patented "Accused Product," which is alleged to be made by a patented process recited in one of the Asserted Patents.

In the context of alleging a claim for direct patent infringement, *Twombly* and *Iqbal* require Celanese to plead facts that plausibly indicate that the processes practice each of the limitations found in the asserted claims or that the imported product is made by an accused

process.   *North Star Innovations, Inc. v. Micron Tech., Inc*., 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017); *Modern Telecom Sys., LLC v. TCL Corp*., 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017).   Merely parroting back the language of the claim elements and stating that the accused product or process is comprised of such elements fails to meet this obligation.   *North Star Innovations*, 2017 WL 5501489, at *2; *Modern Telecom*, 2017 WL 6524526, at *3; *cf. Disc Disease Solutions, Inc. v. VGH Solutions, Inc*., 888 F.3d 1256, 1260 (2018) (finding pleading sufficient because case involved a simple technology and the complaint sufficiently identified the three accused products by name and by attaching photos of the accused products).   The complaint in *North Star* "in essence, repeat[ed] the wording of th[e] claim elements and then simply state[d] that the Accused Product is comprised of such elements."   *North Star*, 2017 WL 5501489, at *2.   The court in *North Star* held that the complaint failed to state a claim because "merely copying the language of a claim element, and then baldly stating (without more) that an Accused Product has such an element" fails to meet the patentee's obligation to assert a plausible claim of infringement under *Twombly* or *Iqbal.   Id.; see also Modern Telecom*, 2017 WL 6524526, at *3 (dismissing a complaint that merely parroted the language of claim elements and asserted, without more, that the accused product met the language).

Celanese fails to support its allegation on direct infringement with specific facts as to any defendant and especially as to UMC Ingredients.

### D.   Celanese Does Not Individually Accuse UMC Ingredients of Direct Infringement

Celanese does not individually accuse UMC Ingredients of direct infringement, including by making, having made, using, selling, and/or offering for sale the process of any of the four Asserted Patents.   Celanese's Complaint does not identify any defendant other than Jinhe China

of engaging in the performance of any of the patented processes.   Celanese alleges on "information and belief" that UMC Ingredients commits acts of infringement by placing "infringing products" in the stream of commerce.   *See* D.I. 1 ¶ 13.   However, Celanese is misusing the term "infringing product."   The product, Acesulfame, alone is no longer protected as a "composition" or chemical compound by a U.S. patent.   The Hoechst '486 patent protected this compound until it expired on **September 5, 1989**.

The four Asserted Patents recite "processes" for making this unpatented compound. Dependent claim 4 of the '097 patent and dependent claim 6 of the '316 patent are product-by-process claims.   These claims only protect the Acesulfame when it is made by the patented process of one of these two Asserted Patents.   This distinction is important to the matter at hand in that UMC Ingredients has purchased the Acesulfame from Jinhe China since at least the year 2010.   (*See* D.I. 1 ¶ 50 (disclosing 10 year shelf life and evidencing at least 10 years of product testing)).   None of the four Asserted Patents provided any patent protection to any Acesulfame product made by their patented process until **March 12** and **March 19, 2019**, when the '316 patent and the '164 patent were issued.   The Celanese Complaint does not state any facts that show that the Acesulfame purchased by UMC Ingredients over a decade from Jinhe China was produced by different processes.   In other words, if the Acesulfame produced from March 12 and March 19, 2019, to the present was made by Jinhe China by the same process used by Jinhe China from the year 2010 to the day before the '316 patent and the '164 patent issued, then Celanese's Asserted Patents are invalid for claiming processes known in the prior art.

Celanese's Complaint contains no fact upon showing that the Acesulfame sold to UMC Ingredients for over a decade was ever made by a process claimed in one or more of the Asserted

Patents.   The Complaint makes no direct statement of fact as to any knowledge of the process used by Jinhe China except that which is based upon Celanese's "information and belief."   The Complaint does not even hint that Celanese made a reasonable effort to determine what processes Jinhe China actually used over the decade of sales to UMC Ingredients.

Celanese has named five different entities as defendants including, in addition to UMC Ingredients, Anhui Jinhe Industrial Co., Ltd. ("Jinhe China"), Jinhe USA LLC ("Jinhe USA"), Prinova US LLC ("Prinova"), and Agridient, Inc. ("Agridient").   The Complaint collectively identifies the five defendants without differentiating between any of the five entities.   *See* D.I. 1 ¶ 1.   By grouping all five defendants into the umbrella term "Defendants," Celanese is essentially asserting that each defendant is responsible for the actions of all of the other defendants or, at the very least, Celanese fails to identify the specific actions it alleges were taken by each defendant.

