# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CELANESE INTERNATIONAL CORPORATION, CELANESE (MALTA) COMPANY 2 LIMITED, & CELANESE SALES U.S. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ANHUI JINHE INDUSTRIAL CO., LTD., JINHE USA LLC, UMC INGREDIENTS, LLC f/k/a/ JRS INTERNATIONAL LLC, PRINOVA US LLC, & AGRIDIENT, INC., <br><br> Defendants. | C.A. No. 20-1775-LPS |

**PLAINTIFFS' OPPOSITION TO DEFENDANT UMC INGREDIENTS, LLC'S MOTION TO DISMISS UNDER RULE 12(b)(6)**

Dated: February 2, 2021

**OF COUNSEL:**

Aaron G. Fountain
**DLA PIPER LLP (US)**
410 Congress Avenue, Suite 2500
Austin, TX 78701
Telephone: (512) 457-7000
Facsimile: (512) 457-7001
aaron.fountain@us.dlapiper.com

Aaron Wainscoat
Susan M. Krumplitsch
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 833-2440
Facsimile: (650) 687-1230
aaron.wainscoat@us.dlapiper.com
susan.krumplitsch@us.dlapiper.com

Brian A. Biggs (DE Bar No. 5591)
Erin E. Larson (DE Bar No. 6616)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: 302.468.5700
Facsimile: 302.394.2341
brian.biggs@us.dlapiper.com
erin.larson@us.dlapiper.com

*Attorneys for Plaintiffs Celanese International Corporation, Celanese (Malta) Company 2 Limited, and Celanese Sales U.S. Ltd.*

WEST\292970698.1

Ellen A. Scordino
Kristin M. Beale
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000
Facsimile: (617) 406-6100
ellen.scordino@us.dlapiper.com
kristin.beale@us.dlapiper.com

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

LEGAL STANDARD ...................................................................................................................... 4

ARGUMENT ................................................................................................................................... 4

I.     CELANESE PLAUSIBLY PLEADS UMC INFRINGES THE ASSERTED PATENTS ............................................................................................................ 4

    A.     Celanese's Allegations Meet the Pleading Standard for Direct Infringement ................................................................................................... 4

    B.     An Assay Or Claim-By-Claim Analysis Is Not Required ...................................... 9

    C.     Celanese Can Group Defendants When Claiming Infringement .......................... 10

II.     UMC'S ARGUMENTS THAT THE ASSERTED PATENTS ARE INVALID IS A FACTUAL ASSERTION IMPROPER FOR A 12(B)(6) MOTION TO DISMISS ................................................................................................................. 11

III.     UMC IS NOT ACCUSED OF INDUCED INFRINGEMENT ...................................... 12

CONCLUSION ............................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Align Tech., Inc. v. 3Shape A/S*,
    339 F. Supp. 3d 435 (D. Del. 2018) ........................................................................................5

*Arizonans for Official English v. Arizona*,
    520 U.S. 43 (1997) .................................................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................4

*B# on Demand LLC v. Spotify Tech. S.A.*,
    No. 19-2077, 2020 WL 5369185 (D. Del. Sept. 8, 2020) .......................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................................4

*Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*,
    No. 20-519-RGA, 2021 WL 65071 (Jan. 7, 2021) .................................................................10

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ................................................................................................5

*BioMérieux, S.A. v. Hologic, Inc.*
    No. 18-21-LPS, 2018 WL 4603267 (D. Del Sept. 25, 2018) ............................................8, 10

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015) ...........................................................................................................11

*DermaFocus LLC v. Ulthera, Inc.*
    201 F. Supp. 3d 465 (D. Del 2016) ......................................................................................7, 8

*Disc Disease Sol'ns Inc. v. VGH Sol'ns, Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018) ................................................................................................5

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) .....................................................................................................4

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91, 102–03 (2011) ...................................................................................................11

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018) ................................................................................................9

*North Star Innovations v. Micron Tech.*,
    2017 WL 5501489 (D. Del. Nov. 16, 2017) ..................................................................9

S*hire Viropharma v. CSL Behring*,
    2019 WL 3546692 (D. Del. Aug. 5, 2019) ..................................................................10

*SIPCO, LLC v. Streetline, Inc.*,
    230 F. Supp. 3d 351 (D. Del. 2017) ............................................................................13

