IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CELANESE INTERNATIONAL CORPORATION; CELANESE (MALTA) COMPANY 2 LIMITED; & CELANESE SALES U.S. LTD., <br><br> Plaintiff, <br><br> v. <br><br> ANHUI JINHE INDUSTRIAL CO., LTD.; JINHE USA LLC; UMC INGREDIENTS, LLC f/k/a JRS INTERNATIONAL LLC; PRINOVA US LLC; & AGRIDIENT, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) C.A. No. 20-1775-LPS ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) |

**DEFENDANT UMC INGREDIENTS, LLC'S REPLY BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Defendant
UMC Ingredients, LLC*

OF COUNSEL:
Paul Grandinetti
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
(202) 429-4560

Dated: February 9, 2021

## TABLE OF CONTENTS

**Page**

I. SUMMARY OF ARGUMENT .................................................................................... 1

II. CONCISE STATEMENT OF FACTS ........................................................................ 2

III. ARGUMENT ............................................................................................................... 3

    A. The Celanese Complaint Is Contradictory and Presents Facts that the Asserted Patents Are Invalid ............................................................................ 3

    B. Celanese Disregards the Importance of Its Failure to Provide an Assay or Other Analysis ................................................................................................. 5

        1. Celanese Does Not Plead that Jinhe China Used Two or More Processes ............................................................................................. 5

        2. Celanese's Own Complaint Agues that Jinhe China's Invalidating Prior Art Processes Reduced or Eliminated Impurities .......................... 6

    C. Grouping of Defendants .................................................................................. 7

IV. CONCLUSION ............................................................................................................ 7

# TABLE OF AUTHORITIES

**Statutes**

35 U.S.C. § 271(a) ...........................................................................................................................7

35 U.S.C. § 271(g) ...........................................................................................................................7

The Defendant, UMC Ingredients, LLC, which was formerly known as JRS International LLC ("UMC Ingredients"), requests its dismissal from this civil action for the Plaintiffs' failure to state a claim against at least UMC Ingredients upon which relief can be granted and now replies to the Plaintiffs' Answering Brief.

I.     **SUMMARY OF ARGUMENT**

In its opening brief, UMC Ingredients presented two arguments, summarized as follows:

1.     Celanese's Complaint fails to comply with the required standards, especially as to UMC Ingredients. The Complaint makes unsupported allegations, merely paraphrases the language of the patent claim elements, and provides no facts to support a plausible explanation as to UMC Ingredients' alleged infringement of the four Asserted Patents. The Complaint groups five defendants together and fails to provide any separate facts as to any specific defendant's allegedly infringing activity.

2.     U.S. Patent No. 3,689,486 assigned to Hoechst issued on September 5, 1972, for the Acesulfame potassium compound. This patent expired on **September 5, 1989**, and Acesulfame potassium is no longer a patent-protected compound. The Celanese Complaint fails to state a claim upon which relief can be granted because the Complaint – on its face – asserts that the compound imported by UMC Ingredients, LLC, more than one year before the earliest effective filing date of the Celanese patents, was made by a process claimed by one or more of the Asserted Patents. Such a fact, if true, renders each of the Asserted Patents invalid.

Celanese's Answering Brief disregards UMC Ingredients' second argument and neither addressed nor refuted the argument. Celanese's Answering Brief instead newly presents discussions of legal issues related to

(1) Celanese Complaint is contradictory and presents facts that the Asserted Patents are invalid,
(2) assay or claim-by-claim analysis, and
(3) grouping of defendants.

Celanese fails to respond to UMC Ingredients' second argument. This second argument is that the Complaint, if taken as true, itself invalidates each of the four Asserted Patents and, therefore, does not present a plausible basis for infringement. In other words, the Complaint is defective and fails to present a claim upon which relief can be granted.

## II.   CONCISE STATEMENT OF FACTS

UMC Ingredients continues to rely upon the statement of facts presented in its Opening Brief. A summary of those facts are as follows.

The Celanese Complaint asserts that the commercial process used to make each batch of Acesulfame purchased by UMC Ingredients from Jinhe China infringes each of the four Asserted Patents. D.I. 1 ¶¶ 77, 91, 105, and 119.

The Complaint relies upon Jinhe China's Ace-K Product Manual for facts. The Ace-K Product Manual establishes that Jinhe China has commercially produced Acesulfame for at least ten years with sufficiently low impurities so as to become the world's leading producer, and the manual provides ten-year shelf stability data for its commercial Acesulfame. D.I. 1 ¶ 50.

