IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CELANESE INTERNATIONAL CORPORATION; CELANESE (MALTA) COMPANY 2 LIMITED; & CELANESE SALES U.S. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ANHUI JINHE INDUSTRIAL CO., LTD., JINHE USA LLC, UMC INGREDIENTS, LLC f/k/a JRS INTERNATIONAL LLC, & PRINOVA US LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 20-1775-LPS |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Presently before the court in this patent infringement action are three Rule 12(b)(6) motions to dismiss filed by the following defendants: (1) defendant UMC Ingredients, LLC ("UMC Ingredients") (D.I. 37); (2) defendants Anhui Jinhe Industrial Co., Ltd. ("Jinhe China") and Jinhe USA LLC ("Jinhe USA;" together with Jinhe China, "Jinhe") (D.I. 39); and (3) defendant Prinova US LLC ("Prinova;" collectively with UMC Ingredients and Jinhe, "Defendants") (D.I. 42).[1] For the following reasons, I recommend that the court DENY the three pending motions to dismiss.

---

[1] The briefing associated with the pending motions is found at D.I. 38, D.I. 40, D.I. 43, D.I. 46, D.I. 47, D.I. 48, D.I. 49, D.I. 50, and D.I. 51.

## II.   BACKGROUND

Plaintiffs Celanese International Corporation, Celanese (Malta) Company 2 Limited, and Celanese Sales U.S. Ltd. (collectively, "Celanese") initiated this patent infringement action on December 28, 2020, alleging infringement of U.S. Patent Nos. 10,233,164 ("the '164 patent"), 10,590,096 ("the '096 patent"), 10,227,316 ("the '316 patent"), and 10,590,097 ("the '097 patent") (collectively, the "Asserted Patents"). (D.I. 1) Celanese filed its first amended complaint on April 29, 2021, alleging infringement of the same Asserted Patents. (D.I. 34) Each of the Asserted Patents recites method claims for producing acesulfame potassium compositions with reduced or eliminated levels of impurities. (*Id.* at ¶¶ 25, 30, 37, 41)

The '164 patent, which issued on March 19, 2019, is a continuation of U.S. Patent No. 10,029,998 ("the '998 patent"), which issued on July 24, 2018. (D.I. 34 at ¶¶ 21-23) The '096 patent issued on March 17, 2020 and is a continuation of the '164 patent. (*Id.* at ¶ 23) These patents are directed to compositions and processes for producing high purity acesulfame potassium, which is used as a food sweetener. (*Id.* at ¶ 25) Conventional acesulfame potassium production processes resulted in the production of undesirable impurities like acetoacetamide-N-sulfonic acid, and removal of the impurities was difficult and costly. (*Id.* at ¶¶ 26-32) The '164 and '096 patents claim processes for producing high purity acesulfame potassium compositions that reduce or eliminate the formation of impurities, resulting in increased yields of the finished composition and substantial cost savings in the manufacturing process. (*Id.* at ¶¶ 30, 32)

The '316 patent, which issued on March 12, 2019, is a continuation of U.S. Patent No. 10,030,000 ("the '000 patent"), which issued on July 24, 2018. (D.I. 34 at ¶¶ 33-34) The '097 patent issued on March 17, 2020 and is a continuation of the '316 patent. (*Id.* at ¶ 35) Like the '096 and the '164 patents, the '097 and '316 patents are directed to compositions and processes

2

for producing high purity acesulfame potassium. (*Id.* at ¶ 37) The '097 and '316 patents provide improved processes for producing acesulfame potassium compositions that reduce or eliminate the formation of impurities such as 5-chloro-acesulfame potassium. (*Id.* at ¶¶ 38-41)

Jinhe manufactures a high-purity acesulfame potassium composition (the "Accused Product" or "Ace-K") in China having the molecular formula $C_4H_4NO_4SK$. (D.I. 34 at ¶¶ 44-45) Jinhe's Ace-K product manual represents that it is acceptable for the Accused Product to have an "overall organic impurity level of less than 20 wppm."[2] (*Id.* at ¶¶ 85, 101, 117, 134) The amended complaint cites Jinhe's website and annual reports in support of Celanese's allegation that Jinhe sells the Accused Product globally, with a substantial portion of its revenue attributable to sales made in the United States. (*Id.* at ¶¶ 46-47, 49, 56) According to the amended complaint, Jinhe China sells the Accused Product directly to United States customers, and all Defendants import the Accused Product into the United States. (*Id.* at ¶¶ 47, 54, 56, 62, 66, 68, 79, 95, 111, 127)

On December 3, 2021, Celanese filed a motion for leave to file a first amended complaint to add allegations that Defendants directly, indirectly, and willfully infringe the claims of U.S. Patent No. 10,029,998, the parent of two of the currently Asserted Patents. (D.I. 79; D.I. 80 at 1) The motion is not yet fully briefed and has no bearing on the following analysis, which addresses only the sufficiency of the claims brought against the Asserted Patents.

