**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CELANESE INTERNATIONAL CORPORATION; CELANESE (MALTA) COMPANY 2 LIMITED; & CELANESE SALES U.S. LTD., | |
| Plaintiffs, | C.A. No. 1:20-01775-RGA |
| v. | **JURY TRIAL DEMANDED** |
| ANHUI JINHE INDUSTRIAL CO., LTD.; JINHE USA LLC; UMC INGREDIENTS, LLC f/k/a JRS INTERNATIONAL LLC; PRINOVA US LLC; & AGRIDIENT, INC., | **PUBLIC VERSION FILED:  June 1, 2022** |
| Defendants. | |

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO DISMISS DEFENDANTS ANHUI JINHE INDUSTRIAL CO., LTD. AND JINHE USA LLC'S COUNTERCLAIMS AND TO STRIKE RELATED AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

**Page**

I.      SUMMARY OF THE RELEVANT FACTS AND STAGE OF PROCEEDINGS .......... 1

II.     LEGAL STANDARD ................................................................................................ 2

III.    JINHE FAILS TO ALLEGE AN INEQUITABLE CONDUCT DEFENSE AND
        ANTITRUST CLAIM BASED ON DATA WITHHELD FROM THE PTO ................. 3

        A.    Jinhe Fails to Allege "but-for Materiality." ........................................... 4

              1.    The AAA Impurity in the Crude Ace-K Is Irrelevant to the Claims. ........ 5

              2.    No Relevant Data Regarding 5 Chloro ASK Was Allegedly
                    Withheld. ................................................................................. 6

              3.    Jinhe Fails to Allege Materiality for AAA-NSH Data. .............................. 7

              4.    Jinhe's Remaining Allegations Also Fail. ................................. 8

        B.    Jinhe Has Not Alleged Any Specific Facts of Specific Intent to Deceive. .......... 10

IV.     CELANESE'S LAWSUIT IS NOT A "SHAM LITIGATION" .................................... 12

        A.    Celanese's Assertion of Its Patent Rights Is Not Objectively Baseless. .............. 13

              1.    The Asserted Patents Have Not Yet Been Litigated. .............................. 14

              2.    Jinhe's Conclusory Assertions that it Does Not Infringe One
                    Asserted Patent Do Not Render This Lawsuit Objectively Baseless. ....... 15

        B.    Celanese's Lawsuit Is Not a Mere Attempt to Interfere with Jinhe's
              Business. ....................................................................................... 16

V.      JINHE'S ANTITRUST COUNTERCLAIM FAILS FOR OTHER REASONS ............ 17

        A.    Jinhe Fails to Plausibly Allege that Celanese Has Monopoly Power or a
              Dangerous Probability of Acquiring It. .............................................. 17

              1.    Jinhe Concedes Celanese Does Not Have Monopoly Power. ................... 18

              2.    Celanese Only Has a Dangerous Probability of Acquiring
                    Monopoly Power If It Succesfully Enforces Its Patents. ........................ 18

        B.    Jinhe Does Not Adequately Allege Antitrust Injury. ............................ 19

VI.     JINHE'S DELAWARE DTPA CLAIM FAILS ......................................................... 19

VII.    CONCLUSION ...................................................................................................... 20

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*3Shape Trios A/S v. Align Tech., Inc.*,
No. 18-cv-01332-LPS, 2019 WL 3824209 (D. Del. Aug. 15, 2019), *report and recommendation adopted*, No. 18-cv-01332-LPS, 2019 WL 4686614 (D. Del. Sept. 26, 2019) ........................................................................................................13

*Accenture Glob. Servs. GmbH v. Guideware Software Inc.*,
581 F. Supp. 2d 654 (D. Del. 2008) ......................................................................20

*Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*,
745 F.3d 1180, 1190 (Fed. Cir. 2014) .....................................................................5

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
651 F.3d 1318 (Fed. Cir. 2011) .............................................................................11

*Analog Devices, Inc. v. Xilinx, Inc.*,
No. 19-cv-02225-RGA, 2021 WL 466859 (D. Del. Feb. 9, 2021) .................3, 4, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....................................................................................2, 15, 16

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007) ...................................................................................17

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) ...............................................................................................19

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) .........................................................................................17, 19

*Burlington Indus., Inc. v. Dayco Corp.*,
849 F.2d 1418 (Fed. Cir. 1988) ...............................................................................4

*Cellectis S.A. v. Precision Biosciences*,
883 F. Supp. 2d 526 (D. Del. 2012) ........................................................................7

*CFMT, Inc. v. Yieldup Int'l Corp.*,
349 F.3d 1333 (Fed. Cir. 2003) ...............................................................................6

*Corning Inc. v. SRU Biosystems*,
 418 F. Supp. 2d 596 (D. Del. 2006)....................................................................................7

*Cortec Indus. Inc. v. Sum Holding L.P.*,
 949 F.2d 42 (2d Cir. 1991)...................................................................................5-6 n.2

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
 157 F.3d 1340 (Fed. Cir. 1998)..............................................................................15, 16, 17

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
 655 F.3d 1337 (Fed. Cir. 2011).............................................................................10, 11

*Duke Univ. v. Akorn, Inc.*,
 No. 3:18-cv-14035-BRM-TJB, 2019 WL 4410284 (D.N.J. Sept. 16, 2019) .........................14

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
 575 F.3d 1312 (Fed. Cir. 2009)..............................................................................4, 10

*Fineman v. Armstrong World Indus., Inc.*,
 F.2d 171 (3d Cir. 1992)..........................................................................................18

*Garshman v. Universal Res. Holding, Inc.*,
 641 F. Supp. 1359 (D.N.J. 1986), *aff'd*, 824 F.2d 223 (3d Cir. 1987)....................................3

*Globetrotter Software, Inc. v. Elan Comp. Grp.*,
 362 F.3d 1367 (Fed. Cir. 2004)...............................................................................20

*Gulfstream III Assocs. Inc. v. Gulfstream Aerospace Corp.*,
 995 F.2d 425 (3d Cir.1993).....................................................................................19

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
 423 F.3d 374 (3d Cir.2005)......................................................................................17

*Hoffmann-La Roche, Inc. v. Promega Corp.*,
 323 F.3d 1354 (Fed. Cir. 2003)................................................................................8

*IBM Corp. v Priceline Grp.*,
 No. 15-cv-00137-LPS, CJB, 2017 WL 1349175 (D. Del. Apr. 10, 2017) ............................4

*Interconnect Planning Corp. v. Feil*,
 774 F.2d 1132 (Fed. Cir. 1985)................................................................................9

