**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CELANESE INTERNATIONAL CORPORATION; CELANESE (MALTA) COMPANY 2 LIMITED; & CELANESE SALES U.S. LTD., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 20-1775-RGA |
| v. | ) ) | **PUBLIC VERSION** |
| ANHUI JINHE INDUSTRIAL CO., LTD.; JINHE USA LLC; UMC INGREDIENTS, LLC f/k/a JRS INTERNATIONAL LLC; PRINOVA US LLC; & AGRIDIENT, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS ANHUI JINHE INDUSTRIAL CO.,
LTD AND JINHE USA LLC'S MOTION TO STAY PROCEEDING
<u>PENDING FEDERAL CIRCUIT APPEAL</u>**

OF COUNSEL:

Gary M. Hnath
Bryan Nese
Courtney M. Krawice
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-5282

Dated: May 20, 2022
Public version dated: June 7, 2022

Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
jchoa@potteranderson.com

*Attorneys for Defendants
Anhui Jinhe Industrial Co., Ltd and
Jinhe USA LLC*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ v

II.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS .................. 2

III.    LEGAL STANDARDS ........................................................................................ 5

IV.     SUMMARY OF THE ARGUMENT ...................................................................... 6

V.      STATEMENT OF FACTS .................................................................................. 6

VI.     ARGUMENT .................................................................................................... 8

        A.      A Stay Has a High Likelihood to Simplify the Issues for Trial. ............................. 8

        B.      Discovery Is Not Yet Complete, and a Trial Is Still More Than a Year Away. ... 11

        C.      A Stay Would Not Unduly Prejudice Celanese. ................................... 11

VII.    CONCLUSION ................................................................................................ 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*454 Life Scis. Corp. v. Ion Torrent Sys. Inc.*,
  15-595-LPS, 2016 WL 6594083 (D. Del., Nov. 7, 2016).........................................................6

*Adv. Micro Devices, Inc. v. Mediatek Inc.*,
  No. 19-cv-70-CFC, 2019 WL 4082836 (D. Del. Aug. 29, 2019)...........................................10

*Bial-Portela v. Alkem Labs. Ltd.*,
  No. 1:20-cv-00786, slip op. (D. Del. May 16, 2022)..............................................................12

*Cephalon, Inc. v. Sandoz Inc.*,
  No. 10-cv-123-SLR, slip op. (D. Del. May 5, 2011) ..............................................................11

*Certain High-Potency Sweeteners, Processes for Making Same, & Prods.*
  *Containing Same*,
  Inv. 337-TA-1264, Order No. 29 at 13-14 (Jan. 11, 2022).................................................3, 4

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
  734 F. Supp. 656 (D. Del. 1990)...............................................................................................5

*Helsinn Healthcare S.A. v. Teva Pharmas. USA, Inc.*,
  139 S. Ct. 628 (2019).......................................................................................................4, 9, 10

*Landis v. N. Am. Co.*,
  299 U.S. 238 (1936)...................................................................................................................5

*Murata Mach. USA v Daifuku Co.*,
  830 F.3d 1357 (Fed. Cir. 2016).................................................................................................6

*Novartis AG v. HEC Pharm Co. Ltd.*,
  183 F. Supp. 3d 560 (D. Del. 2016)........................................................................................11

*UCB, Inc. v. Zydus Pharmas. (USA) Inc.*,
  No. 16-cv-903-LPS, 2017 WL 4310860 (D. Del. Sept. 28, 2017) .........................................10

*Valve Corp. v. Ironburg Inventions Ltd.*,
  8 F.4th 1364 (Fed. Cir. 2021) ...................................................................................................4

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014).........................................................................................11, 12

**Statutes**

35 U.S.C. § 102(a) ...........................................................................................................1, 4, 12

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Celanese's Opening *Markman* Brief in ITC Investigation No. 337-TA-1264 |
| B | Initial Determination (Order No. 29) in *Certain High-Potency Sweeteners, Processes for Making Same, & Prods. Containing Same*, Inv. 337-TA-1264 (Jan. 11, 2022) |
| C | Commission Notice Not to Review ID in *Certain High-Potency Sweeteners, Processes for Making Same, & Prods. Containing Same*, Inv. 337-TA-1264 (Apr. 1, 2022) |
| D | Email Correspondence Between B. Nese and A. Fountain |
| E | Celanese's First Supplemental Infringement Contentions (Nov. 5, 2021) |
| F | Celanese's Responses to Defendants' Second Set of Common Interrogatories |
| G | Celanese's Responses to Defendants' First Set of Common Interrogatories |

I.      **INTRODUCTION**

This patent infringement action is not the only patent litigation Celanese[1] has launched

against Jinhe.[2] Shortly after filing this case, Celanese also filed a complaint with the U.S.

