# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CELANESE INTERNATIONAL CORPORATION; CELANESE (MALTA) COMPANY 2 LIMITED; & CELANESE SALES U.S. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ANHUI JINHE INDUSTRIAL CO., LTD.; JINHE USA LLC; UMC INGREDIENTS, LLC f/k/a JRS INTERNATIONAL LLC; PRINOVA US LLC; & AGRIDIENT, INC., <br><br> Defendants. | C.A. No. 20-1775-RGA |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS ANHUI JINHE INDUSTRIAL CO., LTD. AND JINHE USA LLC'S MOTION TO STAY PROCEEDING PENDING FEDERAL CIRCUIT APPEAL

OF COUNSEL:

Gary M. Hnath
Bryan Nese
Courtney M. Krawice
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-5282

Dated: June 10, 2022

POTTER ANDERSON & CORROON LLP
Jonathan A. Choa (#5319)
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
jchoa@potteranderson.com

*Attorneys for Defendants
Anhui Jinhe Industrial Co., Ltd. and
Jinhe USA LLC*

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A.    A Stay Would Not Cause Undue Prejudice to Celanese ........................................ 2

    B.    A Stay Would Overwhelmingly Simplify the Issues in This Case. ........................ 7

    C.    The Status of This Litigation Weighs in Favor of a Stay. ...................................... 9

III. CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Cooper Notification, Inc. v. Twitter, Inc.*,
   No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ..........................................3, 5, 7

*Elm 3DS Innovations, LLC v. Samsung Elecs. Co., Ltd.*,
   No. 14-1430-LPS-CJB, 2018 WL 1061370 (D. Del. Feb. 26, 2018) .......................................7

*Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*,
   139 S. Ct. 628 (2019) ...........................................................................................................1, 9

*In re DaVita Inc. Stockholder Derivative Lit.*,
   No. 17-152-MPT, 2018 WL 3105061 (D. Del. June 25, 2018) ..................................................6

*Kaavo Inc. v. Cognizant Tech. Solutions Corp.*,
   Nos. 14–1192–LPS–CJB, 14-1193–LPS–CJB, 2015 WL 1737476 (D. Del. Apr. 9, 2015) .....5

*Kraft Foods Group Brands LLC v. TC Heartland, LLC*,
   232 F. Supp. 3d 628 (D. Del. 2017) ..................................................................................... 3-4

*Landis v. North American Co.*,
   299 U.S. 248 (1936) .................................................................................................................4

*Larroque v. First Advantage Lns Screening Sols., Inc.*,
   No. 15-CV-04684-JSC, 2016 WL 39787 (N.D. Cal. Jan. 4, 2016) ..........................................5

*Larson v. Trans Union, LLC*,
   No. 12-CV-05726-WHO, 2015 WL 3945052 (N.D. Cal. June 26, 2015) ................................6

*Mission Abstract Data LLC v. Beasley Broadcast Group, Inc.*,
   No. 11-176-LPS, 2011 WL 5523315 (D. Del. Nov. 14, 2011) .................................................5

*Ramirez v. Trans Union, LLC*,
   No. 12-CV-00632-JSC, 2015 WL 6159942 (N.D. Cal. June 22, 2015) ...................................5

*Robledo v. Randstad US, L.P.*,
   No. 17-cv-01003-BLF, 2017 WL 43934205 (N.D. Cal. Nov. 1, 2017) ....................................6

*Smarter Agent, LLC v. Mobilerealtyapps.com, LLC*,
   889 F. Supp. 2d 673 (D. Del. 2012) .........................................................................................6

*UCB, Inc. v. Zydus Pharms. (USA) Inc.*,
   No. 16-903-LPS, 2017 WL 4310860 (D. Del. Sep. 28, 2017) .............................................5, 7

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014)..................................................................................................6

**STATUTES**

35 U.S.C. § 273................................................................................................................................2, 10

I.      INTRODUCTION

Since it served its infringement contentions on November 5, 2021, Celanese has refused to withdraw even a single claim from among the nearly 100 claims currently asserted in this action. When the presiding Chief Administrative Law Judge (ALJ) at the US International Trade Commission rejected Celanese's shaky legal theory for why its claims are valid in view of the on-sale bar—the same theory it will apparently advance here—Celanese persisted, lodging an appeal instead of acknowledging its defeat.

