**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CELANESE INTERNATIONAL CORPORATION; CELANESE (MALTA) COMPANY 2 LIMITED; & CELANESE SALES U.S. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ANHUI JINHE INDUSTRIAL CO., LTD.; JINHE USA LLC; UMC INGREDIENTS, LLC f/k/a JRS INTERNATIONAL LLC; PRINOVA US LLC; & AGRIDIENT, INC., <br><br> Defendants. | C.A. No. 1:20-01775-RGA <br><br> **JURY TRIAL DEMANDED** <br><br> **PUBLIC VERSION OF D.I. 145 FILED: JUNE 17, 2022** |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO DISMISS DEFENDANTS ANHUI JINHE INDUSTRIAL CO., LTD. AND JINHE USA LLC'S <u>COUNTERCLAIMS AND TO STRIKE RELATED AFFIRMATIVE DEFENSES</u>**

## TABLE OF CONTENTS

Page

I. JINHE FAILS TO ALLEGE AN INEQUITABLE CONDUCT DEFENSE ..................... 1

    A. Jinhe Fails to Allege "But-For Materiality." ............................................................ 1

        1. The AAA Impurity Amount in the Crude Ace-K Is Irrelevant. .................. 1

        2. No Relevant Data Regarding 5 Chloro ASK Was Allegedly Withheld. ...................................................................................................... 2

        3. Jinhe Fails to Allege Materiality for the AAA-NSH Data. ......................... 3

        4. Jinhe's Allegations Regarding "Utility" Also Fail. .................................... 3

    B. Jinhe Has Not Alleged Any Specific Facts of Specific Intent to Deceive. ............. 4

II. JINHE'S ANTITRUST COUNTERCLAIM MUST BE DISMISSED UNDER ANY SHAM LITIGATION PLEADING STANDARD ...................................................... 5

    A. The *PREI* Test Applies and Jinhe Concedes Its Allegations Fail Under *PREI*. ....................................................................................................................... 5

    B. Jinhe's Allegations Similarly Fail Under *Hanover*'s Series Test. ......................... 6

    C. Jinhe Falls Far Short on Other Critical Elements of Its Antitrust Claim. .............. 8

        1. Celanese Does Not Have Monopoly Power in the Relevant Market. ......... 8

        2. Jinhe's Antitrust Injury Allegations Are Fundamentally Deficient. ........... 9

    D. Dismissal of Jinhe's Antitrust Claim Is Proper. .................................................... 10

III. JINHE'S DELAWARE DTPA CLAIM FAILS ............................................................. 10

IV. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3Shape Trios A/S v. Align Tech., Inc.*,
  No. 18-3332-LPS, 2019 WL 3824209 (D. Del. Aug. 15, 2019) ................................................ 6

*Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*,
  745 F.3d 1180 (Fed. Cir. 2014) .................................................................................................2

*Analog Devices, Inc. v. Xilinx, Inc.*,
  No. 19-cv-2225-RGA, 2021 WL 466859 (D. Del. Feb. 9, 2021) ........................................ 4, 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................................9

*CFMT, Inc. v. Yieldup Int'l Corp.*,
  349 F.3d 1333 (Fed. Cir. 2003) .................................................................................................2

*C.R. Bard, Inc. v. M3 Sys, Inc.*
  157 F.3d 1340 (Fed. Cir. 1998) .................................................................................................6

*Duke Univ. v. Akorn, Inc.*,
  No. 3:18-cv-14035-BRM-TJB, 2019 WL 4410284 (D.N.J. Sept. 16, 2019) ............................6

*Envirotech Corp. v. Al George, Inc.*,
  730 F.2d 753 (Fed. Cir. 1984) ...................................................................................................3

*Fed. Trade Comm'n v. Shire ViroPharma Inc.*,
  No. CV 17-131-RGA, 2018 WL 1401329 (D. Del. Mar. 20, 2018), *aff'd*, 917
  F.3d 147 (3d Cir. 2019) ...........................................................................................................10

*Forsyth v. Humana, Inc.*,
  114 F.3d 1467 (9th Cir. 1997) ............................................................................................. 8, 9

*Hanover 3201 Realty, LLC v. Village Supermarkets*
  806 F.3d 162 (3d Cir. 2015) ................................................................................................ 7, 8

