IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CELANESE INTERNATIONAL CORPORATION; CELANESE (MALTA) COMPANY 2 LIMITED; & CELANESE SALES U.S. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ANHUI JINHE INDUSTRIAL CO., LTD.; JINHE USA LLC; UMC INGREDIENTS, LLC f/k/a JRS INTERNATIONAL LLC; PRINOVA US LLC; & AGRIDIENT, INC., <br><br> Defendants. | C.A. No. 1:20-01775-RGA <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF
<u>MOTION TO MAINTAIN THE STAY</u>**

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1
II. NATURE AND STAGE OF PROCEEDINGS .................................................................. 2
III. LEGAL STANDARD.......................................................................................................... 4
IV. ALL THREE FACTORS FAVOR CONTINUING THE COURT'S STAY .................... 5
    A. Maintaining the Stay Will Simplify the Issues for Trial......................................... 5
    B. The Status of Litigation Favors Maintaining the Stay. .......................................... 8
    C. Continuing the Stay Works No Undue Prejudice on Defendants. ......................... 8
V. CONCLUSION.................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*,
  C.A. Nos. 06-187-GMS & 06-391-GMS, 2009 WL 2969566 (D. Del. Sept. 15, 2009) ..................9

*Bradley v. Sch. Bd. of City of Richmond*,
  416 U.S. 696 (1974) ..................6

*Clay v. United States*,
  537 U.S. 522 (2003) ..................6

*Cost Bros., Inc. v. Travelers*,
  760 F.2d 58 (3d Cir. 1985) ..................4

*Cytiva BioProcess R&D AB et al. v. JSR Corporation et al.*
  No. 21-cv-310-RGA, D.I. 90 (D. Del. Aug. 11, 2023) ..................4

*eBuddy Tech. BV v. LinkedIn Corp.*,
  No. 20-cv-1501-RGA, D.I. 152 (D. Del. Jul. 31, 2023) ..................7, 8

*Kyocera Senco Indus. Tools, Inc. v. Koki Holdings Am. Ltd.*,
  No. CV 17-598-CFC, 2022 WL 17830633 (D. Del. Dec. 21, 2022) ..................9

*Landis v. North American Co.*,
  299 U.S. 248 (1936) ..................4

*Princeton Digital Image Corp. v. Konami Digital Entm 't Inc.*,
  No. CV 12-1461-LPS-CJB, 2015 WL 219019 (D. Del. Jan. 14, 2015) ..................5

*In re Princo Corp.*,
  478 F.3d 1345 (Fed. Cir. 2007) ..................5, 6

*Taveras v. UBS AG*,
  612 F. App'x 27 (2d Cir. 2015) ..................6

**Statutes and Rules**

America Invents Act § 102(a)(1) ..................1, 3, 6

LR 7.1.1 ..................4

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | *Cytiva BioProcess R&D AB et al. v. JSR Corporation et al.* No. 21-cv-310-RGA, D.I. 90 (D. Del. Aug. 11, 2023) |
| B | Defendants' brief (Dkt. 28-1) in support of stay motion in the companion case *Celanese et al.* v. *Jinhe et al.* Case No.: 2:21-CV-03070-AB-KS (C.D. Cal., May 18, 2021) |
| C | Information Disclosure Statement filed during the prosecution of United States Patent No. 10,029,998 ("the '998 patent") |
| D | Information Disclosure Statement filed during the prosecution of United States Patent No. 10,233,164 ("the '164 patent") |
| E | Information Disclosure Statement filed during the prosecution of United States Patent No. 10,227,316 ("the '316 patent") |
| F | Information Disclosure Statement filed during the prosecution of United States Patent No. 10,590,096 ("the '096 patent") |
| G | Information Disclosure Statement filed during the prosecution of United States Patent No. 10,590,097 ("the '097 patent") |
| H | *eBuddy Tech. BV v. LinkedIn Corp.*, No. 20-cv-1501-RGA, D.I. 152 (D. Del. Jul. 31, 2023) |
| I | Rules of the Supreme Court of the United States |
| J | Amy Howe, *The Certiorari Process: Seeking Supreme Court Review*, SCOTUSBLOG (Oct. 30, 2024), https://www.scotusblog.com/election-law-explainers/the-certiorari-process-seeking-supreme-court-review/#:~:text=The%20side%20seeking%20Supreme%20Court,the%20election%20has%20actually%20occurred. |