When alleging direct infringement, however, Celanese is required to identify which particular defendant or defendants are responsible for which allegedly infringing products, processes, or methods.   *See M2M Solutions LLC v. Telit Commc'ns PLC*, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015).   Because Celanese's Complaint fails to identify which particular defendant is responsible for which allegedly infringing product, process or method, and because Celanese also fails to plead facts sufficient to show that each (or one) defendant is responsible for the actions of the other defendants, Celanese's direct infringement claims should be dismissed.   *See M2M Solutions LLC*, 2015 WL 4640400 at *3; *BlackBerry Ltd. v. Nokia*, 2018 WL 1401330 (D. Del. 2018), at *2.

### E.   Celanese Failed to Identify Adequately the Processes UMC Ingredients Is Accused of Infringing and the Claims Being infringed

UMC Ingredients has purchased the Acesulfame potassium from Jinhe China since at least the year 2010.   Celanese makes no allegation that Jinhe China has ever changed its process for making the Acesulfame purchased by UMC Ingredients.   If Celanese's allegations are true, then Celanese's own Asserted Patents would be invalid.   Celanese, in its broad assertions that the Acesulfame imported by UMC Ingredients was made by the Celanese patented processes, is reading its claims on prior art processes used by Jinhe China more than one year before the effective filing date of Celanese's Asserted Patents.

UMC Ingredients was never informed by Jinhe China that Jinhe China, for example, adopted a "new or improved process" for making its Acesulfame.   Further, UMC Ingredients was never informed by Jinhe China that the concentration of the impurities acetoacetamide-N-sulfonic acid and acetoacetamide and/or the impurity 5-chloro-acesulfame potassium were diminished or eliminated over the years that UMC Ingredients purchased the Acesulfame.

In order for the allegations in Celanese's Complaint to be accepted as true, Celanese must identify the processes used by Jinhe China to make the Acesulfame that are being accused of infringement.   A plain reading of the Complaint and its attachments shows that Jinhe China must have used for many years a process which does not infringe any of the four Asserted Patents or the Asserted Patents are invalid.   Otherwise, if Jinhe China continued to use the same process after the earliest priority date of September 21, 2016, to make its Acesulfame, then the Asserted Patents are invalid because the Asserted Patents claim prior art.   Celanese offers no evidence that Jinhe China changed its process after the Asserted Patents were published or issued and thereby adopted the patented processes.

15

Celanese fails to identify through assays or other facts which processes were used by Jinhe China to make the batches of Acesulfame purchased by UMC Ingredients from 2010 until the filing of the Complaint.   The Complaint does not state any facts identifying any process used by Jinhe China and merely states that a non-specific process used by Jinhe China which is not limited to any period of time was "upon information and belief" a process recited by at least claim 1 of one or more of the Asserted Patents.

*Twombly* and *Iqbal* also require a patent infringement complaint to identify the specific products or processes alleged to infringe the asserted claims.   *See, e.g., Raindance Techs. v. 10x Genomics, Inc.*, 2016 WL 927143 (D. Del. Mar. 4, 2016), at *2.   These broad allegations contradict Celanese's assertions that its patents are both infringed and valid.   *See Upsher-SmithLabs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) ("A century-old axiom of patent law holds that a product which would literally infringe if later in time anticipates if earlier") citing, inter alia, *Peters v. Active Mfg. Co*., 129 U.S. 530, 537 (1889).   ("That which infringes, if later, would anticipate, if earlier.")

Consequently, Celanese's identification of nothing more than Acesulfame, which was made by prior art processes long before the processes asserted in the Complaint, is deficient. Celanese has not plausibly alleged infringement of a specific non-prior art process used by Jinhe China.   *See, e.g., Raindance*, 2016 WL 927143, at *2 (dismissing complaint that failed to include sufficient facts alleging how each limitation of each asserted claim was met); *see also Asghari-Kamrani v. United Servs. Auto. Ass'n,* 2016 WL 1253533, at *4 (E.D. Va. Mar. 22, 2016) (dismissing complaint and holding that "Plaintiffs must detail how each claim is infringed").   Celanese has not plausibly distinguished any prior art processes from any newer

16

patented processes and then identified the Acesulfame imported by UMC Ingredients as being made by the new processes of the Asserted Patents.

### F.   Celanese's Allegations of Indirect Infringement Fail to Meet the Requirements Set Forth in *Twombly* and *Iqbal*

Celanese's Complaint accuses Jinhe China of inducing "third parties, including suppliers and/or retailers/distributors, to sell, offer for sale, use, and/or import into the United States, without license or authority, the Accused Product."   D.I. 1 ¶¶ 78, 92, 106, and 120.   Celanese never identifies these "third parties," and it is uncertain as to whether Celanese intends to include the four other defendants, including UMC Ingredients, in these assertions of induced infringement.