*W.L. Gore & Assoc., Inc. v. Garlock, Inc.*,
    721 F.2d 1540 (Fed. Cir. 1983) ...................................................................................12

*Zimmer Surgical, Inc. v. Stryker Corp.*,
    No. 16-679, 2017 WL 1296026 (D. Del. Apr. 6, 2017) ..............................................11

**Statutes**

35 U.S.C. § 271(g) ............................................................................................................. *passim*

35 U.S.C. § 282 ..........................................................................................................................11

35 U.S.C. § 295 ......................................................................................................................8, 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1, 4, 11, 12

Fed. R. Civ. P. 15(a)(2) ............................................................................................................13

S. Rep. No. 100-83 (1987) ......................................................................................................3, 9

**INTRODUCTION**

Defendant UMC Ingredients, LLC f/k/a JRS International LLC's ("UMC") motion to dismiss for failure to state a claim under Rule 12(b)(6) should be denied. D.I. 11, 12 (hereinafter, "UMC's Motion"). Plaintiffs Celanese International Corporation, Celanese (Malta) Company 2 Limited, and Celanese Sales U.S. Ltd. (collectively, "Celanese" or "Plaintiff") filed a Complaint, D.I. 1, against Anhui Jinhe Industrial Co., Ltd. ("Jinhe"), Jinhe USA LLC ("Jinhe USA"), UMC, Prinova US LLC ("Prinova"), and Agridient, Inc. ("Agridient") (collectively, "Defendants") for infringing U.S. Patent Nos. 10,233,164 ("the '164 patent"), 10,590,096 ("the '096 patent"), 10,227,316 ("the '316 patent"), and 10,590,097 ("the '097 patent") (collectively, the "Asserted Patents"). The Complaint alleges that the patents are valid, that Jinhe secretly uses the methods claimed in the Asserted Patents to manufacture a high-purity acesulfame potassium ("Ace-K") product, and that Defendants, including specifically UMC, infringe the asserted patents by importing Jinhe's Ace-K product in violation of 35 U.S.C. § 271(g). The allegations supporting this infringement claim must be taken as true, and the only issue before the Court is whether these allegations give rise to a plausible claim for relief. As explained herein, they unquestionably do.

UMC's Motion largely ignores Celanese's claims and facts as pleaded and instead responds primarily with its own *factual* arguments. A motion to dismiss under Rule 12(b)(6) is, of course, the wrong vehicle to raise factual disputes, but equally problematic is that the facts asserted by UMC's motion are legally irrelevant to Celanese's claims. Most egregiously, UMC argues that Celanese's patents are invalid because Ace-K as a compound has been known since the 1970s. UMC is wrong as a matter of law because Celanese's patents are directed to improved methods for producing high-purity Ace-K. And where UMC's motion does address the claims actually asserted by Celanese, the motion ignores or misapplies the law applicable to pleading claims of

1

infringement based on a defendant's use of a secret manufacturing process.  Accordingly, the Court should deny UMC's Motion.

## BACKGROUND

Celanese's Asserted Patents claim improved *methods* for producing high purity Ace-K compositions in which the formation of impurities such as 5-choloro-acesulfame potassium and acetoacetamide-N-sulfonic acid are reduced or eliminated.  D.I. 1 at ¶¶ 30, 41.  The method that Defendant Jinhe uses to manufacture Ace-K is not publicly available.  Celanese's Complaint details the publicly available information about Jinhe's Ace-K product and its method of manufacturing the same.  That information is described in the factual allegations below, which presumed to be true, support a plausible claim of infringement.

Ace-K has an intense, sweet taste and is used in many food-related applications as a sweetener.  *Id.* at ¶ 25.  By eliminating or reducing impurities in the Ace-K, the methods of the Asserted Patents reduce or eliminate the need to separate these impurities from the finished Ace-K composition, resulting in increased yields and substantial costs savings for the manufacture of Ace-K.  *Id.* at ¶¶ 32, 43.