The ten years of Jinhe China's commercial use of a process to make Acesulfame predate the earliest effective filing date of all of the Asserted Patents by at least four years. The effective filing date of the four Asserted Patents is September 21, 2016, which is the common filing date

of the two U.S. provisional applications for the '998 Patent Family and the '000 Patent Family. D.I. 1-1 (Exhibits A (page 3 of 150), B (page 21 of 150), C (page 39 of 150), and D (page 60 of 150).

### III.     ARGUMENT

The Celanese Complaint must be dismissed because Celanese fails to assert any change to the manufacturing process used by Jinhe China and fails to sufficiently plead any change that would demonstrate infringement. Further, if the Complaint is true and the prior process infringed, Celanese's four Asserted Patents are necessarily invalid. Celanese's Complaint fails to comply with the required standards and fails to state a claim upon which relief can be granted because the Complaint – on its face – asserts that the claims of the Asserted Patents read on the commercial process used to make the compound sold by Jinhe China for more than one year before the earliest effective filing date of the Asserted Patents. If the Asserted Patents are invalid, there can be no infringement.

### A.     The Celanese Complaint Is Contradictory and Presents Facts that the Asserted Patents Are Invalid

Celanese's Answering Brief, for the first time, adopted the adjective "secret" when describing Jinhe China's process for making Acesulfame. The Complaint does not adequately allege that the Jenhe China process is secret or even proprietary to Jinhe China.

When Hoechst received its U.S. Patent Number 3,689,486 (the Hoechst '486 patent) on **September 5, 1972**, the patent included a full description as to a process for making Acesulfame. The Hoechst '486 patent expired on **September 5, 1989**. This process has been in the public domain in the U.S. since this expiration date, which is **27 years** before the effective filing date of the Asserted Patents. Additionally, numerous other commercial processes were developed over

3

the years – including the years before the effective filing date of the Asserted Patents – for making Acesulfame.

There is no factual support for Celanese's assertion that the Jinhe China process is "secret"[1] or that any one of the numerous available processes is the process used by Jinhe China. Nor does Celanese offer any citation showing it alleged the use of a "secret" process in the Complaint. (D.I. 19 at 1). Known, industry-standard processes are more readily accepted by government inspectors, such as those with the FDA and other similar non-U.S. agencies, who inspect foreign manufacturing facilities that produce food-grade chemicals. Celanese disregards the significance of the existence of processes in the public domain for processing Acesulfame such as the process disclosed in the Hoechst '486 patent. The Celanese Complaint identifies and relies upon the Ace-K Product Manual, which establishes that Jinhe China was processing commercially acceptable and FDA approved Acesulfame and collecting stability data for at least 10 years.

The commercial process used by Jinhe China to make Acesulfame more than one year before the earliest effective filing date of the Asserted Patents is prior art to the Asserted Patents. If the Complaint is accepted as true, then the claims of the Asserted Patents read upon this prior art process, and the Asserted Patents are invalid. Celanese's assertions that the Asserted Patents read on prior art processes destroy any plausible basis for infringement claims in the Complaint. Neither the Complaint nor Celanese's opposition brief disputes this fact through any evidence that Jinhe China uses a process not found in the prior art, nor any evidence that Jinhe China

---

[1] It is understood that Celanese and Jinhe China have been in litigation in China for about one year over Jinhe China's process for making Acesulfame.

4

adopted a new process. Celanese's failure to compare old Jinhe China samples to new Jinhe China samples is a failure to state a claim and a failure of a proper pre-filing investigation.

Celanese did not address or refute this legal issue in its Answering Brief and failed to explain or correct this defect in its Complaint, which directly contradicts Celanese's assertions of infringement. None of Celanese's "impurity level" arguments distinguishes between prior art manufacturing and the "patented" process.

### B. Celanese Disregards the Importance of Its Failure to Provide an Assay or Other Analysis

#### 1. Celanese Does Not Plead that Jinhe China Used Two or More Processes

UMC Ingredients explained that Celanese's Complaint makes no clear assertion and no attempt to establish that Jinhe China ever changed from prior art processes. The Complaint fails even to suggest that Jinhe China may have adopted a new process after (1) the earliest effective filing date or (2) the first publication date of the invention patent applications.

UMC Ingredients has no knowledge or reason to believe that Jinhe China changed its commercial process for making Acesulfame over the past ten years. UMC Ingredients has been buying the same product with the same assay and the same specifications since long prior to the patents in suit. However, if Celanese is aware of a change by Jinhe China of Jinhe China's process, the Complaint is defective because it does not identify which processes are newly adopted.

If Celanese is attempting to distinguish between invalidating prior art processes and some newly adopted process, Celanese, as part of its pre-filing investigation, should have performed

assays on the Acesulfame from the two different processes.  UMC Ingredients explained that Celanese failed to use any assays to demonstrate that:

(1) the invalidating prior art process had unacceptable concentrations of one or more of the three "impurities" identified in the Asserted Patents and
(2) any newly adopted process "reduced or eliminated" the impurities.