## III.   LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view

---

[2] The term "wppm" is an acronym for "weight parts per million."

3

them in the light most favorable to the plaintiff. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

### A. Direct Infringement Under 35 U.S.C. § 271(g)

Section 271(g) provides that "[w]hoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process

4

patented in the United States shall be liable as an infringer." 35 U.S.C. § 271(g). Under the statute, liability is not predicated on practicing the patented process abroad. *Syngenta Crop Protection, LLC v. Willowood, LLC*, 844 F.3d 1344, 1359-60 (Fed. Cir. 2019). Instead, liability for infringement arises when products made abroad using the patented process are sold or imported within the United States. *Id.*; *see also Janssen Pharmaceutica, N.V. v. Mylan Pharms. Inc.*, C.A. No. 15-760-SLR-SRF, 2016 WL 5723652, at *2 (D. Del. Sept. 29, 2016) ("[C]onsistent with the language of the statute, the act of infringement is the importation of a product made by a process patented in the United States, not the act of manufacturing the product."). Section 271(g) "is meant to give relief to process patent holders when the resulting products of their patented process are used within the United States—regardless of where the process is practiced." *Zoltek Corp. v. U.S.*, 672 F.3d 1309, 1315 (Fed. Cir. 2012).

"Liability under § 271(g) is subject to the same pleading standard as direct infringement under § 271(a)." *Anza Tech., Inc. v. D-Link Sys., Inc.*, 2016 WL 8732647, at *4 (S.D. Cal. Nov. 4, 2016). Accordingly, a plaintiff must plead facts that plausibly suggest that the accused product or process meets each limitation of the asserted claim or claims. *See Kajeet, Inc. v. Gryphon Online Safety, Inc.*, C.A. No. 19-2370-MN et al., 2021 WL 780737, at *3 (D. Del. Mar. 1, 2021) (citing *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018)). "[D]irect infringement of a method claim requires a showing that every step of the claimed method has been practiced." *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012). Decisions from this district have found that pleadings merely parroting the words of the asserted claims do not meet the plausibility threshold, explaining that the pleading must allege facts articulating why it is plausible that the claims are infringed. *See Modern Telecom Sys., LLC v. TCL Corp.*, C.A. No. 17-583-LPS-CJB; 2017 WL 6524526, at *3 (D. Del.

5

Dec. 21, 2017); *North Star Innovations, Inc. v. Micron Tech., Inc.*, C.A. No. 17-506-LPS-CJB; 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017).

### 1. Infringement of the claimed method steps

As an initial matter, Defendants contend that the amended complaint fails to plead infringement of the Asserted Patents because it does not give rise to a reasonable inference that all steps of the claimed methods are performed by the accused infringer. (D.I. 38 at 10-12; D.I. 40 at 13-14; D.I. 43 at 7-9) Specifically, Defendants challenge Celanese's failure to include a detailed factual comparison between Jinhe China's manufacturing process and the steps of the patented processes. (*Id.*) Instead, Defendants argue that the amended complaint parrots the language of the asserted claims in a conclusory manner, with a focus on the purity levels of the Accused Product. (*Id.*)

But Celanese explains that the details of Jinhe's manufacturing process are not publicly available, and the amended complaint necessarily relies on the small amount of publicly available information and the impurity limits of the Accused Product to plead that Jinhe's manufacturing process infringes the Asserted Patents. (D.I. 47 at 8-9) Although information on Jinhe's alleged use of the claimed process parameter limitations is not publicly available, Celanese suggests that satisfaction of those limitations can be inferred from the impurity levels present in the Accused Product and the cost savings associated with the claimed process parameters. (*Id.* at 10-11)

The amended complaint plausibly alleges that Jinhe China performs the claimed method steps to manufacture the Accused Product. The pleading alleges that Jinhe China manufactures and supplies Ace-K having the molecular formula of acesulfame potassium, and it describes the physical characteristics and uses of Ace-K. (D.I. 34 at ¶¶ 45, 48-50) The amended complaint