*Invista N.A. S.à.r.l. v. M&G USA Corp.*,
 No. 11-cv-01007-SLR-CJB, 2013 WL 12304544 (D. Del. May 3, 2013) ...........................10

*KSR Int'l Co. v. Teleflex Inc*,
 550 U.S. 398, 418 (2007)........................................................................................9

- iii -

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011)..............................................................................................16

*Mintz v. Dietz & Watson, Inc.*,
    F.3d 1372, 1378 (Fed. Cir. 2012)....................................................................6, 9

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997).................................................................................12

*Newman v. Quigg*,
    877 F.2d 1575 (Fed. Cir.), *modified*, 886 F.2d 329 (Fed. Cir. 1989).....................7

*Nobelpharma AB v. Implant Innovations, Inc.*,
    141 F.3d 1059 (Fed. Cir. 1998)......................................................................3 n.1, 4

*Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*,
    Nos. 17-cv-00275-LPS, 17-cv-01353-LPS, 2019 WL 668843 (D. Del. Feb. 19,
    2019)........................................................................................................................12

*Papasan v. Allain*,
    478 U.S. 265 (1986)..............................................................................................16

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)............................................................................5 n.2

*Prof'l Real Estate Invs. v. Columbia Pictures Indus.*,
    508 U.S. 49 (1993)................................................................................................13

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002)...................................................................................3

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
    113 F.3d 405 (3d Cir. 1997).................................................................................12

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993)..............................................................................................17

*St. Jude Med. v. Volcano Corp.*,
    No. 12-cv-00441-RGA, 2014 WL 2622240 (D. Del. Jun. 11, 2014) ..................3, 10

*Symantec Corp. v. Comput. Assocs. Int'l, Inc.*,
    522 F.3d 1279 (Fed. Cir. 2008)............................................................................10

*Telebrands Corp. v. 1byOne Prods. Inc.*,
    No. 17-cv-00997-JFB-SRF, 2018 WL 3696558 (D. Del. Aug. 3, 2018)..................4

*Therasense, Inc. v. Becton, Dickinson and Co.*,
    649 F.3d 1276 (Fed. Cir. 2011)..........................................................................3, 4

SF-4827765

*TransWeb, LLC v. 3M Innovative Props. Co.*,
   812 F.3d 1295 (Fed. Cir. 2016)....................................................................................4

*Tyco Healthcare Grp. v. Mutual Pharm. Co.*,
   762 F.3d 1338 (Fed. Cir. 2014)..................................................................................13

*United States v. E.I. du Pont de Nemours & Co.*,
   351 U.S. 377 (1956)..................................................................................................18

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966)..................................................................................................17

*Varentec, Inc. v. Gridco, Inc.*,
   No. 16-cv-00217-RGA-MPT, 2017 WL 2438846 (D. Del. June 6, 2017),
   *report and recommendation adopted*, No. 16-cv-00217-RGA-MPT, 2017 WL
   5186379 (D. Del. June 26, 2017) .........................................................................15, 16

*Warner-Lambert Co. v. BreathAsure, Inc.*,
   204 F.3d 87 (3d Cir. 2000)........................................................................................20

*In re Wellbutrin XL Antitrust Litig.*,
   868 F.3d 132 (3d Cir. 2017)..................................................................................13, 14

**Statutes**

Delaware Uniform Deceptive Trade Practices Act, 6 Del. Code §§ 2531, *et seq*. ...................1, 20

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................................1, 3

To excuse its infringement of Celanese's duly issued patent rights, Jinhe asserts without foundation an inequitable conduct defense and antitrust and DTPA counterclaims in hopes that something will stick. The Court should strike Jinhe's affirmative defense, and dismiss its antitrust and DTPA counterclaims. The dismissal should be with prejudice because Jinhe's allegations remain deficient after amendment.

As to inequitable conduct and antitrust liability premised on fraud on the U.S. Patent and Trademark Office ("PTO"), Jinhe's allegations concerning materiality and intent to deceive are conclusory and fail to plead facts sufficient to satisfy Rule 9(b). Indeed, many of Jinhe's allegations are based on information that Celanese indisputably disclosed to the PTO. And despite relying on experimental records from Dr. Yadav, Jinhe failed to attach them to its Answer because Jinhe's allegations are based on a facially implausible reading of these records.

As to antitrust liability premised on an objectively baseless lawsuit or sham litigation, Jinhe offers only conclusory allegations. Celanese filed the Asserted Patents based on the changes that the America Invents Act ("AIA") made to the patent statutes, and told the PTO exactly what it was doing. Prior to this lawsuit, no court had addressed the AIA's impact on the legal question presented by Celanese's patents or the AIA's relevant statutory text. Jinhe's antitrust counterclaim fails for the additional reasons that its allegations of monopoly power and antitrust injury are legally deficient. Jinhe's allegations of monopoly power demonstrate that Jinhe holds a larger share of the U.S. market for Ace-K than Celanese. Finally, Jinhe fails to adequately plead bad faith or falsity, which are both necessary elements of its DTPA claim.

## I.     SUMMARY OF THE RELEVANT FACTS AND STAGE OF PROCEEDINGS

Plaintiffs Celanese International Corporation, Celanese (Malta) Company 2 Limited, and Celanese Sales U.S. Ltd. (collectively, "Celanese") filed this lawsuit against Defendants Anhui Jinhe Industrial Co., Ltd. ("Anhui Jinhe") and Jinhe USA LLC's ("Jinhe USA") (collectively,

"Jinhe") and certain of its U.S. distributors on December 28, 2020, and filed its Second

Amended Complaint ("SAC") on March 23, 2022. D.I. 105. Jinhe answered on March 30, 2022,

and asserted for the first time, its inequitable conduct defense and its antitrust and Delaware

Uniform Deceptive Trade Practices Act ("DTPA") counterclaims. Celanese filed a Motion to

Dismiss on April 20. D.I. 120. Jinhe then filed an amended Answer and Counterclaim, D.I. 128,

which fails to cure the deficiencies identified by Celanese's original motion.