International Trade Commission (the "Commission"), which resulted in Investigation No. 337-

TA-1264 (the "ITC Investigation") and a parallel action in the Central District of California,

which asserted the same patents as the ITC Investigation (the California case is stayed pending a

final determination in the ITC Investigation).

The patents asserted in the ITC Investigation involve the same technology as those

asserted here: processes for producing the artificial sweetener acesulfame potassium. The ITC

Investigation was terminated, however, because nearly all of the asserted claims were found

invalid due to the on-sale bar of post-AIA 35 U.S.C. § 102(a), and the handful of remaining

claims were found not practiced by Celanese (thereby defeating a domestic industry). In granting

Jinhe's motion for summary determination, the presiding administrative law judge credited

Celanese's factual admissions that it had practiced many of the claims for years before the

patents' earliest priority date. The essential facts were therefore undisputed. He also rightly

rejected the sole legal argument Celanese advanced to evade invalidity: that the AIA somehow

changed the law of the on-sale bar.

The same issues that led to the termination of the ITC Investigation apply to this case. As

in the ITC Investigation, Celanese has admitted that it practiced a supermajority of the asserted

claims in this action more than a year before the patents' earliest priority date. In fact, in its

---

[1] "Celanese" refers to Plaintiffs Celanese International Corp., Celanese (Malta) Co. 2 Ltd., and
Celanese Sales U.S. Ltd.

[2] "Jinhe" refers to Defendants Anhui Jinhe Industrial Co., Ltd. and Jinhe USA LLC.

discovery responses here, Celanese conceded that it has practiced 80 out of the 96 currently asserted claims more than a year prior to the patents' priority date of September 21, 2016.

However, rather than accept the reality that the vast majority of the asserted claims in this action are invalid for the same reason as those in the ITC Investigation, Celanese has refused to withdraw a single claim and instead continues to press a dubious legal theory already twice rejected in the ITC Investigation – once by the Chief ALJ and again by the Commission after Celanese petitioned for review – and settled by the Supreme Court years before Celanese filed these lawsuits. Undeterred by these clear signs of the fallacies with its theory, Celanese has indicated that it will appeal the Commission's decision to the Federal Circuit.

But this Court need not consider the merits of Celanese's argument at this juncture. All that need be considered now is whether a stay would serve the interests of the Court and the parties. On that point, it is beyond dispute that a Federal Circuit opinion upholding the Commission Decision would settle the matter and eliminate at least 80 of the 96 claims Celanese is currently asserting. Though the Commission Decision is not now binding on this Court, the Federal Circuit's affirmation of that legal determination would be.

Thus, because a decision from the Federal Circuit rejecting Celanese's argument would undeniably simplify the issues for trial by eliminating more than 80% of the patent claims at issue in this case, because fact discovery has not yet closed and trial is approximately one year away (*see* D.I. 60 ¶¶ 8(a), 22), and because a stay while Celanese pursues its appeal would cause no undue prejudice, this case should be stayed until final resolution of Celanese's appeal.

## II.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Celanese filed the original complaint in this case on December 28, 2020, asserting infringement of four patents related to processes for producing the artificial sweetener acesulfame potassium, commonly referred to as "Ace-K." *See* D.I. 1. In response to motions to

dismiss filed by Defendants, Celanese filed its first amended complaint on April 29, 2021. D.I. 34. The first amended complaint asserted the same four patents as the original complaint.

On March 23, 2022, Celanese filed a second amended complaint, which added a fifth patent to this case. *See* D.I. 105 ¶¶ 1, 139-56 (discussing the newly added '998 patent).

Celanese also accused Jinhe of infringing its Ace-K process patents in U.S. International Trade Commission Investigation No. 337-TA-1264 (the "ITC Investigation"). D.I. 129 ¶ 3. The patents in the ITC Investigation, like the patents asserted here, also claimed processes for producing Ace-K, and in particular processes claimed to reduce the presence of certain impurities in Ace-K. *Id.* Though the ITC patents do not claim priority to any of the same applications as the patents asserted here, the ITC patents share the same inventors, the same priority date, and very similar specification as the patents asserted here.