That appeal will have major ramifications for this action. If the Federal Circuit upholds the Chief ALJ's determination, it would eliminate the sole argument Celanese has for the validity of at least 80 of the claims asserted here: that the passage of the America Invents Act (AIA) somehow altered the law of the on-sale bar. *Contra Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628, 634 (2019) ("[W]e determine that Congress did not alter the meaning of 'on sale' when it enacted the AIA.").

Because there were no factual disputes underlying the ALJ's determination, and because the Federal Circuit plainly cannot overrule *Helsinn*, it is far more likely than not that Celanese's appeal will end with a decision that is binding on this Court. That decision would assure the invalidity of the 80 asserted claims that Celanese has admitted to practicing years before it filed for the Asserted Patents.

Ousting 80 of the 94[1] asserted patent claims from this case would dramatically simplify the issues to be tried. It would greatly reduce the number of claims (and, thus, the number of issues) to be considered by the parties, their experts, and ultimately the jury. It would reduce the

---

[1] Celanese puts the total number of asserted claims at 94, not 96. *See* Opp. at 7, n. 2. This further underscores the extent to which awaiting the Federal Circuit's decision would simplify this case.

parties' contentions and expert reports by hundreds (perhaps even thousands) of pages, and it would moot four of the five pending claim construction disputes. The possibility to tremendously simplify this action weighs strongly in favor of a stay.

Though a stay of this action while the Federal Circuit considers Celanese's appeal would at most result in a minor delay of the adjudication of these issues, denying a stay would cause Jinhe significant harm. Jinhe would expend tremendous resources on the issues of obviousness, non-infringement, and the prior-user rights defense of 35 U.S.C. § 273 for 80 claims that face a high likelihood of being invalid. Since Jinhe would be prejudiced more by the denial of a stay than Celanese would be by a stay itself, the prejudice factor also leans strongly toward a stay.

Finally, because little discovery has occurred in this case thus far, the third factor also favors a stay. Particularly when weighed against the high chance of radically reducing the issues in this case, whatever meager investments in discovery the parties have made thus far are no reason to deny a stay.

For these reasons, Jinhe respectfully asks that this action be stayed pending Celanese's appeal of the ALJ's initial determination in ITC Investigation No. 337-TA-1264.

## II.     ARGUMENT

### A.     A Stay Would Not Cause Undue Prejudice to Celanese.

Celanese's arguments for prejudice distill down to two points: first, that Celanese would be harmed by allowing Jinhe to continue manufacturing and selling Ace-K for another year; and, second, that a stay is precluded where, as here, the parties are direct competitors. Neither argument is availing.

First, Jinhe is not "denying" Celanese the ability to seek injunctive relief (Opp. at 5); rather, Jinhe merely seeks to postpone that question until the issue of the validity of over 80

asserted patent claims is resolved. Celanese cites to *Cooper Notification* and *Kraft Foods* in support of this argument, but both cases dealt with facts far afield from those here.

*Cooper Notification* considered a stay in the context of an *inter partes* reexamination. *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 WL 5149351, at *1 (D. Del. Dec. 13, 2010). At the time, such proceedings had "an average pendency of thirty-six months," *id.* at *3, a far cry from the mere 16 month-average for a Federal Circuit appeal today, *see* Opp. at 2 n.1. *Cooper Notification* reasoned that pausing the case for "many years" while the reexamination proceeded would cause too much prejudice to the patentee:

> [T]he stay, if granted, would almost certainly last many years. Resuming this litigation after a protracted stay would likely raise issues with stale evidence, faded memories, and lost documents. Much of the evidence Cooper must amass to prove infringement exists in the minds of witnesses, whose memories will inevitably fade, and who may be difficult to find as time passes. Infringement will also depend to some extent on how Defendants' accused products and services function today, which will be harder to prove years from now.