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
  280 F. Supp. 3d 691 (D. Md. 2017), *aff'd*, 937 F.3d 1359 (Fed. Cir. 2019) .............................5

*Invista N.A. S.à.r.l. v. M&G USA Corp.*,
  No. 11-1007-SLR-CJB, 2013 WL 12304544 (D. Del. May 3, 2013) .......................................4

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997) ......................................................................................................3

*Newman v. Quigg*,
   877 F.2d 1575 (Fed. Cir.), *modified*, 886 F.2d 329 (Fed. Cir. 1989) ......................................... 3

*Nobelpharma AB v. Implant Innovations, Inc.*,
   141 F.3d 1059 (Fed. Cir. 1998) ................................................................................................ 5

*Novo Nordisk A/S v. Caraco Pharma. Lab'ys, Ltd.*,
   719 F.3d 1346 (Fed. Cir. 2013) ............................................................................................. 2, 3

*Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc.*,
   118 F. Supp. 3d 646 (D.N.J. 2015) ........................................................................................ 10

*Rompola v. Lehigh Valley Hospital*,
   No. Civ.A.03–2993, 2004 WL 1508533 (E.D. Pa. Jul.6, 2004) ........................................... 7, 8

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
   No. 12-441-RGA, 2014 WL 2622240 (D. Del. June 11, 2014) ............................................... 5

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) ............................................................................... 1

*Waugh Chapel v. United Food*,
   728 F.3d 354 (4th Cir. 2013) .................................................................................................... 8

**Other Authorities**

37 CFR § 1.56 ................................................................................................................................. 1

MPEP § 2107.02 ............................................................................................................................. 4

-

## I. JINHE FAILS TO ALLEGE AN INEQUITABLE CONDUCT DEFENSE

### A. Jinhe Fails to Allege "But-For Materiality."

Jinhe's Opposition repeatedly cites and relies on the wrong legal standard. "[T]he materiality required to establish inequitable conduct is but-for materiality." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (*en banc*). But-for materiality requires that "the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* The Federal Circuit rejected PTO Rule 56's definition of materiality, cited by Jinhe, because it "sets such a low bar for materiality" and "would inevitably result in . . . patent litigators continuing to charge inequitable conduct in nearly every case as a litigation strategy" even if the withheld information is "marginally relevant to patentability." *Id.* at 1294–95. Jinhe's repeated reliance on PTO Rule 56, D.I. 142 at 5, 7, 9, confirms that Jinhe has failed to allege how and why an examiner would have used the allegedly withheld information to reject Celanese's claims.

### 1. The AAA Impurity Amount in the Crude Ace-K Is Irrelevant.

Jinhe's Opposition does not identify a single claim that would be invalidated by the allegedly withheld data regarding AAA impurity levels in the crude Ace-K composition. No claim recites any impurity limit for AAA in the crude Ace-K, and the specification does not state that controlling the pH of the neutralization step has any effect on AAA in the crude Ace-K. Indeed, the only claims Jinhe can point to, D.I. 142 at 6, simply require that some AAA be present without limit in the crude Ace-K. *See* '998 patent, claim 6 ("the crude acesulfame potassium composition further comprising acetoacetamide"); '164 patent, claim 21 (same); '096 patent, claim 17 (same). Jinhe's reliance on these claims demonstrates that Jinhe is grasping at straws.[1]

---

[1] Jinhe's assertion that AAA can be carried forward from the crude Ace-K to the finished Ace-K because it is an organic molecule, D.I. 142 at 6, is even worse. Rather than point to any statement from the specification or the inventors, Jinhe cites the specification's definitions of "intermediate Ace-K" and "finished Ace-K," which do not mention AAA at all. Ex. B, '998 patent at 5:34-48.

Jinhe's argument that *Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*, 745 F.3d 1180, 1190 (Fed. Cir. 2014) is inapplicable because it relates to "enablement" instead of "patentability," simply underscores Jinhe's failure to plead materiality. *See* D.I. 142 at 6, n.4. Enablement "of the claims as filed" is a requirement of patentability, *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003) (reversing non-enablement and inequitable conduct finding because the withheld data was of "very marginal relevance to enablement of the claims *as filed*"). Jinhe was required to include specific allegations showing how an examiner would use the withheld data to reject the claims for lack of enablement, yet Jinhe's Opposition does not argue that any as-filed claims are not enabled in view of the data regarding the amount of AAA impurity in the crude Ace-K.