**I.      INTRODUCTION**

A central dispute between Celanese and Defendants in this case is whether 79 of the 95 asserted claims across five patents are invalid because of the on-sale provision § 102(a)(1) of the America Invents Act ("AIA").  Defendants Anhui Jinhe Industrial Co., Ltd. and Jinhe USA LLC (collectively, "Jinhe") sought and received a stay of this case pending Celanese's appeal on this exact legal issue, which this Court entered on July 28, 2022.  D.I. 160.  That issue has not yet been finally resolved, as Celanese's petition for a writ of certiorari to the Supreme Court is due on December 10.  A decision on that petition can be expected within around four to six months.  Because review or a denial of Celanese's petition by the Supreme Court will definitively resolve whether the on-sale bar applies to the vast majority of patent claims at issue in the case, Celanese requests that the Court maintain the stay during the Supreme Court's review.

Because the parties and this Court can expect to know whether the Supreme Court will grant Celanese's petition in just a few months, continuing the stay will cause no prejudice to Defendants.  This stands in stark contrast to the expected duration of the stay as originally sought by Jinhe.  When the current stay was entered, trial was a mere ten months away, but the Federal Circuit's then-existing decision timeline indicated that this stay would last at least 16 months.  D.I. 143 at 2 n.1.  Yet at the time, Jinhe described this stay as "short[]" and "modest."  D.I. 141 at 8 and D.I. 144 at 3.  The expected four to six months for the Supreme Court to rule on Celanese's petition is far shorter.

In addition, letting the Supreme Court make a decision on that petition is the most efficient course for the Court and the parties.  Jinhe's stay papers agreed, arguing that a stay of the current litigation would preserve "both of the parties' and the Court's resources."  D.I. 141 at 9.  Any other approach risks two trials, two discovery tracks, or both.  If the Supreme Court grants Celanese's

1

petition, the risk of double-tracked trials and discovery would dramatically increase if the stay is lifted.

The circumstances warranting the entry of a stay in the first instance persist, and the applicable factors favor continuing the stay. First, as argued by Jinhe, "a stay would overwhelmingly simplify the issues in this case" because the Supreme Court will definitively decide whether the on-sale prior art provisions of the AIA apply to "80 of the 94 asserted patent claims in this case."[1] D.I. 144 at 1, 7. That decision will determine whether discovery and trial on all the claims or just a subset of the claims is required. Second, the status of the litigation is similar to when the Court issued the stay order because the next stage of the case is to complete fact discovery. But unlike when the stay was entered, this case now has no set trial date. Third, continuing the stay will not unduly prejudice Defendants. Defendants did not articulate any prejudice during the parties' meet and confer, and in any event, Defendants asked for the stay that is currently in place and the Supreme Court will likely rule on Celanese's petition in a mere four to six months.

## II.    NATURE AND STAGE OF PROCEEDINGS

Celanese invested significant resources improving and inventing new processes for the manufacture of artificial sweetener acesulfame potassium ("Ace-K"), which culminated in four patent families covering different stages of the Ace-K manufacture process.

Celanese asserts two of the four patent families in this case, including United States Patent Nos. 10,233,164 ("the '164 patent"), 10,590,096 ("the '096 patent"), 10,227,316 ("the '316 patent"), 10,590,097 ("the '097 patent"), and 10,029,998 ("the '998 patent") (collectively, the

---

[1] Jinhe appears to have miscalculated. Celanese was asserting 95 claims when the stay was entered, of which 16 are not practiced by Celanese. The precise breakdown, however, is not necessary to decide the instant motion.