Celanese's Complaint does not specifically state that UMC Ingredients is a defendant under § 271(g) based solely upon its importation of Acesulfame purchased from Jinhe China. Celanese's Complaint generally accuses all defendants of infringement "in violation of at least 35 U.S.C. § 271(a) and/or (g)."   To state a plausible claim for relief as to any particular patent claim, Celanese must first start by identifying the rights, i.e., the specific claims, that it asserts UMC Ingredients has infringed.   *See, e.g., Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984) ("each claim must be considered as defining a separate invention") (citing 35 U.S.C. § 282).   To the extent that Celanese is accusing UMC Ingredients of infringement of § 271(a) and (b), the Complaint as to UMC Ingredients is vague and does not clearly identify which claims are infringed by UMC Ingredients having made, used, sold, or offered for sale the "processes" of the Asserted Patents.   If Celanese is only accusing UMC Ingredients of importing a non-infringing product made outside of the United States by processes that are patented in the United States, then Celanese must state this assertion.

17

Celanese's Complaint seeks a permanent injunction in paragraph (e) of its Prayer for Relief.   In this paragraph "contributory infringement" of the Asserted Patents is included. However, contributory infringement is not otherwise mentioned in the Complaint.

### G.    Because Celanese Has Not Plausibly Pled Direct Infringement, Celanese Cannot Plausibly Plead Indirect Infringement

To the extent Celanese alleges that the defendants other than Jinhe China are indirectly infringing "at least" claim 1 of each of the four Asserted Patents, it has not pled facts sufficient to plausibly support that allegation.   Because there cannot be indirect infringement without direct infringement, and because Celanese has not plausibly pled direct infringement, Celanese has also not plausibly pled indirect infringement.   *See e.g., Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2116 (2014) (holding a defendant cannot be liable for inducement of infringement without direct infringement), and *Varian Med. Sys., Inc. v. Elekta AB et al*., 2016 WL 3748772, at *3 (D. Del. Jul. 12, 2016) ("To state a claim for either induced or contributory infringement, Plaintiff must, inter alia, sufficiently allege some underlying act of direct infringement").   *See also Modern Telecom Sys.*, 2017 WL 6524526, at *4 ("Because Plaintiff's allegations of induced, contributory and willful infringement all require that there be plausible allegations of direct infringement (and there are not), the allegations as to those claims are necessarily insufficient as well").   Accordingly, to the extent Celanese's claims for direct infringement with respect to the four Asserted Patents are dismissed, the claims for inducement and contributory infringement must also be dismissed.

### H.    Celanese Has Failed to Identify Which Entity Is Allegedly Responsible for Indirect Infringement

Celanese's failure to differentiate between the defendants is also fatal to its allegations of inducement of infringement and contributory infringement.   For Celanese's inducement claims to satisfy Rule 8(a), its Complaint must, inter alia, plead facts "plausibly showing that [the alleged infringer] specifically intended [a third party] to infringe [the patent-in-suit] and knew that the [third party's] acts constituted infringement."   *In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).   With respect to contributory infringement, Celanese's Complaint must, inter alia, plead facts plausibly showing that a defendant "offers to sell or sells within the United States or imports into the United States a component of a patented machine . . . ."   35 U.S.C. § 271(c); *M2M Solutions*, 2015 WL 4640400 at *5.

A plaintiff alleging induced infringement against multiple defendants must identify which defendant or defendants are responsible for the acts that constitute the induced infringement. *See M2M Solutions*, 2015 WL 4640400, at *4-5 ("Referring to both Defendants under one single term, Plaintiff has not pled a plausible inducement claim against [Defendant].") ; *see also Neology, Inc. v. KapschTrafficcom IVHS, Inc.*, 2014 WL 4675316, at *7 (D. Del. Sept. 19, 2014) ("Treating [defendants] as one big group for purposes of articulating how each has encouraged the induced infringement at issue says nothing plausible as to what any particular one of them might have done.").

19

## V.      CONCLUSION

UMC Ingredients respectfully requests that the Court dismiss each of the direct and

indirect infringement allegations of Counts I through IV against UMC Ingredients.

Respectfully submitted,

SHAW KELLER LLP

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
I.M. Pei Building, 12th Floor
1105 North Market
Wilmington, Delaware 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

*Attorney for Defendant*
*UMC Ingredients, LLC*

OF COUNSEL:
Paul Grandinetti
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W., Suite
304 Washington, D.C. 20036
(202) 429-4560
mail@levygrandinetti.com

Dated:   January 19, 2021