Defendant Jinhe manufactures an Ace-K product ("Jinhe's Ace-K" or the "Accused Product") in China and imports this product into the United States.  *Id.* at ¶¶ 56-58.  Jinhe claims to be the largest producer of Ace-K in the world.  *Id.* at ¶ 44.  Jinhe publicly discloses on its website and in its product manual, which is made available to customers such as UMC, that the Accused Product is an "Ace-K" having the same molecular formula, use, and appearance as the finished Ace-K composition disclosed in the Asserted Patents.  *Id.* at ¶¶ 45, 49, 51.  Further, Jinhe claims it produces a high purity Ace-K with significantly reduced levels of impurities such as acetoacetamide and 5-chloroacesulfame potassium.  *Id.* at ¶¶ 51-53.  Specifically, the Accused Product has an "overall impurity level of less than 20 wppm," an impurity level covered by at least

2

claim 1 of each Asserted Patent. *Id.* at ¶¶ 51-53, 80, 94, 108, 123.  As the largest supplier of Ace-K in the world, Jinhe has a strong incentive to capture the cost savings afforded by using Celanese's patented methods of manufacturing high-purity Ace-K.  *Id.* at ¶¶ 44, 84, 98, 112, 127.  The Complaint therefore alleges that Jinhe manufactures Ace-K using the patented methods.

Citing publicly available U.S. import records, Celanese alleges that UMC has imported the Accused Product, which was produced by Jinhe using Celanese's patented methods.  *Id.* at ¶ 66-67.  The asserted '316 and '164 patents issued in March 2019, and the import records attached to the Complaint show that UMC has imported approximately 48,800 pounds of the Accused Product from at least March of 2019 through October of 2019.  *Id.* at Ex. N.[1]  Through its actions, UMC infringes the Asserted Patents under 35 U.S.C. § 271(g).  D.I. 1 at ¶¶ 77, 91, 105, 119.

Under § 271(g), entities that import or sell in the U.S. a product manufactured by a process covered by a U.S. patent are liable as infringers even if the product is made outside the U.S.  By providing this remedy against U.S. importers and resellers such as UMC, Congress eliminated a loophole in our patent law under which manufacturers could make a product abroad through an infringing process and avoid liability for patent infringement.  S. Rep. No. 100-83, at 39 (1987). Congress reasoned that it was fair to impose liability upon importers/resellers of such products because they can ensure their suppliers respect U.S. patents or seek indemnification for any resulting harm.  *Id*. ("The U.S. purchaser may protect itself . . . by eliciting a contractual commitment from the foreign manufacturer . . . to indemnify the purchaser against such a suit.").

Jinhe keeps its manufacturing process secret.  In view of this fact, Celanese has collected and pleaded the facts available to it—facts that must be accepted as true at this stage—

---

[1] UMC's statement that the import records in D.I. 1, Ex. N only contain records "from July 2017" is incorrect.  D.I. 12 at 6.  The records included in Ex. N include UMC's import activity from July of 2017 through October of 2019.

to plausibly establish that Jinhe is producing its Accused Product using the methods claimed in the Asserted Patents. In fact, the complaint's allegations exceed the pleading standards of *Iqbal*/*Twombly,* particularly as applied to a § 271(g) action. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). For this reason alone, UMC's Motion to Dismiss should be denied.

## LEGAL STANDARD

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a Court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting all the complaint's well-pleaded facts as true, but disregarding any legal conclusions. *Id.* at 210-11. Second, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing the plausibility of a claim, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## ARGUMENT

### I. CELANESE PLAUSIBLY PLEADS UMC INFRINGES THE ASSERTED PATENTS

#### A. Celanese's Allegations Meet the Pleading Standard for Direct Infringement

Celanese has plausibly pled that UMC has imported the Accused Product and infringes under § 271(g). "[T]he plausibility requirement is not akin to a 'probability requirement at the

4

pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) *(*quoting *Twombly,* 550 U.S. at 556); *see also Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 441 (D. Del. 2018) (stating that test for the plausibility of a complaint is whether a plaintiff has pleaded "enough facts to raise a reasonable expectation that discovery will [later] reveal evidence of each necessary element of a plaintiff's claim). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (reversing district court's dismissal where complaint specifically identified accused product and the accused products met each limitation of at least one of the asserted claims). Celanese has met the plausibility requirement by providing publicly available information showing that the Accused Product contains fewer than the maximum claimed impurity limits, that the claimed methods achieve those impurity limits with cost-savings compared to prior methods that Jinhe would be motivated to capture, and that UMC imports the Accused Product. D.I. 1 at ¶¶ 66-67 (UMC importation of Jinhe Ace-K).