Celanese made no such distinction and side-stepped this failure in its Answering Brief. Consequently, Celanese's Complaint fails to assert any proper claims.

### 2. Celanese's Own Complaint Argues that Jinhe China's Invalidating Prior Art Processes Reduced or Eliminated Impurities

Paragraphs 52 and 53 of the Complaint "upon information and belief" argue that "impurity A" in Ace-K Product Manual refers to acetoacetamide, and that "impurity B" refers to 5-chloro-acesulfame potassium.  D.I. 1 ¶¶ 49 through 53.  Paragraph 50 quotes information from the Ace-K Product Manual and states, "Jinhe claims the Accused Product has the following advantages:  "[h]igh stability," "[a]cesulfame-K can preserve for 10 years under general condition, . . ."  D.I. 1 ¶ 50.  The quotes from the Ace-K Product Manual do not distinguish between impurity levels from batches of Acesulfame made from clearly invalidating prior art processes ten years ago and any supposedly newly adopted process.

Again, Celanese's Complaint is defective because the Complaint attributes "reduced or eliminated" impurity levels to all Jinhe China processes used over ten years.  Celanese in its Answering Brief attempted only to disregard UMC Ingredients' discussion of an assay as an argument that Celanese was required to make a "claim-by-claim" analysis of infringement. UMC Ingredients made no such argument.[2]  Celanese did not refute that the batches of Jinhe

---

[2] UMC Ingredients identified in its Opening Brief that the FDA, at least as early as **July 28, 1988**, required producers of Acesulfame, regardless of the process used, to meet a purity of "not less than 99 percent on a dry basis."  The Complaint does not support an assertion that only the three impurities claimed in the Asserted Patents are found in the UMC Ingredients, Celanese, or

China's Acesulfame, that were made with clearly invalidating prior art processes, reduced or eliminated the claimed impurities of the Asserted Patents. D.I. 12, at 4.

### C. Grouping of Defendants

Celanese mischaracterizes UMC Ingredients' Opening Brief as stating the proposition that Celanese is not permitted to group defendants in its Complaint. UMC Ingredients made no such statement or suggestion. D.I. 19, at 10.

Celanese's Complaint is defective because its does not make plausible assertions of infringement against specific defendants. It is not clear as to which defendant is charged with direct or indirect infringement. It is not clear as to which defendant is charged with infringement under 35 U.S.C. § 271(a) or § 271(g).

The fact that Celanese had to devote a full page of its Answering Brief to explaining that UMC Ingredients is "not accused of induced infringement" – contrary to the counts in the Complaint – is evidence that the Complaint is defective and should be dismissed. D.I. 19, at 12-13. Even without Celanese's contradictory assertions that the Asserted Patents are both invalid and infringed, the Complaint almost solely depends on 37 assertions of "information and belief" and is sufficiently unclear as to require its dismissal.

### IV. CONCLUSION

Processes for manufacture of Acesulfame potassium have existed for decades before Celanese's patents. Celanese fails to provide any factual support or reasonable inference demonstrating that the accused material is made from any particular old or new process.

---

other commercially available Acesulfame. Producers of Acesulfame have been required by the U.S. federal government for at least **28 years** before the earliest effective filing date of the Asserted Patents to reduce or eliminate impurities, regardless of the process used, when making Acesulfame.

Celanese's infringement accusations rely upon assumptions and suppositions based upon information from a product manual describing Jinhe China's product.  However, the Complaint shows that Jinhe China's product was on the market long before the patents in suit were filed and thus did not use an infringing method of manufacture.  Celanese does not allege that Jinhe China ever changed its manufacturing process, nor does Celanese compare any old product samples to any new product samples to assert any change in manufacturing.  Celanese simply alleges that an impurity level, which may be decades old, implies infringement.

  UMC Ingredients respectfully requests that the Court dismiss each of the direct and indirect infringement allegations of Counts I through IV against UMC Ingredients.

              Respectfully submitted,

               */s/ Andrew E. Russell*
              John W. Shaw (No. 3362)
              Andrew E. Russell (No. 5382)
.             SHAW KELLER LLP
              I.M. Pei Building
              1105 North Market Street, 12th Floor
              Wilmington, Delaware 19801
              (302) 298-0700
              jshaw@shawkeller.com
              arussell@shawkeller.com
              *Attorneys for Defendant*
              *UMC Ingredients, LLC*

OF COUNSEL:
Paul Grandinetti
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
(202) 429-4560

Dated: February 9, 2021