6

also alleges that impurities such as acetoacetamide-N-sulfonic acid and 5-chloro-acesulfame potassium are present in both the Accused Product and the acesulfame potassium manufactured by the patented processes. (*Id.* at ¶¶ 27, 30-31, 38, 41-42, 53, 84, 98, 100, 114, 116, 131, 133) This supports an inference that Jinhe China's process for manufacturing the Accused Product follows the same conventional steps outlined in the amended complaint and the Asserted Patents. ('164 patent, claim 1; '316 patent, claim 1; D.I. 34 at ¶¶ 31, 42, 82, 98, 114, 118) The amended complaint also cites Jinhe's Ace-K product manual and other publicly available information to demonstrate that the levels of acetoacetamide-N-sulfonic acid and 5-chloro-acesulfame potassium in Jinhe's product are comparable to the impurity levels resulting from the use of the patented processes. (D.I. 34 at ¶¶ 51-53, 55, 82-86, 98-102, 114-18, 131-35) For instance, the amended complaint alleges that the Accused Product contains 5-chloro-acesulfame potassium at a level below the claimed maximum limit of 39 wppm based on representations in the Ace-K product manual that it may have an overall organic impurity level of less than 20 wppm. (*Id.* at ¶¶ 116-17, 133-34)

  Celanese concedes that the amended complaint does not explicitly demonstrate Jinhe China's use of the process parameter limitations of the Asserted Patents, noting that Jinhe's manufacturing parameters for these steps are not publicly available. (D.I. 47 at 10-11) Under similar circumstances, courts in this district have upheld the sufficiency of the pleadings when more detailed factual information is not publicly available. *See Kyowa Hakka Bio, Co., Ltd. v. Ajinomoto Co., Inc.*, C.A. No. 17-313-MSG, 2018 WL 834583, at *6, 8-9 (D. Del. Feb. 12, 2018) (denying motion to dismiss § 271(g) claim because plaintiffs could not specifically plead the exact processes used by defendants where defendants did not publicly disclose those processes). "Plaintiffs cannot be charged with knowing, at the time they drafted their Complaint, non-public

information they could only obtain after filing suit and obtaining discovery." *BioMérieux, S.A. v. Hologic, Inc.*, C.A. No. 18-21-LPS, 2018 WL 4603267, at *4 (D. Del. Sept. 25, 2018). "A defendant cannot shield itself from a complaint . . . by operating in such secrecy that the filing of a complaint itself is impossible." *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 467 (D. Del. 2016).

The allegations in Celanese's amended complaint are sufficient to give rise to a plausible inference that the process used by Jinhe China to manufacture the Accused Product infringes the process parameter limitations of the Asserted Patents. Both the amended complaint and the '316 patent explain that acesulfame potassium contains the impurity 5-chloro-acesulfame potassium when it is produced by conventional methods, and separating this impurity from the desired final product using standard purification procedures is difficult. (D.I. 34 at ¶¶ 38-39; '316 patent, col. 1:43-53) The use of specific reaction parameters, such as a low temperature cyclizing agent, reduces or eliminates 5-chloro-acesulfame potassium formation in the crude, intermediate, and finished acesulfame potassium compositions. (D.I. 34 at ¶¶ 41-42; '316 patent, col. 5:11-53) By reducing the levels of impurities, the improved processes result in increased yields and significant cost savings, and Jinhe China would be motivated to capture those cost savings. (D.I. 34 at ¶¶ 43, 118) It can reasonably be inferred that Jinhe China infringes the process parameter limitations of the Asserted Patents because the impurity levels of the Accused Product fall within the scope of the claim limitations, and the '316 patent suggests this could not be achieved without implementation of the process parameter limitations: "[W]ithout limiting temperature (and optionally contact time) as described herein, resultant crude, intermediate, and finished acesulfame potassium compositions will detrimentally have greater amounts of 5-chloro-acesulfame potassium." ('316 patent, col. 5:54-58) These allegations are sufficient to provide

8

Defendants with notice of the alleged infringement of the Asserted Patents. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (concluding that plausibility standard was met where complaint identified asserted patents and accused products, and alleged that the accused products met each limitation of at least one asserted claim).