The SAC currently asserts U.S. Patent Nos. 10,029,998 ("the '998 patent"),

10,233,164 ("the '164 patent"), 10,590,096 ("the '096 patent"), 10,227,316 ("the '316 patent"),

and 10,590,097 ("the '097 patent") (collectively, the "Asserted Patents"). The Asserted Patents

disclose and claim improvements to processes for manufacturing an artificial sweetener called

acesulfame potassium ("Ace-K") that minimize the formation of impurities. The '998, '164, and

'096 patents (collectively "the '998 patent family") are directed to reducing the formation of the

acetoacetamide-N-sulfonic acid ("AAA-NSH") impurity by limiting the pH value during the

neutralization step. The '316 and '097 patents (collectively "the '316 patent family") are directed

to reducing the formation of the 5-chloro acesulfame potassium ("5 Chloro ASK") impurity by

limiting the temperature of cyclizing agent composition. The Asserted Patents have never been

litigated in any other forum. Celanese has asserted a different group of patents in two separate

proceedings: the U. S. International Trade Commission Inv. No. 337-TA-1264 and Case No.

2:21-CV-03070-AB-KS in the Central District of California.

## II.   LEGAL STANDARD

A court must dismiss a cause of action where the facts alleged fail to state a claim that is

"plausible on its face" or that is barred as a matter of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). For

SF-4827765

antitrust claims in particular, "conclusory allegations which merely recite the litany of antitrust will not suffice." *Garshman v. Universal Res. Holding, Inc.*, 641 F. Supp. 1359, 1367 (D.N.J. 1986), *aff'd*, 824 F.2d 223 (3d Cir. 1987).

Rule 9 adds a heightened pleading standard for allegations of fraud, requiring that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires a complainant to provide both a "theoretically viable claim" and the factual allegations that make it plausible. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). An affirmative defense of inequitable conduct must be pled under Rule 9. *See Analog Devices, Inc. v. Xilinx, Inc.*, No. 19-cv-2225-RGA, 2021 WL 466859, at *1 (D. Del. Feb. 9, 2021).

## III.   JINHE FAILS TO ALLEGE AN INEQUITABLE CONDUCT DEFENSE AND ANTITRUST CLAIM BASED ON DATA WITHHELD FROM THE PTO

Jinhe's inequitable conduct defense and *Walker Process* antitrust theory, (D.I. 128 at 41-42, ¶¶ 68, 70, 71),[1] accuse Celanese of obtaining the Asserted Patents by deceiving or defrauding the PTO. Jinhe, however, does not plead the specific facts necessary for but-for materiality and specific intent to deceive.

Inequitable conduct can render a patent unenforceable if an accused infringer proves that "a specific individual with a duty of candor to the PTO 'misrepresented or omitted material information with the specific intent to deceive the PTO.'" *St. Jude Med. v. Volcano Corp.*, No. 12-cv-00441-RGA, 2014 WL 2622240, at *1 (D. Del. Jun. 11, 2014) (quoting *Therasense, Inc. v. Becton, Dickinson and Co*., 649 F.3d 1276, 1287 (Fed. Cir. 2011)). The elements of a *Walker Process* antitrust theory are similar: (1) the asserted patent was obtained by knowingly

---

[1] "*Walker Process* fraud" is the antitrust theory premised on allegations of fraudulently obtaining and enforcing a patent with anticompetitive effect. *See Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068-71 (Fed. Cir. 1998).

and willfully misrepresenting facts to the PTO; (2) the party enforcing the patent was aware of the fraud; (3) independent and clear evidence of deceptive intent; (4) the patent would not have issued but for the misrepresentation or omission; and (5) the necessary additional elements of an underlying antitrust violation. *Nobelpharma*, 141 F.3d at 1068-71. The requisite showings for proving inequitable conduct and the fraud component of *Walker Process* liability "may be nearly identical." *TransWeb, LLC v. 3M Innovative Props. Co*., 812 F.3d 1295, 1307 (Fed. Cir. 2016).

The tactic of alleging inequitable conduct in major patent litigation "on the slenderest grounds" has become an "absolute plague." *Therasense*, 649 F.3d at 1289 (quoting *Burlington Indus., Inc. v. Dayco Corp*., 849 F.2d 1418, 1422 (Fed. Cir. 1988)). Thus, courts strictly police claims of inequitable conduct and fraud on the PTO to ensure that they are "pleaded in detail" and set forth "particularized factual bases for the allegation[s]." *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1327 (Fed. Cir. 2009).

### A.    Jinhe Fails to Allege "but-for Materiality."

Jinhe provides only boilerplate assertions of materiality that fail to include the "how" or "why" required by *Exergen*. To adequately allege but-for materiality, an inequitable conduct or *Walker Process* fraud pleading must identify the specific claims, and claim limitations at issue, where in the allegedly omitted reference the material information appears, and how a reasonable examiner would use the reference in determining patentability. *See Telebrands Corp. v. 1byOne Prods. Inc*., No. 17-cv-00997-JFB-SRF, 2018 WL 3696558, at *2-3 (D. Del. Aug. 3, 2018). General allegations about an examiner not granting the patent if the reference had been disclosed are insufficient. *See IBM Corp. v Priceline Grp.*, No. 15-cv-00137-LPS, CJB, 2017 WL 1349175, at *11 (D. Del. Apr. 10, 2017) (recommending dismissal of inequitable conduct claim that failed to provide specific reasoning as to how references invalidated the claims); *see also Analog Devices*, 2021 WL 466859, at *3 (striking inequitable conduct defense on materiality

- 4 -

grounds for failing to allege "how" and "why" the PTO would have rejected the claims). Although Jinhe asserts that Celanese withheld experimental details from the PTO and included meaningless limitations in its claims, Jinhe fails to connect these materials to any requirement of patentability upon which an examiner would base a rejection.

### 1.    The AAA Impurity in the Crude Ace-K Is Irrelevant to the Claims.

None of the Asserted Patents are directed to reducing the AAA impurity in the crude Ace-K. Instead, several dependent claims recite the AAA impurity in the *finished* Ace-K composition. And the '998 patent explains that "the reduction of acetoacetamide-N-sulfonic acid content in the crude acesulfame potassium composition . . . leads to reduced acetoacetamide content in the resultant *finished* acesulfame potassium composition." Ex. B, '998 patent at 24:50-56. Whether this explanation of the mechanism or theory of the inventions of the '998 patent family is correct, cannot be material to patentability. *See Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*, 745 F.3d 1180, 1190 (Fed. Cir. 2014) (it is not "a requirement of patentability that an inventor correctly set forth, or even know, how or why the invention works").