The ITC Investigation also involved the same accused Jinhe process and the product thereof (Jinhe Ace-K), as well as the construction of some of the same terms presently pending before this Court, including "cooling," "conducted at," and "maintained at." *See* Ex. A (Celanese Opening *Markman* Br. in -1264 Investigation) at 15 ("cooling" / "cooled"), 17 ("maintained at"), 19 ("conducted at").

On January 11, 2022, the ALJ issued an Initial Determination (ID) terminating the investigation in full due to numerous asserted claims being invalid based on the on-sale bar, and the remaining claims at issue not being practiced by Celanese (thereby failing to meet the technical prong of the ITC's domestic industry requirement). *Certain High-Potency Sweeteners, Processes for Making Same, & Prods. Containing Same*, Inv. 337-TA-1264, Order No. 29 at 13-14 (Jan. 11, 2022) (attached as Ex. B). Relying upon Celanese's admission as well as incontrovertible evidence in the record that Celanese practiced numerous claims of the ITC

patents more than one year prior to the patents' priority date of September 21, 2016—the same

priority date of the patents asserted here—the presiding ALJ ruled as a matter of law that those

claims were invalid based on the on-sale bar of post-AIA 35 U.S.C. § 102(a).[3] *See id.*

In particular, the ALJ made the following factual findings based on the record, including

Celanese's admissions, none of which were challenged by Celanese:

> Celanese's process to make Ace-K claimed in the Asserted Patents
> has been in secret use in Europe since before the undisputed critical
> date, which is September 21, 2015. The Ace-K product made using
> Celanese's process has been exported and sold in the United States
> since before September 21, 2015. Celanese's method of making
> Ace-K has not changed in any material way since 2011.

*Id.* at 5 (citations to chart of undisputed material facts omitted). As a result of these admissions,

the only disputed issue was a legal one: whether "the AIA's amendments to § 102 overturn long-

held precedent that a patentee's sale of an unpatented product made according to a secret method

triggers the on-sale bar to patentability." *Id.* at 6.

The Chief ALJ squarely rejected the argument that the AIA changed the decades of well-

settled authority concerning the on-sale bar: "Celanese's position is contrary to the Supreme

Court's decision in *Helsinn*, where the Court held that Congress did not alter the meaning of the

on-sale bar provision when it enacted the AIA." *Id.* (citing *Helsinn Healthcare S.A. v. Teva

Pharmas. USA, Inc.*, 139 S. Ct. 628, 634 (2019) ("[W]e determine that Congress did not alter the

meaning of 'on sale' when it enacted the AIA.")).

On April 1, 2022, the Commission issued a notice of determination not to review the ID,

thereby adopting the Chief ALJ's decision as its own. Ex. C (Comm'n Notice in -1264

---

[3] Because the patents at issue in the ITC Investigation, like each of those at issue here, were filed
after March 16, 2013, they are subject to the first-inventor-to-file provisions of the America
Invents Act. *See Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1370 n.3 (Fed. Cir. 2021)
(citing AIA).

Investigation). On April 20, 2022, Celanese represented to this Court that it would "appeal that decision to the Federal Circuit." D.I. 121 at 15.

Two days later, counsel for Jinhe reached out to counsel for Celanese and first broached the idea of a stay while that appeal was pending. Ex. D (Nese-Fountain Email Exchange) at 5. In particular, counsel for Jinhe suggested that, "[i]f Celanese elects to proceed with an appeal of [the Commission Decision] to the Federal Circuit, Jinhe proposes that the parties jointly request that the Delaware action be stayed pending that decision." *Id.*

Following Celanese's request for more time to respond to this proposal, the parties held a teleconference on May 4. *See id.* at 2. While Celanese did not take a position on this request during that teleconference, it wrote the following week, on May 13, to confirm that "Celanese is going to appeal the ITC determination" and that it would oppose a motion by Jinhe to stay this case pending a resolution of the Federal Circuit appeal.  *Id.* at 1. Celanese's notice of appeal is due May 31.

Jinhe brought the instant motion following Celanese's confirmation that it will appeal the Commission Decision and that it opposes a stay of this case.