2010 WL 5149351, at *4. It is on this basis that the court concluded that the patentee's "right to enforce the patent in the interim would be severely hindered." *Id.*

Thus, *Cooper Notification*'s denial had nothing to do with any "commercial reality," as Celanese avers (Opp. at 5), and everything to do with the sheer length of the stay requested there. But this reasoning is inapplicable here, where Jinhe's requested stay would be far shorter.

Likewise, the "unusual procedural posture" that led to the denial of a stay in *Kraft Foods* does not apply to the instant action. *See Kraft Foods Group Brands LLC v. TC Heartland, LLC*, 232 F. Supp. 3d 628, 629 (D. Del. 2017). There, unlike here, this Court had already invested considerably in the case, including "the Court conducting two claim construction hearings and resolving the parties' claim construction disputes; the parties briefing and arguing multiple summary judgment and *Daubert* motions; and the Court holding numerous conferences with the

3

parties to address a host of discovery and scheduling issues." *Id.* at 629-30 (citations to docket entries removed). The defendant's delay in requesting a stay[2] in *Kraft Foods* also contributed to the court's denial: "Neither after filing its mandamus petition in the Federal Circuit nor its petition for a writ of certiorari in the Supreme Court did Heartland ask this Court to stay any portion of this litigation or even indicate that it would seek a stay in the event cert were granted." *Id.* at 630. *Kraft Foods*'s passing mention to "[a]dditional reasons" does not alter the reality that the primary reason for denying the stay was due to the defendant's delay and the court's substantial investment in the case at the time, *see id.*, neither of which is the case here.

Accordingly, the mere fact that Celanese and Jinhe compete with one another in the Ace-K market does not weigh "strongly" against a stay, and Celanese cites no authority so finding. *See* Opp. at 6.

Celanese misstates the law when it argues that Jinhe "must" prove that the denial of a stay would result in "a clear case of hardship or inequity" to Jinhe. *Id.* Indeed, Celanese presents the law as if any harm to a plaintiff would preclude a stay unless the movant shows it would suffer "a clear case of hardship or inequity." *See id.* at 3 ("If there is even a fair possibility that the stay would work damage on another party, the moving party must make a showing of a clear case of hardship or inequity absent a stay, before the court can enter a stay." (internal quotations removed)).

But that is not the law. Instead, courts must strike "an even balance" when weighing the factors in consideration of a stay. *See Landis v. North American Co.*, 299 U.S. 248, 255 (1936).

---

[2] Jinhe was diligent in requesting a stay here. Upon the Commission's adoption of the Chief ALJ's invalidity determination on April 1, Jinhe promptly contacted Celanese to ask whether it would appeal that decision and (if so) whether it would oppose a motion to stay while the appeal was pending. *See* Mot., Ex. D at 4-5. However, Celanese waited nearly a month before providing its position on this issue. *See id.* at 1. Jinhe filed its motion shortly thereafter.

4

The failure "to articulate a clear hardship or inequity" that the movant would suffer without a stay "is not, by itself, fatal." *Cooper Notification*, 2010 WL 5149351, at *2. This Court has made this plain: "Nowhere did the [*Landis*] Court state that a showing of hardship or inequity in proceeding with litigation is an absolute requirement for a stay." *Id.*; *see also Mission Abstract Data LLC v. Beasley Broadcast Group, Inc.*, No. 11-176-LPS, 2011 WL 5523315, at *3 (D. Del. Nov. 14, 2011) (noting that a failure to articulate hardship "is not, by itself, a determinative factor in the analysis").