### 2. No Relevant Data Regarding 5 Chloro ASK Was Allegedly Withheld.

The specification of the '316 and '097 patents fully disclose the magnitude of the effect of cooling the cyclizing agent composition on the 5 Chloro ASK impurity. '316 patent at 30:1–13. Jinhe does not allege that any of these experimental data were false or not performed. Jinhe instead points to the inventor's subjective notes that the magnitude of the effect of cooling the cyclizing agent was "▮▮▮▮▮▮▮▮▮▮." D.I. 142 at 7. However, "▮▮▮▮" effects are not a requirement of patentability, and the inventor's subjective, qualitative assessment is legally irrelevant where the objective measurements were provided to the examiner. *See Novo Nordisk A/S v. Caraco Pharma. Lab'ys, Ltd.*, 719 F.3d 1346, 1358 (Fed. Cir. 2013) (failure to acknowledge the lack of human data did not support inequitable conduct claim when animal data was fully disclosed). Any reasonable examiner looking at the data in the specification would see the size of the effect of cooling the cyclizing agent composition on the 5 Chloro ASK impurity level.

Jinhe's allegations that the cyclizing agent composition cannot be heated to 35 ºC is an unfounded and contrived attorney argument. The specification includes an experiment heating the cyclizing agent composition to 35 ºC, '316 patent at 28:35–42, and the very Yadav Exhibits

referenced by Jinhe's allegations show that Dr. Yadav performed multiple experiments with the cyclizing agent composition at or near this temperature. Ex. E, Yadav Ex. 17 at 2 (33 ºC); Ex. F, Yadav Ex. 18 at 3 (33 ºC); Ex. G, Yadav Ex. 19 at 3 (33 ºC); and Ex. H, Yadav Ex. 10 at 8 (35 ºC). Jinhe does not and cannot allege that these experiments were not performed. Thus, Jinhe's allegation that "the claimed cyclization agent composition temperature of up to 35 ºC (claim 1 of the '316 patent) was not functional," D.I. 142 at 7, is demonstrably false and the Court should not credit it. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (a court is not obligated to accept "bald assertions" or "unsupported conclusions and unwarranted inferences").

### 3.     Jinhe Fails to Allege Materiality for the AAA-NSH Data.

None of the claims in '998 family recite any "trends"; they merely claim a certain amount of AAA-NSH impurity (*e.g.*, 2800 wppm) at certain neutralization pH (*e.g.*, at or less than 11.0). Jinhe asserts that the theory of the invention is material information, but this is not the law. *Newman v. Quigg*, 877 F.2d 1575, 1581 (Fed. Cir.), *modified*, 886 F.2d 329 (Fed. Cir. 1989).

Moreover, exemplary claim 1 of the '998 patent requires that the pH be at or less than 11.0 and that the amount of AAA-NSH in the crude Ace-K be less than 2800 wppm. Jinhe does not identify any omitted data where the pH was less than 11.0 and the amount of AAA in the crude Ace-K exceeded 2800 wppm. In addition, all of the data, including the omitted data, support the general trend that higher pH leads to higher AAA-NSH impurity content. D.I. 135 at 8. Jinhe's reliance on *Novo Nordisk A/S* is, thus, misplaced. "This is *not* a case where a declarant hid adverse test results from the PTO in favor of more promising data selected post hoc." *Novo Nordisk*, 719 F.3d at 1358 (reversing inequitable conduct).

### 4.     Jinhe's Allegations Regarding "Utility" Also Fail.

Jinhe's argument that certain claim limitations fail the utility requirement is inadequate as a matter of law. The standard for utility is low. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d

753, 762 (Fed. Cir. 1984) ("the fact that an invention has only limited utility and is only operable in certain applications is not grounds for finding lack of utility"). Every independent claim of the Asserted Patents includes a process parameter that is controlled and a limit for a corresponding impurity. Celanese included data demonstrating these relationships, and Jinhe does not allege that these key aspects of the independent claims are well-known, trivial, inconsequential, scientifically unsupported, or arbitrary. D.I. 142 at 9–10. Instead, Jinhe's allegations focus on which inventor "set" the limitations and on certain dependent claims. Both are irrelevant to utility. *See.* D.I. 135 at 10 (inventors); MPEP § 2107.02 (dependent claim utility); D.I. 128 at 26, ¶ 40.