"Asserted Patents"). D.I. 105 at 1. The '998, '164, and '096 patents focus on limiting pH value during the neutralization step to minimize impurity in the final Ace-K product. The '316 and '097 patents focus on limiting temperature of cyclizing agent composition to minimize impurity in the final Ace-K product.

In the U.S. International Trade Commission Inv. No. 337-TA-1264 ("ITC Investigation"), Celanese asserted the other two patent families covering different reaction steps of the Ace-K manufacture process. One of the patent families asserted in the ITC Investigation is directed to contact time between the cyclizing agent and solvent to minimize impurity in the Ace-K product. The other patent family controls the temperatures in the concentrating step and/or separating step to minimize certain impurities in the Ace-K product. Celanese also filed a parallel case in the Central District of California (Case No. 2:21-cv-03070-AB-KS) asserting the same patents as in the ITC Investigation. The Central District of California case was mandatorily stayed by statute pending final resolution of the ITC Investigation.

All four patent families share the same effective filing date, September 21, 2016, and each is governed by the AIA. As Celanese told the United States Patent and Trademark Office ("PTO") when it applied for these patents, Celanese had sold Ace-K in the U.S. that was made by a secret process covered by a subset of the claims in these four patent families more than one year before the effective filing date. Celanese's prior appeal to the Federal Circuit and its upcoming petition for certiorari with the Supreme Court turn on a legal question—whether the sale of Ace-K made by Celanese's secret process is an on-sale bar to those claims covering Celanese's process in view of the changes that Congress made to the AIA.

The ITC's Determination concluded that the on-sale bar of 35 U.S.C. § 102(a)(1) did apply to claims covering Celanese's Ace-K manufacture process according to the "on sale" provision

under AIA. Defendant Jinhe moved to stay this case pending Celanese's appeal of the ITC's Determination, arguing that a stay "would overwhelming simplify the issues in this case," "the status of this litigation weighs in favor of a stay," and "a stay would not cause undue prejudice." D.I. 144. The Court granted Jinhe's motion (D.I. 160) and requested the parties to promptly notify the Court once Celanese's appeal to the Federal Circuit was resolved (D.I. 161). The Federal Circuit issued a decision affirming the ITC's determination on August 12, 2024, and issued its mandate on October 3, 2024. The parties filed a joint status report on October 10, 2024 notifying the Federal Circuit's decision, and Celanese's intent to file a petition for a writ of certiorari seeking review of the Federal Circuit's decision. D.I. 170. Celanese's petition is due on December 10, 2024.

The parties met and conferred pursuant to LR 7.1.1 regarding Celanese's present motion to continue the stay of the case. Defendants indicated they would oppose Celanese's motion.

## III. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *see also Cost Bros., Inc. v. Travelers lndem. Co.*, 760 F.2d 58, 60-61 (3d Cir. 1985). Pursuant to this inherent power, it is within the sound discretion of this Court to continue the stay it entered at Defendants' request while Celanese continues to pursue its appeal rights. *Cytiva BioProcess R&D AB et al. v. JSR Corporation et al.* No. 21-cv-310-RGA, D.I. 90 (D. Del. Aug. 11, 2023) (denying the plaintiff's motion to lift the stay it agreed to in the first place while both parties appealed to the Federal Circuit the PTAB's ruling of IPRs, finding 79 asserted claims invalid and 4 asserted claims valid). Ex. A.

Three factors apply to the Court's analysis of whether to continue the stay, and the circumstances underlying these factors have not changed since this Court administratively closed the case on July 28, 2022: "(1) whether granting the stay will simplify the issues for trial; (2) the status of litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.,* No. CV 12-1461-LPS-CJB, 2015 WL 219019, at *2 (D. Del. Jan. 14, 2015). "[W]here there are no new circumstances that impose hardship on the [party seeking to have a stay lifted] or that change the court's earlier disposition imposing the stay," the stay should be continued. *Id.* (citation omitted).