More specifically, the '316 patent teaches that the presence of the 5-chloro-acesulfame potassium impurity (in any amount) is by itself indicative that Jinhe manufactures its Ace-K using at least some of the process step limitations of the claims of the Asserted Patents. The '316 patent expressly teaches that the 5-chloro-acesulfame potassium impurity is generated when certain steps common to a conventional process are used. '316 patent at 1:35-52; 5:11-15. That conventional process involves (1) reacting an acetoacetamide salt with sulfur trioxide, a cyclizing agent, to form a sulfur trioxide adduct in a chlorinated solvent such as dichloromethane, (2) hydrolyzing the

5

adduct to form acesulfame-H, and (3) neutralizing the acesulfame-H to form acesulfame potassium, which can be further purified. '316 patent at 4:40-62, 5:29-38. Thus, the Complaint's allegations that Jinhe's Ace-K product contains the 5-chloro-acesulfame potassium impurity in an amount less than 39 wppm, *see* D.I. 1 at ¶¶ 110, 125, directly support a conclusion that Jinhe performs the foregoing steps, which are underlined below in both exemplary claim 1 of the '316 patent and exemplary claim 1 of the '164 patent. Claim of the '096 patent and claim 1 of the '097 patent contain similarly supported limitations.

| '316 patent | '164 patent |
|---|---|
| 1. A process for producing a finished acesulfame potassium composition, the process comprising: <br> reacting an acetoacetamide salt with a cyclizing agent composition having a temperature of less than 35° C. wherein the cyclizing agent composition comprises a sulfur trioxide and a solvent, and wherein the reacting of the acetoacetamide salt with the cyclizing composition forms a cyclic sulfur trioxide adduct composition comprising cyclic sulfur trioxide adduct; and <br> forming a finished acesulfame potassium composition from the cyclic sulfur trioxide adduct, wherein the finished acesulfame composition comprises non-chlorinated acesulfame potassium and less than 39 wppm 5-chloro-acesulfame potassium. | 1. A process for producing a finished acesulfame potassium composition, the process comprising the steps of: <br> (a) forming a cyclic sulfur trioxide adduct; <br> (b) hydrolyzing the cyclic sulfur trioxide adduct to form an acesulfame-H composition comprising acesulfame-H; <br> (c) neutralizing the acesulfame-H in the acesulfame-H composition to form a crude acesulfame potassium composition, wherein the neutralizing step is conducted at a pH at or below 11.0; and <br> (d) treating the crude acesulfame potassium composition to form a finished acesulfame potassium composition comprising acesulfame potassium and less than 37 wppm acetoacetamide-N-sulfonic acid. |

In addition, Celanese points to Jinhe's own publicly available materials as evidence of 5-chloro-acesulfame potassium and acetoacetamide-N-sulfonic acid in amounts less than the claimed limits. D.I. 1 at ¶¶ 83, 97, 111, 126.

Thus, the well-pleaded allegations in the Complaint explicitly demonstrate Jinhe's uses of each limitation of an exemplary claim from the Asserted Patents with the exception of the process

6

parameter limitations. In the exemplary claims above, the process parameter limitations include the "cyclizing agent composition having a temperature of less than 35 °C" ('316 patent) and "wherein the neutralizing step is conducted at a pH at or below 11.0" ('164 patent). Indeed, Celanese cannot explicitly allege facts for these limitations since Jinhe's manufacturing parameters for these steps are secret and inaccessible to Celanese without discovery.

Nevertheless, the Complaint plausibly suggests that Jinhe uses the claimed process parameters for at least three reasons. First, the patents teach that using the claimed process parameters leads to the impurity levels alleged to be present in Jinhe's Ace-K. *Id.* at ¶¶ 25-31, 37-42. Second, the Complaint alleges that using these process parameters produces Ace-K at the alleged impurity levels at lower cost than not using the process parameters. *Id.* at ¶¶ 32, 43. And third, as the largest manufacturer of Ace-K in the world, Jinhe has a strong incentive to capture the cost savings achievable with the claimed methods. *Id.* at ¶¶ 44, 84, 98, 112, 127.