### 2. Infringement under § 271(g) by Jinhe China

Jinhe contends that the amended complaint fails to adequately plead direct infringement by Jinhe China under § 271(g) because there is no allegation that Jinhe China imports the Accused Product into the United States. (D.I. 40 at 7-8) In response, Celanese argues the amended complaint adequately alleges that Jinhe China offers for sale and sells the Accused Product to customers in the United States after manufacturing the Accused Product using the patented processes in China. (D.I. 47 at 6) Celanese also argues that Jinhe China is actively involved in importing the Accused Product into the United States either alone or with other Defendants. (*Id.* at 7)

I recommend that the court deny Jinhe's motion to dismiss Celanese's § 271(g) claim against Jinhe China because the amended complaint adequately alleges that Jinhe China sells the Accused Product directly to customers in the United States:

> On information and belief, a substantial portion of [Jinhe's reported global revenues for fiscal years 2017 through 2019] is attributable to infringing sales made in the United States, including, without limitation: (a) Jinhe's Ace-K sold directly to consumers and companies in the United States. . . .

(D.I. 34 at ¶ 47) This allegation is supported by exhibits attached to the amended complaint showing that Jinhe China shipped Ace-K to U.S.-based Defendants Jinhe USA, UMC Ingredients, and Prinova. (D.I. 34 at ¶¶ 6-8, Exs. M-O) For purposes of a claim for direct infringement under § 271, a sale takes place in the United States when an infringing article is sold to a U.S. buyer, regardless of whether the goods were shipped f.o.b. *See Litecubes, LLC v.*

*Northern Light Prods., Inc.*, 523 F.3d 1353, 1370 (Fed. Cir. 2008). It is plausible to infer from these shipping records that Jinhe China sold the Accused Product directly to U.S. consumers in satisfaction of the requirements to plead direct infringement under § 271(g).

At this stage of the proceedings, the amended complaint also adequately pleads that Jinhe China imports the Accused Product, stating that "Jinhe has and/or is importing, and has participated in the importation of, the Accused Product into the United States." (*Id.* at ¶ 58) The question of whether Jinhe China's role in the importation process satisfies § 271(g) raises factual issues not appropriately resolved on a motion to dismiss. In *Syngenta Crop Protection, LLC v. Willowood, LLC*, the Federal Circuit addressed similar arguments in post-trial motions following the jury verdict. 944 F.3d 1344, 1364-65 (Fed. Cir. 2019). Specifically, the Federal Circuit considered whether the foreign manufacturer's coordination of shipping from China to the United States, payment of freight charges, and arrangement of deliveries subjected the foreign manufacturer to liability under § 271(g) as an importer. *Id.* Stressing that "[t]he question before us is not whether substantial evidence supports Syngenta's position but whether substantial evidence supports the jury's verdict," the Federal Circuit upheld the jury's finding that the foreign manufacturer did not infringe the patents under § 271(g). *Id.* Similar questions exist in the present case about the extent of Jinhe China's role in the importation process, but the parties did not have the benefit of fact discovery on the issue at the time the amended complaint was submitted. For these reasons, I recommend that the court deny Jinhe's motion to dismiss Celanese's § 271(g) claim against Jinhe China.

### 3. Identification of direct infringers

UMC Ingredients objects to the amended complaint's references to Defendants collectively, without identifying which particular defendant is responsible for which allegedly

infringing products, processes, or methods. (D.I. 38 at 14) However, the amended complaint specifically alleges that Jinhe USA, UMC Ingredients, and Prinova directly infringed the Asserted Patents pursuant to § 271(g) by importing the Accused Product. (D.I. 34 at ¶¶ 59-60, 66-69, 79, 95, 111, 127) These pleaded facts are sufficient "to render it plausible that each defendant individually has performed at least one type of U.S.-related infringing act." *Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*, C.A. No. 20-51-RGA-CJB, 2021 WL 1226427, at *13 (D. Del. Mar. 31, 2021). Accordingly, Celanese's grouping of Defendants in the amended complaint does not provide a basis for dismissal.

### 4. Invalidity of the Asserted Patents

UMC Ingredients argues that dismissal is warranted because Jinhe China's process for manufacturing the Accused Product is not adequately identified in the pleading. (D.I. 38 at 13) In support of its position, UMC Ingredients explains that it has purchased the Accused Product from Jinhe China since 2010, years prior to the issuance of the Asserted Patents. (*Id.*) Because the amended complaint does not allege that Jinhe China changed its process for manufacturing the Accused Product at any point since 2010, UMC Ingredients contends that the pleading supports one of two conclusions: (1) Jinhe China's process for manufacturing the Accused Product does not infringe the Asserted Patents; or (2) the Asserted Patents are invalid for claiming processes known in the art, as evidenced by Jinhe China's long history of manufacturing the Accused Product. (*Id.* at 13, 15)