Equally important, Jinhe does not identify any experimental data or conclusions that contradict the specification's teachings. The experiments cited by Jinhe examined the effect of pH on AAA ppm levels in the crude Ace-K product, which are not claimed by any Asserted Patent. Ex. A, Yadav Ex. 7 at 4 ("Neutralization pH vs Acetoacetamide amount in *crude* ASK solution"); *see also* Ex. C, Yadav Ex. 5 at 1, 2, Ex. E, Yadav Ex. 17 at 1, Ex. F, Yadav Ex. 18 at 1, 2, and Ex. G, Yadav Ex. 19 at 1, 2 (showing AAA levels the crude Ace-K).[2]

---

[2] The Court should consider the exhibits and data reference in Jinhe's Answer. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as

Jinhe does not allege how any experimental data related to AAA in the crude Ace-K would be used by an examiner to reject any of the claims. *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003) (concluding that experimental data of "very marginal relevance to enablement of the claims *as filed*" cannot be material) (emphasis added). Dr. Yadav's observation that the neutralization pH "██████████████████████████ ████████████████████████████," Ex. A, Yadav Ex. 7 at 5, is not contradictory to any of the patent claims, which only recite AAA amounts in the finished ASK.

## 2.    No Relevant Data Regarding 5 Chloro ASK Was Allegedly Withheld.

The 5 Chloro ASK impurity is only claimed by the '316 patent family, and Jinhe does not allege how an examiner would have used any information related to this impurity to reject any claim of the '316 patent family. Instead, Jinhe simply states that the inventor's notes include a subjective, qualitative observation that "████████████████████." D.I. 128 at 24, ¶¶ 29-30 (citing Ex. H, Yadav Ex. 10 at 8). But the objective data that lead to this qualitative conclusion is disclosed in the specification of the '316 patent as Example 1 and Comparative Example 1. '316 patent 30:1-13. The examiner therefore knew the magnitude of the difference in the impurity levels, and whether it was qualitatively "significantly greater" is irrelevant to patentability. *See Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1378 (Fed. Cir. 2012) (cautioning against hindsight analysis even if the invention appears to be "only a minor incremental improvement").

Jinhe's allegations regarding a purported inability to heat the cyclizing agent composition fare no better. The '316 patent specification describes an experiment where the cyclizing agent composition was heated to 35 ºC. '316 patent, 28:34-42 and 30:12-13. This experiment is shown

---

pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion [to dismiss].").

in the very exhibit Jinhe relies on for its allegations regarding Dr. Yadav's subjective, qualitative observations about the magnitude of the effect of the experiment. D.I. 128 at 24, ¶¶ 29-30 (citing Ex. H, Yadav Ex. 10 at 8); *see also* Ex. E, Yadav Ex. 17 at 2; Ex. F, Yadav Ex. 18 at 3; Ex. G, Yadav Ex. 19 at 3 (showing heating to 35ºC). Dr. Yadav testified in his interview that these exhibits reflect the data from the experiments that he performed, and Jinhe does not allege otherwise. *See* Ex. I, Yadav Depo. Tr. at 179:17-180:23.

Instead, Jinhe pleads unsupported attorney argument interpreting a single cell in an Excel spreadsheet. This conjecture is exactly the kind of pleading that this Court and the Federal Circuit have repeatedly concluded is insufficient. *Corning Inc. v. SRU Biosystems*, 418 F. Supp. 2d 596, 602 (D. Del. 2006) (rejecting "speculation and conjecture regarding alleged inequitable conduct and has failed to bolster that speculation with any concrete evidence"); *Cellectis S.A. v. Precision Biosciences*, 883 F. Supp. 2d 526, 535 (D. Del. 2012) (rejecting "'atomic bomb' by mere conjecture that the prosecution attorney's zealous arguments were inequitable conduct").

### 3.    Jinhe Fails to Allege Materiality for AAA-NSH Data.

The AAA-NSH impurity is claimed by '998 patent family. For example, claim 1 of the '998 patent, claim 22 of the '164 patent, and claim 18 of the '096 patent recite a neutralization pH at or less than 11.0 and less than 2800 wppm AAA-NSH in the crude Ace-K composition. Jinhe does not provide specific facts alleging how or why an examiner would use the undisclosed data to reject these claims.

To the extent that Jinhe alleges that the undisclosed data contradicts the trend shown in Table 1 of the specification of the '998 patent family, D.I. 128 at 21-23, ¶¶ 15, 18, 21, such vague allegations fail to plead but-for materiality for multiple reasons. First, patentability does not require an accurate explanation of the theory of the invention. *Newman v. Quigg*, 877 F.2d 1575, 1581 (Fed. Cir.), *modified*, 886 F.2d 329 (Fed. Cir. 1989). Second, the data (shown below)

- 7 -

is consistent with the trend shown in the specification's Table 1 with or without the allegedly withheld data—as pH decreases, so too does the level of AAA-NSH in the crude Ace-K. Third, Jinhe's allegations compare data across two different sets of experiments with different experimental conditions to create the illusion of inconsistency. The two data sets were performed with different amounts of water relative to the amount of amide salt. Ex. A, Yadav Ex. 7 at 4. Jinhe's allegations are silent as to why an examiner would compare data across these experiments or use the comparison to reject any claim. *See Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1363 (Fed. Cir. 2003) (reversing judgment of inequitable conduct and finding that data obtained by different experimental conditions was not material).

| pH | AAA-NSH (wppm) |
|----|----------------|
| ██ | ██ |
| ██ | ██ |
| ██ | ██ |
| ██ | ██ |
| ██ | ██ |

| pH | AAA-NSH (wppm) |
|----|----------------|
| 9 | 1538 |
| 9.82 | 1954 ██ |
| 11 | 2361 |
| 12.21 | 3066 |
| | |

\* Ex. C, Yadav Ex. 5 at 2; Ex. E, Yadav Ex. 17 at 1; Ex. F, Yadav Ex. 18 at 1; Ex. G, Yadav Ex. 19 at 1 identify the red data as outlier results that need to be repeated; Ex. D, Yadav Ex. 8 at 1; Ex. F, Yadav Ex. 18 at 2; Ex. G, Yadav Ex. 19 at 2 identify the green data as the results of the repeated experiments.

**4.      Jinhe's Remaining Allegations Also Fail.**

To the extent Jinhe's inequitable conduct defense rests on allegations of the on-sale bar, D.I. 128 at 25-26, ¶¶ 35-39, Jinhe does not allege that any material information was withheld from the PTO. Celanese repeatedly made the following statement to the PTO during prosecution:

> Applicants disclose that the process claimed in this application has been in secret, non-public use, e.g., unavailable to the public, in Europe; and the product of the secret, non-public process has been exported and sold in the US more than 1 year prior to the priority date. This application has been filed under the AIA. Applicants believe that the subject claims are patentable under the AIA and in view of the aforementioned disclosure.