## III.    LEGAL STANDARDS

A stay lies within the broad discretionary powers of this Court. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (citing *Bechtel Corp. v. Laborer' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976)); *see also Landis v. N. Am. Co.*, 299 U.S. 238, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.").

Courts in this District consider three factors when determining whether to grant a stay:

> (1) whether a stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage.

*454 Life Scis. Corp. v. Ion Torrent Sys. Inc.*, 15-595-LPS, 2016 WL 6594083, at *2 (D. Del.,

Nov. 7, 2016); *see Murata Mach. USA v Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016)

(same).

## IV.     SUMMARY OF THE ARGUMENT

A stay is warranted here for three reasons.

1.      First, it would simplify the issues for trial. An opinion from the Federal Circuit

upholding the Commission Decision would be binding on this Court and mandate that the 80

claims Celanese admittedly practiced are invalid based on § 102(a)'s on-sale bar.

2.      Second, a stay is warranted because this case in its early stages. Discovery has not

yet been completed, and trial is more than a year off. Though the parties have exchanged a

relatively small number of documents in this proceeding—a number that pales in comparison to

what was exchanged in the ITC Investigation—no depositions have been noticed or taken, no

*Markman* hearing has occurred, and no expert reports or final contentions have been exchanged.

3.      Third, a stay would not unduly prejudice Celanese. Apart from a minor delay

caused by Celanese's choice to appeal the Commission Decision to the Federal Circuit, Celanese

would not be harmed in any way by a stay of these proceedings. In any event, delay alone cannot

show undue prejudice.

## V.     STATEMENT OF FACTS

Five patents are at issue in this case: U.S. Patent Nos. 10,233,164 (the "'164 patent");

10,590,096 (the "'096 patent"); 10,277,316 (the "'316 patent"); 10,590,097 (the "'097 patent");

and 10,029,998 (the "'998 patent"). D.I. 129 ¶¶ 1, 2.

On November 5, 2021, Celanese served its First Supplemental Infringement Contentions in this action. Ex. E (Celanese First Supp. Inf. Contentions). Those contentions asserted the following claims: claims 1-9, 11-22, and 24-26 of the '164 patent (*id.* at 10-61); claims 1-6, 8-18, and 20 of the '096 patent (*id.* at 62-105); claims 1-5, 7-12, 14, 15, and 22-25 of the '316 patent (*id.* at 106-46; claims 1-3, 5-10, 12, 14, and 17 of the '097 patent (*id.* at 147-80); and claims 1-6, 8, 10-15, 17-22, and 24-30 of the '998 patent (*id.* at 181-252). In all, Celanese is currently asserting 96 claims in this case. D.I. 129 ¶ 2; *see id.* at 10-252.

Each of the patents asserted here has the same priority date: September 21, 2016. Ex. F (Celanese Resp. to Defs.' Second Set of Rogs) at 13 ("The Asserted Patents were conceived and reduced to practice at least as early as September 21, 2016."). This is the same priority date as the asserted patents in the ITC Investigation. *See* Ex. B (ID) at 2 ("Each Asserted Patent has an effective filing date of September 21, 2016….").

In a November 8, 2021 response to Defendants' First Set of Common Interrogatories, Celanese admitted that it has practiced the following claims since January 1, 2011: claims 1-9 and 11-16 of the '164 patent; claims 1-6 and 8-20 of the '096 patent; claims 1-5, 9, 12, 14, 15, and 22-25 of the '316 patent; and claims 1-6, 8, 10-15, 17-22, and 24-30 of the '998 patent. Ex. G (Celanese Resp. to Defs.' First Set of Rogs) at 6; *see also* Ex. G at 7 ("Celanese has practiced the asserted claims listed in its answer to Common Interrogatory No. 1 at least as early as January 1, 2011."). Celanese also admitted that "product produced using Celanese's process was sold at least as early as January 1, 2011." *Id.* at 10.

Accordingly, as with the ITC Investigation, whether the admittedly practiced patent claims are invalid turns solely on a legal issue: whether the AIA changed the law of the on-sale bar.

## VI.    ARGUMENT

Because the validity of 80 of the 96 patent claims asserted in this case rests on a purely legal issue that was resolved in Jinhe's favor in the ITC Investigation both by the Chief ALJ and the Commission, and because Celanese has elected to test that legal issue at the Federal Circuit, this case should be stayed pending resolution of that appeal. All three factors favor a stay.