As for *ImageVision.Net*, cited by Celanese (Opp. at 6), that case has not been universally adopted in this Court. Indeed, since *ImageVision.Net* was decided in 2013, several opinions from this district have correctly held that evidence of hardship or inequity is not required to obtain a stay. *See, e.g.*, *Kaavo Inc. v. Cognizant Tech. Solutions Corp.*, Nos. 14–1192–LPS–CJB, 14-1193–LPS–CJB, 2015 WL 1737476, at *4 n.10 (D. Del. Apr. 9, 2015) ("While demonstrating that it would face undue hardship or prejudice in the absence of a stay can be beneficial to the moving party in the stay calculus, the moving party is not required to put forward such evidence in order have its motion granted."); *see also UCB, Inc. v. Zydus Pharms. (USA) Inc.*, No. 16-903-LPS, 2017 WL 4310860, at *1 (D. Del. Sep. 28, 2017) ("Under the circumstances, the Court sees no reason to analyze whether Defendants would face hardship or inequity in the absence of a stay.").

Nevertheless, Jinhe would be far more than just "inconvenienced" were this action to continue while Celanese pursues its appeal. Jinhe "faces the risk of unnecessary proceedings and expenses if the case is not stayed." *See Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2015 WL 6159942, at *2 (N.D. Cal. June 22, 2015); *see also Larroque v. First Advantage Lns Screening Sols., Inc.*, No. 15-CV-04684-JSC, 2016 WL 39787, at *2 (N.D. Cal. Jan. 4, 2016)

5

("unnecessar[y] expend[iture]" of "[j]udicial resources" pending the outcome of relevant appeal supported decision to stay).

If the case is not stayed, Jinhe would face the hardship and inequity of needlessly addressing issues such as invalidity, non-infringement, and the like for 80 claims that very likely will be withdrawn following appeal. "Denying the stay at this juncture risks forcing [Jinhe] to expend resources that could have been avoided." *See Robledo v. Randstad US, L.P.*, No. 17-cv-01003-BLF, 2017 WL 43934205, at *4 (N.D. Cal. Nov. 1, 2017). Thus, "if the case is not stayed, the Court [and] the parties… would all face the risk of dedicating substantial resources to proceedings that may ultimately prove unnecessary." *Larson v. Trans Union, LLC*, No. 12-CV-05726-WHO, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015).

Celanese has articulated no true prejudice beyond being unable to immediately enforce its patent rights. But the mere allegation of infringement alone is insufficient to show prejudice for purposes of a motion to stay. *See Smarter Agent, LLC v. Mobilerealtyapps.com, LLC*, 889 F. Supp. 2d 673, 676 (D. Del. 2012) (finding unpersuasive "Plaintiff's generalized allegations of irreparable harm" caused by defendants' allegedly ongoing infringement); *see also VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014) ("A stay will not diminish the monetary damages to which [the patentee] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy." (emphasis removed)).

At bottom, the only prejudice Celanese has shown amounts to a 16-month delay in the resolution of its claims against Jinhe. "[B]ut this alone does not warrant a finding that [Celanese] will be unduly prejudiced." *See In re DaVita Inc. Stockholder Derivative Lit.*, No. 17-152-MPT,

6

2018 WL 3105061, at *4 (D. Del. June 25, 2018) (quoting *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, No. 09-571-JJF, 2010 WL 2573925, at * 3 (D. Del June 25, 2010)).

**B.     A Stay Would Overwhelmingly Simplify the Issues in This Case.**

Celanese's opposition confuses simplification with resolution. The law does not require "the Federal Circuit appeal [to be] dispositive of this case," and Celanese has cited no authority so holding. *See* Opp. at 7. Nor does the law require that all asserted claims be disposed of in order to justify a stay. *See, e.g.*, *Cooper Notification*, 2010 WL 5149351, at *3 ("If all or some of the asserted claims are cancelled, this litigation would be simplified.").