### B. Jinhe Has Not Alleged Any Specific Facts of Specific Intent to Deceive.

Jinhe's Opposition points to nothing more than allegations that an inventor withheld material information and, thus, confirms that its allegations are deficient. Jinhe's allegation that "Dr. Yadav, and by extension all of the other named inventors, withheld contrary test results that disprove the trends and numerical ranges outlined in the Asserted Patents," D.I. 142 at 10, is insufficient as a matter of law. *See, e.g.*, *Invista N.A. S.à.r.l. v. M&G USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 12304544, at *11 (D. Del. May 3, 2013) (finding "the alleged repeated omissions of material information" *insufficient* for pleading specific intent).

Jinhe argues that *Analog Devices, Inc. v. Xilinx, Inc.*, No. 19-cv-2225-RGA, 2021 WL 466859, at *1 (D. Del. Feb. 9, 2021) is inapplicable because there the inventor withheld a "prior art reference," whereas here Dr. Yadav allegedly "withheld adverse data." D.I. 142 at 10–11. This is a distinction without a difference. The nature of the withheld information was inconsequential to this Court's analysis regarding specific intent. *See Analog Devices*, 2021 WL 466859, at *3.

Jinhe's Opposition would erase specific intent as a separate pleading requirement altogether. Jinhe argues that the information was allegedly withheld to "gain patent protection," and "[r]egardless of the reason, [it] should have been disclosed." D.I. 142 at 11. All patent

- 4 -

prosecution is aimed at "gain[ing] patent protection," and under Jinhe's argument, alleging that an individual "knew of the withheld material information or of the falsity of the material misrepresentation" would render the additional and separate requirement of pleading that the same individual "withheld or misrepresented this information with a specific intent to deceive the PTO" superfluous. *Analog Devices*, 2021 WL 466859, at *1.

Lastly, Jinhe argues that an inference of specific intent "is further supported by Celanese's scheme of leveraging its patent portfolio as an anticompetitive weapon." D.I. 142 at 11. This argument also fails. Even taken as true, Jinhe's antitrust assertions cannot support its specific intent allegations because Jinhe fails to allege how the inventors were connected to the alleged "scheme." *See St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, No. 12-441-RGA, 2014 WL 2622240, at *1 (D. Del. June 11, 2014) (finding specific intent allegations insufficient because they were not attributed to any individual).

## II. JINHE'S ANTITRUST COUNTERCLAIM MUST BE DISMISSED UNDER ANY SHAM LITIGATION PLEADING STANDARD

### A. The *PREI* Test Applies and Jinhe Concedes Its Allegations Fail Under *PREI*.

Whether "conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a question of Federal Circuit law"—not regional circuit law. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998). "This conclusion applies equally to **all** antitrust claims premised on the bringing of a patent infringement suit." *Id.* (emphasis added). The Federal Circuit applies the *PREI* standard when deciding whether the sham litigation exception has been met. *See, e.g.*, *id.* at 1071 (sham litigation requires "that the suit was both *objectively* baseless and *subjectively* motivated by a desire to impose collateral, anti-competitive injury rather than to obtain a justifiable legal remedy") (citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60-

61 (1993)); *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 280 F. Supp. 3d 691, 712 (D. Md. 2017), *aff'd*, 937 F.3d 1359 (Fed. Cir. 2019) (analyzing multiple cases and stating, "Federal Circuit law, under which *PREI* provides the standard for deciding whether *Noerr–Pennington* immunity exists or whether the sham-litigation exception is present," applies in cases involving antitrust counterclaims in a patent litigation). Thus, after *Hanover*, district courts in the Third Circuit have applied the *PREI* test, even if a "series" of patent infringement such suits is alleged. *See, e.g.*, *Duke Univ. v. Akorn, Inc.*, No. 3:18-cv-14035-BRM-TJB, 2019 WL 4410284, at *7–*8 (D.N.J. Sept. 16, 2019); *3Shape Trios A/S v. Align Tech., Inc.*, No. 18-3332-LPS, 2019 WL 3824209, at *5 (D. Del. Aug. 15, 2019).