## IV.   ALL THREE FACTORS FAVOR CONTINUING THE COURT'S STAY

### A.   Maintaining the Stay Will Simplify the Issues for Trial

Maintaining the stay is the simplest and most efficient approach for this case, and will continue to advance judicial efficiency and preserve the Court and the parties' resources. As Jinhe argued when seeking the stay, final resolution of Celanese's appeal will determine whether 79 of the 95 asserted claims are in the case or out of the case. D.I. 144 at 1, 7 ("a stay would overwhelmingly simplify the issues in this case," and may "[oust] 80 of the 94 asserted patent claims from this case")[2]; *see also* D.I. 141 at 9 ("not staying this case . . . would result in a significant waste of both of the parties' and the Court's resources"). But Celanese's appeal of the ITC's determination applying the on-sale bar, and the Federal Circuit's affirmance of that determination, is not yet final. *See In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007) (interpreting "the phrase 'until the determination of the Commission becomes final' in § 1659,"

---

[2] *See* footnote 1.

and observing that "the Supreme Court held that a judgment [] becomes final 'when the time expires for filing a petition for certiorari contesting the appellate court's affirmation'") (citing *Clay v. United States*, 537 U.S. 522, 525 (2003); *see also Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 n.14 (1974) ("By final judgment we mean one where 'the availability of appeal' has been exhausted or has lapsed, and the time to petition for certiorari has passed.") (citation omitted); *Taveras v. UBS AG*, 612 F. App'x 27, 30 (2d Cir. 2015) (citing *Bradley* and explaining that district court's judgment became final when "time to file a petition for writ of certiorari passed"). Indeed, when seeking to stay the companion Central District of California case, Defendants recognized that the ITC's determination would not be final until it is "no longer subject to judicial review." Ex. B, *Celanese et al.* v. *Jinhe et al.* Case No.: 2:21-CV-03070-AB-KS, Dkt. 28-1 at 4 (C.D. Cal., May 18, 2021) ("***[F]inal*** determination by the ITC in the ITC investigation [] include[es] the ***resolution of any appeals***") (emphasis added). The correct interpretation of the AIA's on sale provision implicating the same subset of claims as Jinhe's stay motion remains subject to judicial review, and the resolution of that issue will determine which claims will be available for discovery and trial in this case.

      Celanese's upcoming petition for a writ of certiorari presents an important question of statutory interpretation. Under Section 102 of the AIA, Congress defined what qualifies as "prior art" for purposes of determining a claimed invention's "novelty," stating: "A person shall be entitled to a patent unless - . . . ***the claimed invention*** was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention . . . ." 35 U.S.C. § 102(a)(1) (emphasis added). At the same time Congress added the phrase "claimed invention" to the statute, Congress also added a new definition for this new term: "The term 'claimed invention' means the subject matter defined by a claim in a

patent or an application for a patent." There is no dispute that the "claimed invention" here is Celanese's improved process for making Ace-K, not the Ace-K made using that process. The Federal Circuit, however, approached the question backwards by concluding the Congress had not done enough in the AIA to override the Federal Circuit's own pre-AIA interpretation, which was that a patentee's sale of an end product made by a secret process barred claims to that process. Reading Section 102's unambiguous text consistently with other provisions of the AIA, Celanese contends that merely selling end products did not place the claimed process itself on sale, particularly when use of the inventive process remained secret.

Unless and until Celanese's rights to appeal on this important issue are finally resolved, it is not prepared to dismiss the claims subject to this dispute. Indeed, as Celanese told the PTO, Celanese applied for these claims because it believed the AIA changed the law of the on-sale bar.

> Applicants disclose that the process claimed in this application has been in secret, non-public use, e.g., unavailable to the public, in Europe; and the product of the secret, non-public process has been exported and sold in the US more than 1 year prior to the priority date. This application has been filed under the AIA. Applicants believe that the subject claims are patentable under the AIA and in view of the aforementioned disclosure.