Indeed, the type of evidence Celanese has detailed in the complaint meets the pleading standard applied in recent patent cases in this district. For example, *DermaFocus LLC v. Ulthera, Inc.* involved a method patent on ultrasound skin treatment. 201 F. Supp. 3d 465, 467 (D. Del. 2016). The complaint alleged that defendant's "Ulthera System" procedure infringed based on a webpage that described it as using "safe, time-tested, ultrasound energy" to treat skin. Ex. 1 (*DermaFocus* Am. Compl.) at ¶¶ 10, 16; Ex. 2 (*DermaFocus* Am. Compl. Exhibit B). Like here, the webpage provided no other detail about the method. The court upheld the complaint over a *Twombly/Iqbal* challenge because "[a] defendant cannot shield itself from a complaint . . . by operating in such secrecy that the filing of a complaint itself is impossible." The court explained:

> In the context of patent litigation, it is logical to presume that a defendant has greater access to and, therefore, more information about its accused method. The degree of public information about any accused method varies widely, as does the degree of specificity with which any asserted invention is claimed. Given the focus

7

>of the above articulated standard of review on reasonable notice of plausible claims under the circumstances, the question a court must address with each case is whether the plaintiff at bar has provided sufficient information to allow the court to determine plausibility and to allow the named defendant to respond to the complaint. Absent specific guidance from the Federal Circuit directing the court to front-load the litigation process by requiring a detailed complaint in every instance, the court declines to do so.

*DermaFocus,* 201 F. Supp. 3d at 469. (Motion to dismiss denied).

Similarly, in *BioMérieux, S.A. v. Hologic, Inc.*, plaintiffs alleged infringement of patents on HIV diagnostic methods. No. 18-21-LPS, 2018 WL 4603267, at *1-2, 4 (D. Del. Sept. 25, 2018). The complaint asserted, without description or supporting evidence, that Defendants' products had features tracking the claim elements, which included, among other things, specific nucleotide sequences. *See* Ex. 3 (*BioMérieux* Compl.) at ¶¶ 49, 60. The court denied the motion to dismiss, observing that "[p]laintiffs cannot be charged with knowing, at the time they drafted their complaint, non-public information they could only obtain after filing suit and obtaining discovery." *BioMérieux,* 2018 WL 4603267, at *4.

Celanese has pleaded at least as much, if not more, than the plaintiffs in these actions. And like those cases, UMC's motion should be denied here. Indeed, Congress itself has recognized that when § 271(g) infringement actions like this one move beyond the pleading stage, patent holders' efforts to discover a secret manufacturing method of an accused infringer may be stymied, and Congress enacted 35 U.S.C. § 295 to address this problem. Section 295 shifts the burden to prove noninfringement to the accused infringer in certain circumstances when discovery into the accused infringer's secret manufacturing process is unavailable. Moreover, the type of evidence Celanese has pleaded is the very type Congress contemplated patentholders could use under § 271(g) to invoke the presumption of § 295 during litigation:

>To establish a substantial likelihood, for example, a patentee might show that the patented process was the only known method, or the only commercially practical

8

> method, for producing the product, or that physical evidence, such as the exact chemical composition of the product, indicates the use of the patented process.

Ex. 4 (S. Rep. No. 100-83) at 45. To dismiss Celanese's complaint would paradoxically require a patentholder to plead more specificity than it is required to obtain during discovery to shift the burden of proof at trial under § 295. Indeed, what UMC demands from Celanese at the pleading stage is essentially proof of infringement. This is not the law.

### B. An Assay Or Claim-By-Claim Analysis Is Not Required

UMC incorrectly argues that Celanese must provide a detailed infringement analysis in the form of a chart or assay test results, but a complaint is not required to provide a detailed, claim-by-claim analysis, chart, or assay. *Compare Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (noting a plaintiff "need not prove its case at the pleading stage" or "plead facts establishing that each element of an asserted claim is met") (internal quotation marks and citations omitted) *with* D.I. 12 at 5–6 (asserting that Celanese must "state that the purity of [Jinhe's] product improved after the Celanese patent applications" or include an "assay with each listed order of the Acesulfame purchased by [UMC] from Jinhe") & D.I. 12. at 11 ("No claim chart or assay is provided . . . ."). UMC's wrongly-articulated chart or assay requirement is particularly inapplicable to § 271(g) infringement cases, where Congress recognized the unique and difficult challenges when obtaining pre-suit proof that a product is made by a patented process.