Celanese responds that UMC Ingredients' arguments regarding the invalidity of the Asserted Patents cannot support a claim for relief under Rule 12(b)(6), which is limited to assessing the sufficiency of the complaint. (D.I. 46 at 12) Celanese further contends that UMC Ingredients' invalidity arguments must fail because UMC Ingredients does not identify any

11

publicly available prior art disclosing or teaching the processes claimed by the Asserted Patents. (*Id.* at 12-13)

As discussed at § IV.A.1, *supra*, the amended complaint plausibly alleges that Jinhe China's method of manufacturing the Accused Product infringes the claim limitations of the Asserted Patents based on the information available to Celanese at this stage of the proceedings. Issues regarding whether Jinhe China used the allegedly infringing processes before the priority date of the Asserted Patents are factual in nature and cannot be appropriately resolved on a motion to dismiss. A patent is presumed valid, and a plaintiff need not prove the validity of the patent to bring a claim for infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 643-44 (2015). Instead, the defendant must prove invalidity by clear and convincing evidence to rebut the presumption of validity. *Id.* at 644 (citing *Microsoft v. i4i Ltd. P'ship*, 564 U.S. 91, 102 (2011)). Consequently, UMC Ingredients' arguments regarding the validity of the Asserted Patents do not alter the foregoing analysis under Rule 12(b)(6).

For these reasons, I recommend that the court deny Defendants' motions to dismiss Celanese's causes of action for direct infringement under § 271(g).

### B. Induced Infringement Under 35 U.S.C. § 271(b)

Under 35 U.S.C. § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). In addition to showing direct infringement,[3] a plaintiff asserting a cause of action for induced infringement must also show that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S.

---

[3] The parties do not dispute the adequacy of Plaintiffs' allegations of direct infringement.

754, 766 (2011); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2014). Knowledge of the patent, without knowledge of infringement, is not enough to establish liability for induced infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 135 S. Ct. 1920, 1926 (2015). Accordingly, the Federal Circuit has held that, "[f]or an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *Bill of Lading*, 681 F.3d at 1339).

The only Defendant accused of induced infringement in this matter is Jinhe China. (D.I. 34 at ¶¶ 80, 96, 112, 128) Celanese confirms in the briefing that it is not asserting a cause of action under § 271(b) against the other Defendants. (D.I. 46 at 13-14)

1. **Pre-suit knowledge**

Jinhe contends that Celanese's allegations of induced infringement are inadequate under Rule 12(b)(6) because the filing of the amended complaint cannot by itself establish Jinhe China's pre-suit knowledge. (D.I. 40 at 9-10) Celanese does not allege that Jinhe China had the requisite knowledge prior to the filing of the complaint. Instead, Celanese responds that the pleading does not need to allege pre-filing knowledge because the indirect infringement allegations are only directed to post-suit conduct, and the complaint provides adequate notice of infringement. (D.I. 47 at 15)

The amended complaint alleges that Defendants knew of their infringement of the Asserted Patents "at least as early as the filing of the Complaint." (D.I. 34 at ¶¶ 77, 93, 109, 125) The majority of decisions in this district have held that knowledge obtained from the filing

of the complaint is sufficient to state a claim for inducement that is limited to post-filing conduct. *See Clouding IP, LLC v. Google Inc.*, C.A. No. 12-639-LPS, 2013 WL 5176702, at *1 (D. Del. Sept. 16, 2013); *see also DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, C.A. No. 18-98-MN, 2019 WL 369773, at *3 (D. Del. July 12, 2019) (finding second amended complaint's allegations of knowledge based on the first amended complaint sufficient); *KOM Software Inc. v. NetApp, Inc.*, C.A. No. 18-160-RGA, 2018 WL 6167978, at *2 (D. Del. Nov. 26, 2018) ("Plaintiff sufficiently alleges Defendant['s] knowledge via service of the original Complaint."); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012) (finding that complaint provided sufficient notice of indirect infringement claim limited to post-filing conduct). Celanese confirms that the cause of action under § 271(b) is limited to post-filing conduct. (D.I. 47 at 15) Consequently, Celanese's allegations of knowledge based on the filing of the original complaint are sufficient for purposes of stating a claim under § 271(b).