*See* Ex. J ('998 patent); Ex. K ('164 patent); Ex. L ('316 patent). In the prosecution of the '096

and '097 patents, Celanese cited the IDS that included the foregoing quote. *See* Ex. M ('096 patent) and Ex. N ('097 patent). In addition, once the PTO considered the information in the first patent in each family, the PTO's rules require the examiner to consider it in each subsequent member of the family. *See* MPEP § 609.02 ("The examiner of the continuing application will consider information which has been considered by the Office in the parent application."). Jinhe cannot allege the materiality required to plead inequitable conduct.

Jinhe's conclusory allegations that the claimed invention is "trivial, inconsequential," or "meaningless" (D.I. 128 at 27, ¶ 41 and 42, ¶ 70) also fail to plead materiality. Significant, consequential, and meaningful are not requirements of patentability. Courts regularly recognize that incremental or seemingly insignificant advances over the prior art are patentable where the claims are novel and nonobvious. *Mintz*, 679 F.3d at 1378; *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1138 (Fed. Cir. 1985) ("That which may be made clear and thus obvious to a court, with the invention fully diagrammed and aided ... by experts in the field, may have been a breakthrough of substantial dimension when first unveiled."). Whether certain limitations were known in the prior art does not negate patentability. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art"). The PTO duly examined the claims of the Asserted Patents in view of the prior art and concluded that the claims met the requirements of patentability. The prior art considered by the PTO includes 13 of the 24 prior art references that Jinhe identifies in its Answer. D.I. 128 at 19, ¶ 9 and 34-35, ¶ 40. Jinhe does not identify information related to the allegedly "trivial" or "meaningless" claim limitations that was withheld from the PTO.

Jinhe cites the inventors' inability to recall who set the impurity limits recited in the

claims, D.I. 128 at 26, ¶ 40, but does not allege how an examiner would use this information to reject the claims. Determining which inventor contributed to what part of the invention is not a requirement of patentability, and disclosing to the examiner that the inventor could not remember where certain limitations came from would not have prevented the examiner from issuing the patent. *See Symantec Corp. v. Comput. Assocs. Int'l, Inc.*, 522 F.3d 1279, 1297 (Fed. Cir. 2008) (affirming district court's finding of no inequitable conduct because "[w]e agree with the district court that [the inventor]'s inability to identify with precision his contribution, nearly fourteen years later, does not show anything more than that [the inventor] simply could not recall"). In addition, the experimental data in the specification speaks for itself. The inventors of the Asserted Patents conducted experiments using different ranges of process parameters to identify and set the claimed impurity levels. *See*, *e.g.*, '998 patent at Table 1 (determining 2,800 wppm AAA-NSH recited in claim 1); '316 patent at Table 1 (determining 39 wppm 5 Chloro ASK recited in claims 1 in the '316 and '097 patents).

## B. Jinhe Has Not Alleged Any Specific Facts of Specific Intent to Deceive.

Adequate allegations of specific intent to deceive the PTO must "'contain specific factual allegations' showing that a specific individual with knowledge of the material information 'decided to deliberately withhold it from the relevant examiner.'" *Invista N.A. S.à.r.l. v. M&G USA Corp.*, No. 11-1007- SLR-CJB, 2013 WL 12304544, at *11 (D. Del. May 3, 2013) (quoting *Exergen*, 575 F.3d at 1331). Allegations of materiality, knowledge of material information, and the non-disclosure of that information will ***not*** suffice. *Id*. "A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the [pleading] recites facts from which the court may reasonably infer that a specific individual . . . withheld [invalidating] information with a specific intent to deceive the PTO." *St. Jude*, 2014 WL 2622240, at *1 (quoting *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir.

- 10 -

2011)). Jinhe's inequitable conduct defense and *Walker Process* antitrust theory allegations, as amended, fail to meet this threshold.

The entirety of Jinhe's allegations regarding specific intent appears in two sentences that are devoid of any specific facts alleging that anyone either had knowledge of materiality or made a deliberate decision to withhold the data. D.I. 128 at 27-28, ¶ 43. Jinhe's amended specific intent allegations are insufficient. *Analog Devices*, 2021 WL 466859, at *3 (allegations that "the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO . . . fail to provide facts from which the court can reasonably infer specific intent").

First, Jinhe suggests that the "volume" of the alleged "contrary information" leads to an inference of specific intent. It does not. *See*, *e.g.*, *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1335 (Fed. Cir. 2011) (vacating finding of specific intent for insufficient evidence on deliberate decision to withhold relevant information, even when "a significant amount of information" was withheld). Further, all alleged "contrary information" is either immaterial to every asserted claim and/or not withheld from the PTO. *Supra* at § III.A. The volume of such information is irrelevant and cannot suggest any specific intent to deceive.

Second, Jinhe's vague reliance on "statements and documents cited in Jinhe's Counterclaims" also cannot constitute "specific factual allegations" of specific intent. *See*, *e.g.*, Order, *Multimedia Patent Trust v. The Walt Disney Co.*, No. 10-cv-00146, D.I. 265 at 7-8 n.3 (S.D. Cal. Feb. 25, 2011) (finding reliance on "documents from [a] group" insufficient for pleading specific intent because "they do not identify the specific documents or the location of the material information within the documents"). Importantly, Jinhe fails to connect any individual having a duty of candor to the PTO with any statement or document listed in Jinhe's counterclaims.

- 11 -

Moreover, the Yadav exhibits belie on their face Jinhe's allegation that "the only plausible inference is that this information was withheld with an intent to deceive the USPTO." D.I. 107 at 23, ¶ 22. At the pleading stage, a court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) or "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Yadav Exhibits 7 and 18, on which Jinhe relies heavily, demonstrate a much more plausible and reasonable explanation for the alleged omission: the inventors believed (correctly) that the omitted data were **immaterial** to the claims of the Asserted Patents. The '998 family controls the neutralization pH value and limits the AAA-NSH impurity content in the crude Ace-K, and the Yadav exhibits reflect the inventor's conclusion that AAA impurity levels in the crude Ace-K and 5 Chloro ASK data are irrelevant to the claims of the '998 patent family. Ex. A, Yadav Ex. 7 at 5 (██████████████████████████████ ████████). In addition, the inventor's contemporaneous notes describe the very data relied on by Jinhe as "outliers" and experiments that need "to be repeated." *See* Ex. C, Yadav Ex. 5 at 2; Ex. E, Yadav Ex. 17 at 1; Ex. F, Yadav Ex. 18 at 1; Ex. G, Yadav Ex. 19 at 1. The only plausible inference is that the Yadav exhibits mean what they say. *See Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, Nos. 17-cv-00275-LPS, 17-cv-01353-LPS, 2019 WL 668843, at *2 (D. Del. Feb. 19, 2019) ("[T]he allegations . . . must plead facts to support a plausible inference that all of the requirements of inequitable conduct can be proven by the required burden of proof.").

## IV.    CELANESE'S LAWSUIT IS NOT A "SHAM LITIGATION"

Jinhe's conclusory allegations that Celanese's legal actions are "objectively baseless" and were filed in "bad faith," D.I. 128 at 32, ¶ 29, appear calculated to invoke the "sham litigation" exception to the *Noerr-Pennington* doctrine. But Jinhe falls far short of plausibly alleging that

- 12 -

this lawsuit fits within that narrow exception.

Under *Noerr-Pennington*, "the institution of patent infringement litigation generally cannot violate the antitrust laws." *3Shape Trios A/S v. Align Tech., Inc.*, No. 18-cv-01332-LPS, 2019 WL 3824209, at *5 (D. Del. Aug. 15, 2019) (citing *Prof'l Real Estate Invs. v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993) ("*PREI*"). While there is an exception to this immunity for sham litigation, "[a] plaintiff claiming that a lawsuit is, by its very existence, anticompetitive and unlawful faces an uphill battle." *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 147 (3d Cir. 2017)). "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" at the time it is filed; and second, the lawsuit must "conceal[] an attempt to interfere *directly* with the business relationships of a competitor." *PREI*, 508 U.S. at 60-61. So long as there is "probable cause to institute legal proceedings"—meaning only a "reasonable belief" that a claim may be held valid—there may not be "a finding that an antitrust defendant has engaged in sham litigation." *Id.* at 62-63. Given that a patent is presumed valid, "it will be a rare case in which a patentee's assertion of its patent . . . will be so unreasonable as to support a claim that the patentee has engaged in sham litigation." *Tyco Healthcare Grp. v. Mutual Pharm. Co.*, 762 F.3d 1338, 1345 (Fed. Cir. 2014). This is not that rare case.

### A.    Celanese's Assertion of Its Patent Rights Is Not Objectively Baseless.

Jinhe's sham litigation theory hinges on its sweeping and conclusory claim that "not a single asserted claim is valid, enforceable, and infringed by Jinhe, and Celanese has asserted objectively baseless patent infringement claims against Jinhe." D.I. 128 at 44, ¶ 78. But Jinhe fails to allege facts that support a plausible inference that no reasonable litigant in Celanese's shoes could have expected success on a single one of its claims at the time this case was filed.

- 13 -

### 1.      The Asserted Patents Have Not Yet Been Litigated.

"[T]he assertion of claims in a patent whose validity has not yet been litigated cannot be said to be 'objectively baseless . . . .'" *Duke Univ. v. Akorn, Inc.*, No. 3:18-cv-14035-BRM-TJB, 2019 WL 4410284, at *8 (D.N.J. Sept. 16, 2019) (citing *PREI*, 508 U.S. at 60). The validity of the Asserted Patents has not yet been litigated in any forum, and Celanese's efforts to enforce them is not subject to antitrust liability.

Jinhe relies upon the ITC's January 2022 Initial Determination in the -1264 Investigation ("ID") for its assertion that the claims Celanese brings in this case are objectively baseless. D.I. 128 at 31-32, ¶¶ 23-29. This fails for at least four reasons.

First, the ID addressed *different patents*. Jinhe merely alleges that "[t]he asserted patents in the instant case suffer from the same flaws" as those litigated at the ITC. D.I. 128 at 31, ¶ 24. That is insufficient. *See Duke Univ.*, 2019 WL 4410284, at *7-8, 10 (holding that none of plaintiffs' patent infringement suits was objectively baseless because none of the patents asserted "had been declared invalid at the time," and dismissing defendant's antitrust counterclaim).

Second, the ID was rendered *after* Celanese filed the instant case and is irrelevant to this Court's inquiry, which is whether Celanese's suit was objectively baseless "at the time it was filed."[3] *In re Wellbutrin*, 868 F.3d at 148-49 (citing *PREI*, 508 U.S. at 60 n.5). In fact, the ID recognizes no court had addressed the question presented by Jinhe's on-sale bar defense— whether the America Invents Act's ("AIA") statutory amendments changed the law such that the on-sale bar no longer applies to sales of an unclaimed product made through a secret process. Ex. O at 8. In addition, Celanese disclosed its prior sales and secret use of its process to the PTO during prosecution. *Supra* § III.A.4; Ex. O at 3. Asserting patents obtained from the PTO based

---

[3] The SAC only added a claim based on the '998 patent. Celanese's claims based on the '164, '096, '316, and '097 patents date back to the filing of the original complaint in December 2020.

on a fully disclosed legal theory that was unaddressed by courts is not objectively baseless.

Third, the ID is not a final determination. Following the Commission's April 1, 2022 decision to not review the ID, Ex. P, Celanese has appealed that decision to the Federal Circuit. In addition, the ID is not binding on this Court, and Celanese will argue that Jinhe's on-sale bar defense fails as a matter of law. Even if it disagrees with Celanese, Jinhe cannot allege sham litigation based on Celanese's legal theory regarding the on-sale bar under the AIA. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1368-69 (Fed. Cir. 1998) ("[S]ham litigation requires more than a failed legal theory.").

Lastly, Jinhe's allegations regarding the on-sale bar cannot by themselves support a sham litigation claim because they do not apply to every claim asserted by Celanese. Antitrust counterclaims must be dismissed "where 'at least one' of the claims [of the plaintiff's] case was not objectively baseless." *Varentec, Inc. v. Gridco, Inc.*, No. 16-cv-00217-RGA-MPT, 2017 WL 2438846, at *11 (D. Del. June 6, 2017). Here, Jinhe merely alleges that "***many*** of the claims asserted here are undisputedly invalid for the same reasons as those [patents asserted] in the prior ITC investigations." D.I. 128 at 31, ¶ 25 (emphasis added).  And as shown below, Jinhe's allegations as to the remaining claims, couched as noninfringement of the claims of the '097 patent, are far too conclusory to support a sham litigation claim.

> ## 2.      Jinhe's Conclusory Assertions that It Does Not Infringe One Asserted Patent Do Not Render This Lawsuit Objectively Baseless.

Jinhe alleges that "based on the parties' agreed-upon construction for 'cyclization reaction time,' Jinhe's process does not infringe" the '097 patent, and that Celanese's assertion of infringement of this patent is "baseless and in bad faith." D.I. 128 at 43, ¶ 76. This fails to meet Jinhe's burden to plausibly allege sham litigation for at least two reasons.

First, Jinhe's allegations are purely conclusory, and this Court is "not bound to accept as

true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Jinhe neither includes any allegations to support its theory of noninfringement nor includes any allegations to support the baselessness of Celanese's infringement theory. Celanese's infringement contentions show how Jinhe infringes under the parties' agreed-upon construction, but Jinhe did not attach them to its counterclaim because they demonstrate that Celanese's infringement theory is far from baseless.

Second, Jinhe's allegation relies on claim constructions that were agreed to well *after* Celanese filed its claims based on the '097 patent. D.I. 1 ¶¶ 115-129. It is thus irrelevant to the question of whether Celanese had a reasonable belief that its infringement claims based on the '097 patent were well founded at the time they were filed.

### B. Celanese's Lawsuit Is Not a Mere Attempt to Interfere with Jinhe's Business.

Jinhe's allegation—*on information and belief only*—that Celanese's lawsuit was "brought solely with the subjective motivation to interfere with and/or harm Jinhe's business," D.I. 128 at 44, ¶ 80, is nothing more than a "bald assertion." This Court need not credit it. *See*, *e.g.*, *Varentec*, 2017 WL 2438846, at *12. "The law recognizes a presumption that the assertion of a duly granted patent is made in good faith," which is "overcome only by affirmative evidence of bad faith." *C.R. Bard*, 157 F.3d at 1369. This presumption is particularly applicable here, where Celanese disclosed to the PTO during prosecution the very facts upon which Jinhe's on-sale bar defense relies. *See Supra* § III.A.4 (describing disclosure to the PTO); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 109 (2011) ("[The heightened standard to rebut the presumption of validity] applie[s] even more clearly where the evidence was identical [to that considered by the PTO].").

Jinhe amended its counterclaim to add references to interview testimony and documents containing Celanese communications that it claims show that Celanese used its "litigation

strategy[y]" to "create barriers to entry into the U.S. market for Ace-K." D.I. 128 at 45-47, ¶¶ 83-94. That does not meet Jinhe's burden. Jinhe does not allege—because it cannot—that the communications were made in bad faith, false, or misleading. Even if Jinhe is correct that Celanese "used patent litigation as a hammer," that does not subject Celanese to antitrust liability "absent the *PRE* criteria" of objective baselessness and subjective bad faith. *See C.R. Bard*, 157 F.3d at 1369.

## V.   JINHE'S ANTITRUST COUNTERCLAIM FAILS FOR OTHER REASONS

Jinhe's antitrust counterclaims must also be dismissed because Jinhe fails to allege monopoly power or antitrust injury. To state a monopolization claim, the plaintiff must allege, among other things, "the possession of monopoly power in the relevant market." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306-07 (3d Cir. 2007) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 570-71 (1966)). An attempted monopolization claim requires the plaintiff to allege "a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993). In addition, a Section 2 plaintiff must allege antitrust injury. *See*, *e.g*., *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977).

### A.   Jinhe Fails to Plausibly Allege that Celanese Has Monopoly Power or a Dangerous Probability of Acquiring It.

Monopoly power is the ability to control prices and exclude competition in a given market. *Grinnell*, 384 U.S. at 571. Monopoly power "may be proven through direct evidence of supracompetitive prices and restricted output." *Broadcom*, 501 F.3d at 307. Or an antitrust claimant may attempt to establish monopoly power indirectly by showing that the defendant "has a dominant share in a relevant market, and that significant 'entry barriers' protect that market." *Id.* at 307 (quoting *Harrison Aire, Inc. v. Aerostar Int'l, Inc.,* 423 F.3d 374, 381 (3d Cir. 2005)). Jinhe's counterclaim fails because its allegations directly refute any notion that Celanese has or

- 17 -

will probably attain monopoly power.

### 1.    Jinhe Concedes Celanese Does Not Have Monopoly Power.

Jinhe admits that "Celanese and Jinhe are currently the two major players in the

U.S. market for Ace-K," D.I. 128 at 39, ¶ 52, and that Jinhe controls a much larger share than

Celanese, *id*. at 39-41, ¶¶ 52-63. Based on Jinhe's own figures, Jinhe alleges that Celanese has

approximately 22% market share by volume and 40% by revenue. *Id*. This is far lower than the

threshold courts require to infer monopoly power. *See*, *e.g*., *Fineman v. Armstrong World Indus.,*

*Inc.*, 980 F.2d 171, 202 (3d Cir. 1992) ("A significantly larger market share than 55 percent has

been required to demonstrate *prima facie* monopoly power.") (collecting cases). That is

particularly true where, as here, the remaining market share is controlled by a single, larger

competitor, in this case Jinhe. Jinhe also concedes that Celanese has neither "the power to

control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.,* 351

U.S. 377, 391 (1956). Jinhe admits that Celanese charges a higher average price for Ace-K, but

that Jinhe is competing and selling larger volumes of Ace-K at a lower price point. D.I. 128 at

40-41, ¶¶ 58-64. According to Jinhe's own facts, Celanese does not have monopoly power.

### 2.    Celanese Only Has a Dangerous Probability of Acquiring Monopoly Power If It Successfully Enforces Its Patents.

Unable to allege that Celanese currently has monopoly power, Jinhe's allegations boil

down to a theory that Celanese has a dangerous probability of gaining monopoly power "[i]f

Jinhe is forced out of the U.S. market by Celanese's litigation tactics." D.I. 128 at 41, ¶ 65. But

this is in direct conflict with Jinhe's sham litigation theory. In other words, Celanese only has a

dangerous probability of acquiring monopoly power in the relevant market if its patent

infringement claims against Jinhe succeed—necessarily meaning those claims are not baseless

and are, thus, immune under *Noerr-Pennington*. Jinhe cannot have it both ways by arguing that

- 18 -

this lawsuit is objectively baseless, but, if Celanese succeeds, it will illegally gain a monopoly.[4]

**B.      Jinhe Does Not Adequately Allege Antitrust Injury.**

It is axiomatic that "[t]he antitrust laws . . . were enacted for 'the protection of *competition* not *competitors*.'" *Brunswick,* 429 U.S. at 488 (emphasis added) (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320 (1962)). Antitrust plaintiffs must, therefore, plead antitrust injury, meaning "(1) harm of the type the antitrust laws were intended to prevent; and (2) an injury to the plaintiff which flows from that which makes defendant's acts unlawful." *Gulfstream III Assocs. Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 425, 429 (3d Cir. 1993).

While Jinhe recites the boilerplate element of "harm to market competition," the factual content of its counterclaims does not support a reasonable inference that Celanese's patent assertion has caused any injury to competition. Jinhe contends that Celanese's anticompetitive conduct has harmed "market-wide competition" in the relevant market, allowing Celanese to "maintain[] a stranglehold on sales of Ace-K in the United States," thus eliminating "meaningful price competition for sales of Ace-K." D.I. 128 at 51-52, ¶ 95. But Jinhe's own allegations establish that Jinhe successfully competes against Celanese, charges lower prices than Celanese, and controls a dominant share of the Ace-K market in the United States. *See supra* § V.A.1; D.I. 128 at 40-41, ¶¶ 59-63. There is no factual basis from which this Court could reasonably infer that Celanese's alleged conduct has had any effect on overall competition in the relevant market.

**VI.      JINHE'S DELAWARE DTPA CLAIM FAILS**

Jinhe's Fifth Counterclaim should be dismissed because (1) Celanese's assertion of its

---

[4] To the extent Jinhe asserts that the mere pendency of this lawsuit provides Celanese a dangerous probability of acquiring monopoly power, Jinhe's own allegations undermine such a theory. Jinhe alleges that it controlled a dominant share of the relevant market as of the first quarter of 2021—after this case was filed. D.I. 128 at 40-41, ¶¶ 58-64. Jinhe fails to allege that its market share has since dropped, or that Celanese's market share has since risen.

patents is not a deceptive trade practice, D.I. 128 at 54, ¶¶ 104-05; and (2) Jinhe fails to identify a single "false, misleading, and disparaging statement[] about Jinhe, Jinhe's business, and Jinhe's Ace-K line of products." D.I. 128 at 53, ¶ 102.

For the first time in its Amended Fifth Counterclaim, Jinhe alleges that Celanese made statements to Celanese's customers about the pending patent infringement claims. But to maintain such an action, Jinhe must adequately plead Celanese acted in bad faith by filing objectively baseless claims. *Globetrotter Software, Inc. v. Elan Comp. Grp.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) (finding federal patent law preempts state tort liability where notification of patent claims not made in bad faith); *Accenture Glob. Servs. GmbH v. Guideware Software Inc.*, 581 F. Supp. 2d 654, 668 n.19 (D. Del. 2008) (reciting bad faith standard for DTPA claims based on patent infringement suit). For the reasons stated above with respect to Jinhe's sham litigation antitrust claim, Jinhe has failed to adequately allege bad faith, and thus Jinhe's DTPA counterclaim should be dismissed for the same reason.

Jinhe has not alleged that either (i) these statements are false or (ii) there is actual deception or at least a tendency to deceive the intended audience. *See Warner-Lambert Co. v. BreathAsure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000) (reciting elements of false statement DTPA claim). Jinhe alleges Celanese informed its customers about the litigation, stated the relief it was seeking, and stated there was a "risk of supply disruption" if Celanese prevailed. D.I. 128 at 45-46, 54, ¶¶ 84-88, 103. But none of these statements are false, and thus cannot create a DTPA action.

## VII.    CONCLUSION

Celanese respectfully requests that the Court strike Jinhe's affirmative defense of inequitable conduct and dismiss Jinhe's antitrust and DTPA counterclaims with prejudice.

SF-4827765

Dated: May 25, 2022

**OF COUNSEL:**

Aaron G. Fountain (admitted *pro hac vice*)
**MORRISON & FOERSTER LLP**
701 Brazos Street, Suite 1100
Austin, TX 78701
Telephone: (737) 309-0655
afountain@mofo.com

Susan M. Krumplitsch (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 833-2440
Facsimile: (650) 687-1230
susan.krumplitsch@us.dlapiper.com

Ellen A. Scordino (admitted *pro hac vice*)
Kristin M. Beale (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000
Facsimile: (617) 406-6100
ellen.scordino@us.dlapiper.com
kristin.beale@us.dlapiper.com

Respectfully submitted,

**DLA PIPER LLP (US)**

*// Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)
Erin E. Larson (DE Bar No. 6616)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com
erin.larson@us.dlapiper.com

*Attorneys for Plaintiffs Celanese*
*International Corporation, Celanese (Malta)*
*Company 2 Limited, and Celanese Sales U.S.*
*Ltd.*

- 21 -

SF-4827765

## CERTIFICATE OF SERVICE

I, Brian A. Biggs, hereby certify that on this 25th day of May 2022, a copies of

**PLAINTIFFS' RENEWED MOTION TO DISMISS DEFENDANTS ANHUI JINHE**

**INDUSTRIAL CO., LTD. AND JINHE USA LLC'S COUNTERCLAIMS AND TO STRIKE**

**RELATED AFFIRMATIVE DEFENSES; and OPENING BRIEF IN SUPPORT OF**

**RENEWED MOTION** were served upon the following counsel of record via electronic mail:

Andrew E. Russell
**SHAW KELLER LLP**
I.M. Pei Building, 12th Floor
1105 North Market Street
Wilmington, Delaware 19801
arussell@shawkeller.com

**OF COUNSEL:**
Paul Grandinetti
**LEVY & GRANDINETTI**
1120 Connecticut Avenue, N.W. Suite 304
Washington, D.C. 20036
mail@levygrandinetti.com

Stephen B. Brauerman
Ronald P. Golden III
**BAYARD, P.A.**
600 N. King Street Suite 400
Wilmington, DE 19801
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

**OF COUNSEL**
Arthur A. Gasey
**VITALE, VICKREY, NIRO, SOLON &**
**GASEY LLP**
311 S. Wacker Drive, Suite 2470
Chicago, IL 60606
gasey@vvnlaw.com

Jonathan A. Choa
**POTTER ANDERSON & CORROON LLP**
1313 N. Market St., Hercules Plaza 6th Floor
P.O. Box 951
Wilmington, DE 19899
jchoa@potteranderson.com

**OF COUNSEL:**
Bryan Nese
Gary M. Hnath
Sen (Alex) Wang
Courtney M. Krawice
**MAYER BROWN LLP**
1999 K. Street, NW
Washington, D.C. 20006-1101
bnese@mayerbrown.com
ghnath@mayerbrown.com
awang@mayerbrown.com
ckrawice@mayerbrown.com

Ying-Zi Yang
Scott A. McMurry
Clark S. Bakewell
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, NY 10020-1001
yyang@mayerbrown.com
smcmurry@mayerbrown.com
cbakewell@mayerbrown.com

*/s/ Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)