First, a stay will plainly streamline the issues for trial: it would eliminate over 80% of the currently asserted claims—including negating three patents entirely and all but four claims of a fourth patent. Second, because months remain in fact discovery, because the *Markman* hearing has not yet taken place, and because trial is still nearly a year away, a stay would not meaningfully disrupt any investments made by the Court and the parties in this case thus far. Third, a stay would not prejudice Celanese. Celanese's patents will not expire for more than a decade, and the modest delay owing to Celanese's choice to appeal the Commission Decision alone does not create undue prejudice.

Accordingly, this case should be stayed in its entirety pending resolution of Celanese's appeal to the Federal Circuit.

### A.    <u>A Stay Has a High Likelihood to Simplify the Issues for Trial.</u>

Staying this case pending appeal of the Commission Decision to the Federal Circuit would resolve a central legal question and if upheld confirm the invalidity of at least[4] 80% of the currently asserted claims.

---

[4] While Celanese has admitted that it practiced 80 of the 96 claims currently asserted in this case prior to the critical date, Jinhe intends to prove that Celanese also practiced other claims as well. Accordingly, the on-sale bar question that Celanese plans to present to the Federal Circuit would likely implicate additional asserted claims.

Celanese's only argument for asserting these claims is a legal one. Celanese has admitted that it practiced 80 of 96[5] currently asserted claims—including all currently asserted claims from three of the five patents at issue—more than one year prior to the patents' earliest filing date of September 21, 2016. Ex. G (Celanese's Resp. to Defs.' First Set of Rogs) at 6. Celanese also admitted that it sold product produced using the patented process more than a year before this priority date. *Id.* at 10. Celanese also conceded (as the ALJ noted in the ID) that its process has not materially changed since 2011—years before the patents-at-issue were filed. Ex. B  (ID) at 5. No other factual findings are necessary for resolving this issue.

As a result of Celanese's admission that is has practiced more than 80% of the currently asserted claims prior to the critical date, the issue of whether Celanese's claims are invalid based on the on-sale bar is purely a legal one. Accordingly, should the Federal Circuit reject Celanese's dubious legal theory that the AIA somehow changed the on-sale bar—as the Commission already has and as the Supreme Court did years ago in *Helsinn*—Celanese will have no credible argument (if it even has one now) for continuing to advance those claims in this case. Thus, not staying this case until the Federal Circuit appeal is resolved would result in a significant waste of both of the parties' and the Court's resources.

While the patents at issue in the ITC Investigation are not identical to those asserted here, they are substantially similar. The patents in this action share the same inventors, the same priority date, and several of the same claim terms (including "cooling," "conducted at," and "maintained at") as the ITC patents. In similar circumstances, this Court has found that the issues

---

[5] The number of currently asserted claims is problematic in its own right. The fact that Celanese has only inflated this case—by adding a patent (*see* D.I. 79 (request to amend complaint to add new patent))—rather than narrowed it at this juncture further reveals Celanese's true aim: to make this litigation as burdensome as possible for Defendants in order to extort settlements.

for trial would be streamlined by a stay. *See Adv. Micro Devices, Inc. v. Mediatek Inc.*, No. 19-cv-70-CFC, 2019 WL 4082836, at *2 (D. Del. Aug. 29, 2019) (finding that issues for trial would be simplified when "patents share common inventors and claim terms and have overlapping figures and written descriptions").

      Indeed, the issues in this case are so interwoven with those in the ITC Investigation that the parties have agreed to cross use discovery from that investigation here. *See* D.I. 60 ¶ 25. Thus, "the same discovery [in the ITC Investigation] will be applicable to" this case, in part because the ITC Investigation "implicated the same witnesses, accused products, … and evidence." *See Adv. Micro Devices*, 2019 WL 4082836, at *2 (quotations omitted). Again, in these circumstances, "a stay would promote judicial economy and minimize burdening third parties." *See id.*

      Without question, "[t]he potential for simplification of the issues in this case is significant. If the Federal Circuit finds some or all of the asserted claims [here] invalid, its decision would moot some or all of Plaintiffs' claims." *See UCB, Inc. v. Zydus Pharmas. (USA) Inc.*, No. 16-cv-903-LPS, 2017 WL 4310860, at *2 (D. Del. Sept. 28, 2017). In view of the high likelihood of this outcome—particularly given that the Supreme Court has already held that "Congress did not alter the meaning of 'on sale' when it enacted the AIA," *Helsinn*, 139 S. Ct. at 634—it would be wasteful to proceed any further in this case.

      Assuming the Federal Circuit affirms the Commission Decision, "the consequence would be the elimination from the instant lawsuit of all infringement and invalidity issues" of each of the admittedly practiced claims, *see id.*, and the scope of this case will be reduced dramatically. Because this would significantly reduce the issues in this case, this first factor favors a stay.

10

### B.    Discovery Is Not Yet Complete, and a Trial Is Still More Than a Year Away.

This case is still in its early stages. Fact discovery will not close for another three months, on August 17, 2022 (D.I. 60 ¶ 8(a)); a *Markman* hearing will not take place until July 21, 2022 (D.I. 119); trial is scheduled for about a year from now in May 2023 (D.I. 60 ¶ 22); and the only substantive ruling from this Court has been on Defendants' Motion to Dismiss (D.I. 100).

This Court has stayed cases with similar timing. *See, e.g.*, *Novartis AG v. HEC Pharm Co. Ltd.*, 183 F. Supp. 3d 560, 562 (D. Del. 2016) (finding second factor supported stay when "fact discovery has not closed and expert reports are not due for another six months"); *see also Cephalon, Inc. v. Sandoz Inc.*, No. 10-cv-123-SLR, slip op. at 4 (D. Del. May 5, 2011) (granting stay pending appeal of separate cases to Federal Circuit despite discovery being complete and trial "imminent").

The parties also have not expended significant resources in this case. No party has noticed or taken any depositions in this matter, and final contentions on the issues of infringement and invalidity are not due for approximately three months, on August 3 and August 17, respectively. D.I. 60 ¶¶ 7(e), (f). Expert reports have not yet been exchanged (*see id.* at ¶ 8(f)(i)), and the parties substantially completed producing documents just days ago (*id.* at ¶ 8(b)). Indeed, tremendous resources will be expended taking fact discovery, and submitting expert reports and deposing the experts, based on claims that will be determined invalid if the Federal Circuit affirms the Commission Decision, which is highly likely. Accordingly, this factor also favors a stay.

### C.    A Stay Would Not Unduly Prejudice Celanese.

The third inquiry focuses on whether the patentee would be "unduly prejudiced." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014) (emphasis omitted).

11

Celanese will not be unduly prejudiced by a stay here. For instance, "[a] stay will not diminish the monetary damages to which [Celanese] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy." *Id.* Delay is particularly of little concern here, given that Celanese's patents will not expire until 2037 and that Celanese did not seek a preliminary injunction. Thus, the modest delay while Celanese pursues an appeal to the Federal Circuit would not unduly affect its rights here, as delay alone does not constitute undue prejudice. *See id.*

In addition, Celanese has made no move to narrow the nearly 100 asserted claims across five patents, and this too should weigh in favor of a stay. Indeed, Celanese could resolve the need for a stay by doing what it should have done following the Commission Decision: withdraw the 80 admittedly practiced claims that are plainly invalid under § 102(a).

But Celanese has declined to do so, and thus has failed "to focus adequately on the relative strength of [its] various infringement claims, the limited resources of this Court, [and] the caseload of this Court." *See Bial-Portela v. Alkem Labs. Ltd.*, No. 1:20-cv-00786, slip op. at 1 (D. Del. May 16, 2022). Under these circumstances, Celanese will not be prejudiced by a stay. This third and final factor also favors staying this case.

## VII.    CONCLUSION

For the reasons stated herein, this case should be stayed pending resolution of Celanese's appeal of the Commission Decision in ITC Investigation No. 337-TA-1264 to the Federal Circuit.

OF COUNSEL:

Gary M. Hnath
Bryan Nese
Courtney M. Krawice
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-5282

Dated:  May 20, 2022
Public version dated: June 7, 2022

POTTER ANDERSON & CORROON LLP

By:  */s/ Jonathan A. Choa*
      Jonathan A. Choa (#5319)
      P.O. Box 951
      Wilmington, DE 19899
      (302) 984-6000
      jchoa@potteranderson.com

*Attorneys for Defendants Anhui Jinhe*
*Industrial Co., Ltd and Jinhe USA LLC*

13