"The potential for simplification of the issues in this case is significant. If the Federal Circuit finds some or all of the asserted claims … invalid, its decision would moot some or all of Plaintiffs' claims." *UCB*, 2017 WL 4310860, at *2. That the Federal Circuit could (and likely will) issue an opinion that would confirm the invalidity of 80 of the presently asserted claims weighs significantly in favor of a stay. *See id.*

*Elm 3DS* does not compel a different conclusion. There, the court addressed whether an existing stay should be lifted, not whether to grant a stay in the first place. *Elm 3DS Innovations, LLC v. Samsung Elecs. Co., Ltd.*, No. 14-1430-LPS-CJB, 2018 WL 1061370, at *1 (D. Del. Feb. 26, 2018). In deciding whether the existing stay should be lifted, the *Elm 3DS* court relied heavily on circumstances that had changed since the stay started, including that the defendants there lost their *inter pares* review proceedings. *See id.* at *1-2. Unlike the "reasonable likelihood" of invalidity that stemmed from the PTAB's institution decisions at the time of the stay, "now the best data point we have from the PTAB suggests that these claims will survive." *Id.* at *2. None of that reasoning applies to this action.

Likewise, *Siemens Industries* offers no help to Celanese. It is fundamentally wrong to say that eliminating 80 of the 94 currently asserted claims "would not simplify the majority of the

7

case." *See* Opp. at 7-8 (citing *Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp.*, No. 16-284-LPS, 2018 WL 3046511, at *1 (D. Del. June 20, 2018)). It would.

There is also nothing "premature" about Jinhe's arguments based on the current number of claims. *See id.* at 8 n.3. Celanese has had more than seven months to narrow the number of asserted claims, yet it has refused to do so. When it learned of Jinhe's intent to seek a stay more than a month ago (*see* D.I. 136, Ex. D), Celanese could have perhaps helped its cause by withdrawing some or all of the 80 claims that would be implicated by the Federal Circuit's opinion. It did not.

Equally untrue are Celanese's arguments that "the parties will likely engage in the same or nearly the same amount of fact discovery and expert discovery regardless of the outcome [of the Federal Circuit appeal]." *See* Opp. at 9. Fewer claims in the case would mean fewer issues of invalidity and non-infringement need to be addressed by the parties' technical experts. And the fact that a single claim construction dispute (for "cooling") would survive a Jinhe-favorable Federal Circuit decision ignores the reality that each of the remaining four claim construction disputes would be rendered moot. *See* D.I. 124 at 11 ("the cyclizing agent and the solvent…" of claim 15 of the '316 patent), 39 ("wherein the potassium hydroxide is produced via a membrane process" of claims 4 of each of the '998, '164, and '096 patents), 49 ("conducted at a temperature…" of claim 21 of the '998 patent), 61 ("forming a cyclic sulfur trioxide adduct" of claim 1 of each of the '998, '164, and '096 patents).

Fact discovery would also be simplified. Though many of Celanese's currently asserted claims merely shuffle around minor variations of the same limitations, others (like the "membrane process" limitation of claim 4 of each of the '998, '164, and '096 patents) implicate limitations not found in the claims that would survive the appeal. Eliminating 80 of the asserted claims in this

8

case would necessitate fewer documents and written discovery, less deposition questioning, and (ultimately) fewer issues to be resolved by the jury.

It matters not that the Asserted Patents here differ from those asserted in the ITC Investigation. Unlike each of the cases cited on page 10 of Celanese's opposition, here, it is not the similarity of the patents that matters, it is the similarity of the <u>legal issue</u> of invalidity that would dramatically simplify this case. Because Celanese has admitted that it practiced 80 asserted claims years prior to applying for its patents, the only issue as to whether those claims are valid is a legal one—the very same legal issue the Federal Circuit will consider.

Simply put, though the claims themselves may differ between the two actions, the underlying questions of validity do not. Thus, Jinhe has not "ignore[d]" *Align Technology* (Opp. at 10), it simply sees it for what it is: a much different case decided upon much different facts.

Celanese also faults Jinhe for treating the validity of the 80 claims Celanese has admitted to practicing as a "foregone conclusion." Opp. at 8. Though that was not its intention, Jinhe would be remiss not to note that its position on validity rests upon undisputed facts (*see* D.I. 136, Ex. G at 6, 7) and a clear pronouncement by the Supreme Court (*see Helsinn*, 139 S. Ct. at 634 ("Congress did not alter the meaning of 'on sale' when it enacted the AIA."), not to mention the fact that both the Chief ALJ and the full Commission have agreed with Jinhe's arguments and soundly rejected Celanese's). Celanese's position rests on a desire to make this litigation as burdensome as possible for Jinhe—even if it means lodging an appeal based on questionable-at-best legal theories.

        C.      <u>**The Status of This Litigation Weighs in Favor of a Stay.**</u>

This case is not in "an advanced stage." *See* Opp. at 11. Final contentions are not due for months, expert discovery has not begun, and the operative complaint was just filed less than

9

three months ago (on March 23, 2022). *See* D.I. 105. As with the other cases cited in Celanese's opposition, *Copy Protection*, *Invensas*, and *SoftView* each involved distinguishable facts.

In *Copy Protection LLC v. Netflix, Inc.*, the parties had engaged in "a substantial amount of discovery." No. 14-365-LPS, 2015 WL 3799363, at *1 (D. Del. June 17, 2015). That is not the case here. The parties in this action have not taken (or even noticed) a single deposition. Until Celanese filed its Second Amended Complaint on March 23, 2022, the parties have done little in this case apart from claim construction briefing—which, itself, was largely recycled from the ITC Investigation. The overwhelming majority of the documents produced in this case were not "produced" here; they were produced in the ITC Investigation and made available here subject to a cross-use agreement. Celanese has not shown that these paltry activities are "substantial."

The circumstances in *Invensas Corp. v. Samsung Electronics Co., Ltd.* also differ from those here. No. 17-1363-MN-SRF, 2018 WL 4762957 (D. Del. Oct. 2, 2018). There, the court found that staying the action "would not conserve significant resources." *Id.* at *4. Not so here. As already explained, a stay would conserve the substantial resources of both sides in addressing 80 patent claims for purposes of infringement, invalidity, and the prior-user defense of 35 U.S.C. § 273. It would also moot four of the five claim construction disputes, thereby conserving judicial resources as well.

And, unlike the "[s]ubstantial time and resources" that the court had invested into "scheduling and the resolution of discovery disputes" in *SoftView LLC v. Apple Inc.*, the parties here have yet to raise a single discovery dispute or scheduling issue. *See* No. CIV. 10-389-LPS, 2012 WL 3061027, at *4 (D. Del. July 26, 2012).

**III.   CONCLUSION**

This case should be stayed pending resolution of Celanese's appeal of the Commission Decision in ITC Investigation No. 337-TA-1264 to the Federal Circuit.

10

|  |  |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Gary M. Hnath<br>Bryan Nese<br>Courtney M. Krawice<br>MAYER BROWN LLP<br>1999 K Street, NW<br>Washington, DC 20006<br>(202) 263-5282 | By: */s/ Jonathan A. Choa*<br>    Jonathan A. Choa (#5319)<br>    P.O. Box 951<br>    Wilmington, DE 19899<br>    (302) 984-6000<br>    jchoa@potteranderson.com |
| Dated:  June 10, 2022<br>10182874 | *Attorneys for Defendants Anhui Jinhe Industrial Co., Ltd. and Jinhe USA LLC* |

**APPENDIX OF EXHIBITS[3]**

| Exhibit | Description |
|---|---|
| A | Celanese's Opening *Markman* Brief in ITC Investigation No. 337-TA-1264 |
| B | Initial Determination (Order No. 29) in *Certain High-Potency Sweeteners, Processes for Making Same, & Prods. Containing Same*, Inv. 337-TA-1264 (Jan. 11, 2022) |
| C | Commission Notice Not to Review ID in *Certain High-Potency Sweeteners, Processes for Making Same, & Prods. Containing Same*, Inv. 337-TA-1264 (Apr. 1, 2022) |
| D | Email Correspondence Between B. Nese and A. Fountain |
| E | Celanese's First Supplemental Infringement Contentions (Nov. 5, 2021) |
| F | Celanese's Responses to Defendants' Second Set of Common Interrogatories |
| G | Celanese's Responses to Defendants' First Set of Common Interrogatories |

---

[3] These exhibits were submitted with Jinhe's opening memorandum. No new exhibits are being submitted with this reply.