Despite reciting the language of *PREI* in its counterclaim, D.I. 128 at ¶¶ 29, 78, 80, Jinhe's Opposition does not defend its allegations under the *PREI* standard. This is dispositive. In *C.R. Bard, Inc. v. M3 Sys, Inc.*, the Federal Circuit held that "sham litigation requires more than a failed legal theory." 157 F.3d 1340, 1369 (Fed. Cir. 1998) ("Neither the bringing of an unsuccessful suit to enforce patent rights, nor the effort to enforce a patent that falls to invalidity, subjects the suitor to antitrust liability."). Jinhe's purported allegations that Celanese's current lawsuits are objectively baseless assert that Celanese's legal theory regarding the on-sale bar has failed. D.I. 135 at 14–15. This is insufficient as a matter of law. *C.R. Bard*, 157 F.3d at 1369. Jinhe does not allege that every claim is invalid under the on-sale bar. Moreover, Celanese disclosed both the legal theory and the underlying facts to the PTO, which issued the patents. Celanese was entitled to rely on the patents' issuance and assert them against Jinhe. *Id.* at 8–9.

### B.   Jinhe's Allegations Similarly Fail Under *Hanover*'s Series Test.

Even if this Court applies *Hanover*'s series test, Jinhe's sham litigation allegations still fail. Jinhe's Opposition suggests that an analysis of the objective merit of the alleged sham suits is not required by *Hanover*, but that is simply not true. *Hanover* makes clear that the objective merit of

each of the actions is relevant to "whether the legal filings were made, 'not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaking essentially for purposes of harassment.'" *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015).

In *Hanover*, the defendants "launched a petitioning campaign designed to block Hanover Realty from obtaining the permits and approvals it needed" for a project by filing a series of four administrative and court actions. *Id.* at 167. *Hanover* held that the *California Motor* standard governs an alleged series of sham litigations, and articulated that standard as "whether a series of petitions were filed with or without regard to merit and for the purpose of using the governmental process (as opposed to the outcome of that process) to harm a market rival and restrain trade." *Id.* at 180. The court noted that the objective merit of the cases is directly relevant to that inquiry: "If more than an insignificant number of filings have objective merit, a defendant likely did not have a policy of filing 'willy-nilly without regard to success.'" *Id.* at 181. The *Hanover* court assessed the merit of each of the defendants' actions and found several lacked objective merit and suggested bad faith, which supported an inference that the defendants "brought these actions under a policy of harassment" and was sufficient to allege sham litigation. *Id.* at 181–83.

Jinhe alleges that Celanese has filed four relevant actions: the -1030 ITC Investigation, the -1264 ITC Investigation, the California District Court case, and this case. D.I. 142 at 13. Yet Jinhe fails to allege any lack of objective merit as required by *Hanover*. *Id.* at 181–82.

As Jinhe concedes, Celanese withdrew the -1030 ITC Investigation upon discovering the claims' invalidity. D.I. 128 at 25. This alone undermines the notion that Celanese has pursued claims against Jinhe regardless of their merit. *See Rompola v. Lehigh Valley Hospital*, No. Civ.A.03–2993, 2004 WL 1508533, at *4 (E.D. Pa. Jul. 6, 2004) (denying fees and concluding

that withdrawal "demonstrates the reasonableness of Plaintiff and her counsel, rather than suggesting that she pursued this case in bad faith or without foundation"). *Waugh Chapel v. United Food* is distinguishable because the defendant withdrew 10 of 14 patent cases "under suspicious circumstances." 728 F.3d 354, 365 (4th Cir. 2013). Here, Jinhe makes no specific allegations that the -1030 Investigation was filed "with or without regard to merit and for the purpose of using the governmental process . . . to harm a market rival." *See Hanover*, 806 F.3d at 180.

The -1264 Investigation, the California case, and this case fare no better for Jinhe. Jinhe's allegations all hinge on an on-sale bar issue that was novel at the time these cases were filed. Ex. O at 8. Moreover, the ALJ made no suggestion that Celanese's legal theory was unreasonable or that the case was filed purely to harass Jinhe. *Id*. at 5 (the ALJ recognizes Celanese's legitimate legal arguments) and 8–13 (the ALJ addresses Celanese's arguments). Jinhe simply argues that this case "suffers from the same flaw" as its prior cases. But even an as-yet unreached final failure of Celanese's legal theory under the AIA's amended on-sale bar does not render this case a sham under *C.R. Bard* as discussed above. Jinhe fails to plausibly allege that any—much less most—of Celanese's patent infringement cases lacked objective merit when filed.

### C.  Jinhe Falls Far Short on Other Critical Elements of Its Antitrust Claim.

#### 1.  Celanese Does Not Have Monopoly Power in the Relevant Market.

Unable to get around its fatal admission that Jinhe—not Celanese—controls a dominant share of the Ace-K market in the U.S., D.I. 128 at ¶¶ 59–63, Jinhe now resorts to misstating the law and its own allegations regarding monopoly power. Jinhe asserts that "raising rival's costs of securing critical inputs or customers is direct evidence of *anticompetitive conduct*." D.I. 142 at 16 (emphasis added). But anticompetitive conduct is a separate element from monopoly power. *Forsyth v. Hamana, Inc*., the case upon which Jinhe relies, makes clear that to prevail on a monopolization claim, a party must demonstrate **both** monopoly power **and** anticompetitive

conduct (as well as antitrust injury). 114 F.3d 1466, 1475 (9th Cir. 1997). Thus, contrary to Jinhe's claims, D.I. 142 at 16-17, its allegations that Celanese raised its rivals' costs are not, as a matter of law, direct evidence of Celanese's monopoly power. The only direct evidence of monopoly power is "evidence of restricted output and supracompetitive prices," *Forsyth*, 114 F.3d at 1475, and Jinhe has adequately alleged neither—as its Opposition tacitly concedes.

Tellingly, Jinhe misconstrues its own allegations and states that two other competitors, VitaSweet and Hope, were "forc[ed] . . . out of the U.S. Ace-K market as a result of Celanese's litigation tactics." D.I. at 16. But Jinhe's amended counterclaim does not—because it cannot—make such an allegation. Instead, it says only that VitaSweet and Hope ████████ '████████.'" D.I. 128 at ¶ 55 (citing ████████ There could be any number of reasons that VitaSweet and Hope ████████ and exited the market; Jinhe does not allege—much less put forth factual support—that Celanese's litigation was the cause.

Jinhe's allegations regarding its own purportedly higher costs of doing business fare no better as they are conclusory and, thus, deficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Jinhe alleges no specific facts regarding its purportedly higher costs due to Celanese's alleged conduct, much less how such costs have impacted Celanese's pricing or market power.

### 2. Jinhe's Antitrust Injury Allegations Are Fundamentally Deficient.

Jinhe's argument that it has sufficiently pleaded antitrust injury is premised on the same misstatement of its own allegations—namely, that Celanese forced VitaSweet and Hope out of the market. D.I. 142 at 18. Again, Jinhe's pleading does not make that allegation. D.I. 128 at ¶ 55. With respect to Jinhe itself, the amended counterclaim also falls short because its recitation of the harm element is contradicted by its factual allegations. Jinhe's own allegations establish that Jinhe successfully competes against Celanese and controls a dominant share of the Ace-K market in the

United States. *See* D.I. 128 at 40–41, ¶¶ 59–63. There is no factual basis from which this Court could reasonably infer that Celanese's alleged conduct has decreased competition for Ace-K.

      **D.**      **Dismissal of Jinhe's Antitrust Claim Is Proper.**

Jinhe's last-ditch effort to salvage its antitrust claim is to argue that this Court should not dismiss it because the parties' "dispute the facts concerning Celanese's patent assertions." D.I. 142 at 15. The cases upon which Jinhe relies are readily distinguishable. *See Fed. Trade Comm'n v. Shire ViroPharma Inc.*, No. CV 17-131-RGA, 2018 WL 1401329, at *7 (D. Del. Mar. 20, 2018), *aff'd*, 917 F.3d 147 (3d Cir. 2019) (finding allegations that defendant filed 46 regulatory and court filings against the FTC "sufficient at this stage to overcome [its] 'presumptive antitrust immunity'"); *Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc.*, 118 F. Supp. 3d 646, 656 (D.N.J. 2015) (finding allegations that defendant provided "dispositive evidence of noninfringment" to plaintiff before it filed suit "sufficient to overcome Otsuka's presumptive antitrust immunity"). Moreover, there is no dispute regarding the critical facts here: 1) Jinhe's sham litigation claim is based on the legally deficient theory that Celanese did not prevail on a novel on-sale bar issue before the ITC, and 2) Celanese lacks monopoly power or a dangerous probability of gaining it. Celanese's efforts to enforce the Asserted Patents are not subject to antitrust liability, and Jinhe's antitrust counterclaim should be dismissed.

**III.**     **JINHE'S DELAWARE DTPA CLAIM FAILS**

Jinhe's Opposition confirms that its DTPA claims are based on its allegations of sham litigation. D.I. 142 at 20. Thus, Jinhe was required to plead that Celanese's claims were objectively baseless. D.I. 135 at 20. This is the same *PREI* standard that Jinhe does not address in its Opposition, and Jinhe's DTPA claim is thus preempted by federal patent law. *Id.*

**IV.**     **CONCLUSION**

Celanese respectfully requests that its motion be granted.

Dated: June 15, 2022

**OF COUNSEL:**

Aaron G. Fountain (admitted *pro hac vice*)
**MORRISON & FOERSTER LLP**
701 Brazos Street, Suite 1100
Austin, TX 78701
Telephone: (737) 309-0655
afountain@mofo.com

Susan M. Krumplitsch (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 833-2440
Facsimile: (650) 687-1230
susan.krumplitsch@us.dlapiper.com

Ellen A. Scordino (admitted *pro hac vice*)
Kristin M. Beale (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000
Facsimile: (617) 406-6100
ellen.scordino@us.dlapiper.com
kristin.beale@us.dlapiper.com

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)
Erin E. Larson (DE Bar No. 6616)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com
erin.larson@us.dlapiper.com

*Attorneys for Plaintiffs Celanese International Corporation, Celanese (Malta) Company 2 Limited, and Celanese Sales U.S. Ltd.*

**CERTIFICATE OF SERVICE**

I, Brian A. Biggs, hereby certify that on this 15th day of June, 2022, a copy of **REPLY BRIEF IN SUPPOR OF PLAINTIFFS' RENEWED MOTION TO DISMISS DEFENDANTS ANHUI JINHE INDUSTRIAL CO., LTD. AND JINHE USA LLC'S COUNTERCLAIMS AND TO STRIKE RELATED AFFIRMATIVE DEFENSES** was served upon the following counsel of record via electronic mail:

Stephen B. Brauerman
Ronald P. Golden III
**BAYARD, P.A.**
600 N. King Street
Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*OF COUNSEL*

Arthur A. Gasey
**VITALE, VICKREY, NIRO, SOLON & GASEY LLP**
311 S. Wacker Drive, Suite 2470
Chicago, IL 60606
Telephone: (312) 236-0733
Facsimile: (312) 236-3137
gasey@vvnlaw.com

*Attorneys for Prinova US LLC*

John W. Shaw
Andrew E. Russel
**SHALL KELLER LLP**
I.M. Pei Building
1105 North Market Street
12th Floor
Wilmington, DE 19801
Telephone: (302) 298-0800
jshaw@shawkeller.com
arussell@shawkeller.com

Jonathan A. Choa
**POTTER ANDERSON & CORROON LLP**
1313 N. Market St., Hercules Plaza
6th Floor
P.O. Box 951
Wilmington, DE 19899
Telephone: 302-984-6189
jchoa@potteranderson.com

OF COUNSEL:

Bryan Nese
Gary M. Hnath
Clark S. Bakewell
Courtney M. Krawice
**MAYER BROWN LLP**
1999 K. Street, NW
Washington, D.C. 20006-1101
Telephone: (202 263-3266
bnese@mayerbrown.com
ghnath@mayerbrown.com
ckrawice@mayerbrown.com

Ying-Zi Yang
Scott A. McMurry
**MAYER BROWN LLP**
1221 Avenue of the Americas
Telephone: (212) 506-2368
New York, NY 10020-1001
yyang@mayerbrown.com
smcmurry@mayerbrown.com
cbakewell@mayerbrown.com

- 13 -

*Attorneys for Defendants Anhui Jinhe*
**OF COUNSEL:** *Industrial Co., Ltd. and Jinhe USA LLC*

Paul Grandinetti
Levy & Grandinetti
1120 Connecticut Avenue, N.W.
Suite 304
Washington, D.C. 20036
Telephone: (202) 429-4560
mail@levygrandinetti.com

*Attorneys for Defendant UMC Ingredients, LLC*

*/s/ Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)