*See* Ex. C (the '998 patent), Ex. D (the '164 patent), Ex. E (the '316 patent), Ex. F (the '096 patent), and Ex. G (the '097 patent).

The next stage of this case is to finish fact discovery. Allowing the Supreme Court to determine the finality of Celanese's appeal will determine whether that fact discovery proceeds on issues germane to 16 claims or 95 claims. Maintaining the stay that Jinhe asked for will ensure that discovery will be conducted once and that trial will be conducted once.

During the meet and confer, Defendants' proposals were to either plan for the possibility of two trials or to plan for the possibility of two discovery tracks. But both approaches risk significant inefficiency, and this Court has rejected similar proposals. *eBuddy Tech. BV v.*

7

*LinkedIn Corp.*, No. 20-cv-1501-RGA, D.I. 152 (D. Del. Jul. 31, 2023) (declining to lift the stay if the plaintiff chose to keep asserting all four patents, including two that were likely invalid, because the "Court is not going to turn one case into two cases."). Ex. H. If Defendants thinks this case should proceed on just the claims not subject to the AIA's disputed on-sale provisions, Defendants should wait to restart the case until Celanese's appeal addressing that issue becomes final.

### B. The Status of Litigation Favors Maintaining the Stay

The current status of the litigation favors continuing the stay even more than when the stay was first entered. Like Jinhe argued in its original stay motion, fact discovery is still open, the parties have not served final infringement or invalidity contentions, no party has noticed or taken any depositions, and expert discovery has not begun. However, when the stay was first entered in July 2022, trial was set for ten months later in May of 2023. D.I. 59 at 14. That day has come and gone and there is currently no trial date set for this case. Because Jinhe sought and received a stay that deprived Celanese of its scheduled trial date, the current status of the litigation without a trial date favors continuing the stay over Defendants' objection.

### C. Continuing the Stay Works No Undue Prejudice on Defendants

There is no undue prejudice or tactical disadvantage to Defendants that warrants lifting the stay, especially because Defendants sought and received the stay currently in place. Defendants claimed no prejudice then. And they did not identify any during the parties' meet and confer prior to the instant motion.

As Jinhe acknowledged, it "would be far more than just inconvenienced were this action to continue while Celanese pursues its appeal." D.I. 144 at 5. And "Jinhe faces the risk of unnecessary proceedings and expenses if the case is not stayed." *Id*. Jinhe strongly advocated the stay because "[i]f the case is not stayed, Jinhe would face the hardship and inequity of needlessly

addressing issues such as invalidity, non-infringement, and the like for [79] claims[3] that very likely will be withdrawn following appeal." *Id*. at 6.

But the moment for Celanese to withdraw its claims has not yet come.  If the Supreme Court grants Celanese's petition for a writ of certiorari, the viability of those claims will persist, and withdrawal would make no sense.  But if the Supreme Court denies Celanese's petition or affirms the Federal Circuit's decision, then Celanese will withdraw the 79 claims at issue.  This Motion simply asks the Court to continue the stay until the decision point Jinhe identified in its original request.

Any claim by Defendants that additional delay would cause them prejudice should be rejected.  A general desire to resume the litigation process to avoid further delay does not constitute a sufficient hardship to lift a stay.  *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*, C.A. Nos. 06-187-GMS & 06-391-GMS, 2009 WL 2969566, at *2 (D. Del. Sept. 15, 2009) ("the court is also not convinced that [the party opposing the stay] will be unduly prejudiced by continuing the stay in this case.  Other than citing 'further delay,' [opposing party] has failed to articulate any 'hardship or [show] that the [PTO's] action immediately impacts [its] daily affairs.'") (first and second alterations added) (internal citation and quotation omitted).  Notably, Celanese's request is not a situation of "perpetuating the stay" and "delay[ing] [Defendants'] ability to litigate this case" because the stay already in place is the "the direct result of [Defendants'] own actions." *Kyocera Senco Indus. Tools, Inc. v. Koki Holdings Am. Ltd.*, No. CV 17-598-CFC, 2022 WL 17830633, at *3 (D. Del. Dec. 21, 2022).

Moreover, should Defendants' response identify a new argument of prejudice not identified during the meet and confer on this motion, such an argument fails in view of the short and

---

[3] *See* footnote 1.

9

predictable amount of time it will take the Supreme Court to decide Celanese's petition. Celanese's petition is due on December 10, 2024.[4] The ITC and Defendants have 30 days (January 9, 2025) to file briefs in opposition, unless they choose to extend or waive this deadline. Sup. Ct. R. 15.3 and 30.4. Ex. I. The justices generally consider the petition about a month after the opposition,[5] which would put the Supreme Court's decision on Celanese's petition for certiorari in February 2025. Defendants cannot articulate any prejudice from waiting approximately four to six months to see how the Supreme Court will decide Celanese's continued appeal of the ITC and the Federal Circuit's decisions on the on-sale bar.

Of course, if the Supreme Court grants Celanese's petition for a writ of certiorari, Celanese requests that the stay extend until a decision is issued, which will likely be during the Court's next term. Any purported prejudice that Defendants might articulate (for the first time) would be heavily offset by the increased efficiency and simplification of waiting to see what the Supreme Court will do with the Federal Circuit's decision impacting the validity of 79 of the 95 claims asserted in this case. This Court and the parties should await the Supreme Court's guidance before reopening this case.

## V.  CONCLUSION

For the foregoing reasons, the Court should leave the stay in place and let Celanese's petition for a writ of certiorari run its course at the Supreme Court, both through the certiorari petition stage and, if necessary, through the merits stage.

---

[4] Celanese does not anticipate seeking any further extension from this date.
[5] Amy Howe, *The Certiorari Process: Seeking Supreme Court Review*, SCOTUSBLOG (Oct. 30, 2024), https://www.scotusblog.com/election-law-explainers/the-certiorari-process-seeking-supreme-court-review/#:~:text=The%20side%20seeking%20Supreme%20Court,the%20election%20has%20actually%20occurred. Ex. J.

Dated: November 1, 2024

| | |
|---|---|
| **OF COUNSEL:** | Respectfully submitted, |
| Aaron G. Fountain (admitted *pro hac vice*) | **DLA PIPER LLP (US)** |
| **MORRISON & FOERSTER LLP** | |
| 701 Brazos Street, Suite 1100 | */s/ Brian A. Biggs* |
| Austin, TX 78701 | Brian A. Biggs (DE Bar No. 5591) |
| Telephone: (737) 309-0655 | Erin E. Larson (DE Bar No. 6616) |
| afountain@mofo.com | 1201 North Market Street, Suite 2100 |
| | Wilmington, DE 19801-1147 |
| Susan M. Krumplitsch (admitted *pro hac vice*) | Telephone: (302) 468-5700 |
| **DLA PIPER LLP (US)** | Facsimile: (302) 394-2341 |
| 2000 University Avenue | brian.biggs@us.dlapiper.com |
| East Palo Alto, CA 94303 | erin.larson@us.dlapiper.com |
| Telephone: (650) 833-2440 | |
| Facsimile: (650) 687-1230 | *Attorneys for Plaintiffs Celanese* |
| susan.krumplitsch@us.dlapiper.com | *International Corporation, Celanese (Malta)* |
| | *Company 2 Limited, and Celanese Sales U.S.* |
| Ellen A. Scordino (admitted *pro hac vice*) | *Ltd.* |
| **DLA PIPER LLP (US)** | |
| 33 Arch Street, 26th Floor | |
| Boston, MA 02110 | |
| Telephone: (617) 406-6000 | |
| Facsimile: (617) 406-6100 | |
| ellen.scordino@us.dlapiper.com | |