Indeed, the pleading standard urged by UMC exceeds that which the Court applies to allegations of infringement generally. *See, e.g., North Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 WL 5501489, at *3 (D. Del. Nov. 16, 2017) ("The Court does not believe that to meet [the pleading] burden, a patentee will necessarily have to provide, along with its complaint, the equivalent of the detailed infringement charts that are called for by typical initial patent disclosures in this District."); *see also Nalco Co.*, 883 F.3d at 1350 ("[T]he Federal Rules

9

of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met."). And the level of specificity articulated by UMC's motion is more akin to that required in discovery by this Court's Local Patent Rules. *See* S*hire Viropharma v. CSL Behring, LLC*, No. 17-414, 2019 WL 3546692, at *6 (D. Del. Aug. 5, 2019) ("Such infringement contentions have been deemed to obviate the need for detailed pleading as to the individual dependent claims."); *BioMérieux*, 2018 WL 4603267, at *3 (observing, in framing the pleading standard, that the plaintiffs "will be serving infringement contentions at an early stage in the proceedings, providing further clarity as to the charges").

### C. Celanese Can Group Defendants When Claiming Infringement

UMC incorrectly argues it is impermissible that "[e]ach of the four counts states that the Defendants (as a group)" infringe the Asserted Patents. D.I. 12 at 10. A plaintiff can refer to multiple defendants collectively in a pleading, as long as the plaintiff has pled enough facts to plausibly claim each defendant individually infringes the Asserted Patents. *See Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*, No. 20-51-RGA, 2021 WL 65071, at *9–10 (D. Del. Jan. 7, 2021) (Report and Recommendation) (recommending denying motion to dismiss because the complaint identified at least one type of infringement levied against each defendant).

Celanese alleged that UMC imported Jinhe's Ace-K when the Asserted Patents were in force. D.I. 1 at Ex. N and at ¶¶ 22, 34. As such, Celanese has plead sufficient facts that UMC has violated at least § 271(g) by "import[ing] Jinhe's Ace-K into the United States." Grouping UMC with the other infringing defendants is well-established practice. D.I. 1 at ¶¶ 66-67, 77, 91, 106, 119.

## II. UMC'S ARGUMENTS THAT THE ASSERTED PATENTS ARE INVALID IS A FACTUAL ASSERTION IMPROPER FOR A 12(B)(6) MOTION TO DISMISS

UMC's repeated challenges to the validity of the Asserted Patents are legally incapable of supporting UMC's claim for relief under Rule 12(b)(6) for multiple reasons. *E.g.*, D.I. 12 at 2 ("Such a *fact*, if true, renders each of the Asserted Patents invalid.") (emphasis added). First, "[t]he purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case." *Zimmer Surgical, Inc. v. Stryker Corp.*, No. 16-679-RGA, 2017 WL 1296026, at *3 (D. Del. Apr. 6, 2017). Second, a U.S. patent is presumed valid, requiring clear and convincing evidence to invalidate. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 102–03 (2011); *see also* 35 U.S.C. § 282. "That presumption takes away any need for a plaintiff to prove his patent is valid to bring a claim." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 135 S. Ct. 1920, 1929 (2015).

But beyond the legal irrelevance of UMC's invalidity arguments at this stage, UMC has failed to articulate a cognizable theory of invalidity. UMC claims the Asserted Patents are invalid because the Ace-K compound was once the general subject of a patent from 1972 and was imported into the United States. *See, e.g.*, D.I. 12 at 2 (claiming, without support, UMC imported a product made with a claimed process before the earliest priority date of an Asserted Patent), *Id.* at 13 (claiming "Acesulfame" can never be patented again because it was already claimed in a patent). But as set forth in the Complaint, the Asserted Patents claim specific methods of manufacturing high-purity Ace-K, and UMC's motion does not identify any publicly available prior art that

discloses or teaches the processes claimed by the Asserted Patents.[2] UMC's invalidity argument based on prior art not identified in its Rule 12(b)(6) motion must fail.

UMC's hinted arguments about Jinhe's undisclosed manufacturing process before the priority date of the Asserted Patents also fail. *E.g.*, D.I. 12 at 15 (noting UMC was never informed Jinhe "adopted a new or improved process"), *Id.* at 16 ("Celanese's identification of nothing more than Acesulfame, which was made by prior art processes . . ., is deficient."). Whether Jinhe has secretly used the processes claimed by the Asserted Patents is both an improper factual argument and legally irrelevant. *See W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983) (stating that secret use of a process by someone other than the patentee does not invalidate the patent).

None of these arguments are proper at the motion to dismiss stage.

### III. UMC IS NOT ACCUSED OF INDUCED INFRINGEMENT

Celanese only accused Jinhe of induced infringement. D.I. 1 at ¶¶ 78, 92, 106, 120; *see also* D.I. 12 at 10 ("Each of the four counts of the Complaint states that Jinhe[] induced infringement of at least claim 1 of each Asserted Patent . . . ."). Celanese never alleges that UMC induced infringement in any of the Counts, so UMC's request "that the Court dismiss each of the . . . indirect infringement allegations" is not ripe and should be denied. D.I. 12 at 20.

UMC also states, "None of the counts identifies any party as the party induced by Jinhe[] to infringe one or more of the Asserted Patents," in what appears to be a challenge to the induced

---

[2] The contents of U.S. Patent No. 3,689,486 cited by UMC are beyond the scope of the complaint and should be disregarded entirely on this basis. *IOENGINE, LLC v. PayPal Holding, Inc.*, No. 18-452-WCB, 2019 WL 2121395, at *7 (D. Del. May 15, 2019) (evidence outside the scope of the complaint and its attachments does not provide a basis for the court to grant a motion to dismiss). In addition, that patent is irrelevant because it merely discloses a first-generation production process to obtain acesulfame-H. Ex. 5, ('486 patent) at Example 1. Nowhere does the patent teach or suggest Ace-K or any specific production process for producing high-purity Ace-K.

12

infringement allegations levied against Jinhe. *Id.* at 10. However, since UMC is not accused of indirect infringement, it has no standing to challenge whether any other party has indirectly infringed the Asserted Patents. *See generally Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("Standing to sue or defend is an aspect of the case-or-controversy requirement."). In addition, UMC's argument is simply wrong. The direct infringers induced by Jinhe are the importers such as UMC who directly infringe by importation under § 271(g). D.I. 1 at ¶¶ 59, 66-72, 77, 91, 105, 119.

## CONCLUSION

Celanese respectfully requests that the Court DENY UMC's Motion to Dismiss because Celanese has plausibly plead infringement against UMC in compliance with Rule 8(a). In the alternative, should the Court decide to grant any part of UMC's Motion, Celanese should be given leave to amend its Complaint. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a complaint] when justice so requires."); *see B# on Demand LLC v. Spotify Tech. S.A.*, No. 19-2077-RGA, 2020 WL 5369185, at *14 (D. Del. Sept. 8, 2020) (granting leave to amend); *SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 354 (D. Del. 2017) (same).

| | |
|---|---|
| Dated: February 2, 2021 | Respectfully submitted, |
| **OF COUNSEL:** | **DLA PIPER LLP (US)** |
| Aaron G. Fountain<br>**DLA PIPER LLP (US)**<br>410 Congress Avenue, Suite 2500<br>Austin, TX 78701<br>Telephone: (512) 457-7000<br>Facsimile: (512) 457-7001<br>aaron.fountain@us.dlapiper.com | */s/ Brian A. Biggs*<br>Brian A. Biggs (DE Bar No. 5591)<br>Erin E. Larson (DE Bar No. 6616)<br>1201 North Market Street, Suite 2100<br>Wilmington, DE 19801-1147<br>Telephone: 302.468.5700<br>Facsimile: 302.394.2341<br>brian.biggs@us.dlapiper.com<br>erin.larson@us.dlapiper.com |
| Aaron Wainscoat<br>Susan M. Krumplitsch<br>**DLA PIPER LLP (US)**<br>2000 University Avenue<br>East Palo Alto, CA 94303<br>Telephone: (650) 833-2440<br>Facsimile: (650) 687-1230<br>aaron.wainscoat@us.dlapiper.com<br>susan.krumplitsch@us.dlapiper.com | *Attorneys for Plaintiffs Celanese International Corporation, Celanese (Malta) Company 2 Limited, and Celanese Sales U.S. Ltd.* |
| Ellen A. Scordino<br>Kristin M. Beale<br>**DLA PIPER LLP (US)**<br>33 Arch Street, 26th Floor<br>Boston, MA 02110<br>Telephone: (617) 406-6000<br>Facsimile: (617) 406-6100<br>ellen.scordino@us.dlapiper.com<br>kristin.beale@us.dlapiper.com | |

14