**2. Post-suit knowledge**

Jinhe alleges that Celanese failed to adequately plead post-suit knowledge of infringement because the amended complaint does not provide sufficient notice regarding how the use of the Accused Product infringes the Asserted Patents. (D.I. 40 at 11) According to Jinhe, the pleading does not identify a direct infringer, nor does it describe facts showing how Jinhe China induced others to import the Accused Product made by the patented processes. (*Id.* at 12) In response, Celanese alleges that the original complaint contained sufficient information to put Jinhe on notice of the allegedly infringing activities. (D.I. 47 at 17)

For the reasons previously stated in § IV.A.1, *supra*, the amended complaint adequately alleges that Jinhe China's method of manufacturing the Accused Product infringes the Asserted Patents. As such, Jinhe's reliance on *Versata Software, Inc. v. Cloud9 Analytics, Inc.* is not

14

persuasive. C.A. No. 12-925-LPS-CJB, 2014 WL 631517, at *4 (D. Del. Feb. 18, 2014) (concluding that pleaded allegations did not plausibly assert knowledge of end users' infringement where complaint simply identified accused products and generically alleged their use infringed the asserted patents); *see also Princeton Digital Image Corp. v. Ubisoft Entm't SA*, C.A. No. 13-335-LPS-CJB, 2017 WL 6337188, at *2 (D. Del. Dec. 12, 2017) (same); *Välinge Innovation AB v. Halstead New England Corp.*, C.A. No. 16-1082-LPS-CJB, 2017 WL 5196379, at *3 (D. Del. Nov. 9, 2017) (same). Moreover, as set forth in § IV.A.3, *supra*, the amended complaint expressly identifies Jinhe USA, UMC Ingredients, and Prinova as direct infringers under § 271(g) based on their importation of the Accused Product into the United States. (D.I. 34 at ¶¶ 59-60, 66-69, 79, 95, 111, 127) The amended complaint further alleges that Jinhe China knew its manufacture of the Accused Product allegedly infringed the methods claimed in the Asserted Patents as of the date the original complaint was filed, but it nonetheless continued to induce others to sell, offer for sale, use, and/or import the Accused Product in the United States. (D.I. 34 at ¶¶ 80, 96, 112, 128) These allegations plausibly show that Jinhe China knowingly induced the infringing acts. *See 3Shape A/S v. Align Tech., Inc.*, C.A. No. 18-886-LPS-CJB, 2019 WL 1416466, at *2 (D. Del. Mar. 29, 2019) ("[T]he Federal Circuit has held that knowledge of infringement and specific intent may be inferred based on surrounding circumstances . . . even where alternative inferences could be drawn.").

### 3. Specific intent

Jinhe argues that the amended complaint does not plausibly satisfy the specific intent element of a cause of action for induced infringement because it contains only generic assertions regarding infringement and the sale of the Accused Product on its global website. (D.I. 40 at 12-

15

13) However, Celanese contends that Jinhe's continued conduct after the filing of the original complaint confirms that Jinhe China possessed the requisite intent. (D.I. 47 at 18)

The amended complaint plausibly pleads that Jinhe China had the requisite intent to induce infringement. For induced infringement claims, "specific intent may be inferred based on surrounding circumstances, 'taken collectively and in context,' even where alternative inferences could be drawn." *3Shape A/S*, 2019 WL 1416466, at *2 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012)). In this case, the amended complaint contains sufficient factual allegations to support an inference of specific intent. For the reasons previously stated, the amended complaint plausibly alleges that Jinhe China manufactures the Accused Product using the processes covered by the Asserted Patents and has been aware of the alleged infringement since the filing of the original complaint. The amended complaint also alleges that Jinhe China "has acted with the specific intent to induce third parties, including suppliers and/or retailers/distributors, to sell, offer for sale, use, and/or import into the United States . . . the Accused Product." (D.I. 34 at ¶¶ 80, 96, 112, 128) These allegations are sufficient to support an inference that Jinhe China had the specific intent to induce infringement of the Asserted Patents under the circumstances. *See Groove Digital, Inc. v. Jam City, Inc.*, C.A. No. 18-1331-RGA, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019) (concluding that the pleading supported an inference of specific intent by alleging that the defendant encouraged continued direct infringement after the filing of the complaint).

For these reasons, I recommend that the court deny Jinhe's motion to dismiss Celanese's claims for induced infringement under § 271(b).

## V. CONCLUSION

For the foregoing reasons, I recommend that the court DENY Jinhe's motion to dismiss (D.I. 39), UMC Ingredients' motion to dismiss (D.I. 37), and Prinova's motion to dismiss (D.I. 42).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: December 10, 2021

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE